UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

TRUSTEES FOR THE MASON TENDERS :
DISTRICT COUNCIL WELFARE FUND, :
PENSION FUND, ANNUITY FUND, and :
TRAINING PROGRAM FUND, and Anna :
Gutsin, in her fiduciary capacity as Director, :
 :
  and : Civil Action
 : No. 22-10824(LGS)
MICHAEL PROHAKA, as Business Manager :
of the MASON TENDERS DISTRICT COUNCIL : ECF CASE
OF GREATER NEW YORK, :
Petitioners, : **Declaration of**
 : **Haluk Savci, Esq.**
-against- :
 :
HILT CONSTRUCTION, INC., :
 :
Respondent. :

-------------------------------------------------------------- x

I, HALUK SAVCI, hereby declare:

1. I am a member of the Bar of this Court and counsel for Petitioners (hereinafter "Petitioners") in the

above-entitled action and am familiar with all the facts and circumstances of this action. All exhibits

annexed hereto are true and correct copies of what they purport to be.

2. I make this declaration in support of the Petitioners motion for confirmation and enforcement of

the December 24, 2021 Opinion and Default Arbitration Award of Arbitrator Joseph Harris in favor of

Petitioners against Respondent Hilt Construction, Inc. (hereinafter "Respondent" or "Hilt") in all

respects in which the arbitrator ordered Respondent to pay Petitioner union trust funds a total of

$97,174.85 in delinquent fringe benefit contributions, dues and PAC contributions, interest, liquidated

damages, attorney fees and arbitration costs. Ex. 1. Petitioners seek confirmation and enforcement of

the Award and judgment in their favor against Respondent for the outstanding liquidated balance due full under the Award which is $97,174.85.

3.    Petitioners are the Trustees of the Mason Tenders District Council Welfare, Annuity, Pension and Training Program Funds. These Funds are "employee benefit plan[s]" as defined in Section 3(3) of ERISA, 29 U.S.C. §1002(3) and "multiemployer plan[s]" within the meaning of Section 3 (37)(A) of ERISA, 29 U.S.C. §§ 1002(37)(A). Each Fund is established and maintained pursuant to an Amended and Restated Agreement and Declaration of Trust (the "Benefit Plan Trust Agreement" and the "Pension Fund Trust Agreement", collectively, the "Trust Agreements"). The Plans are each jointly administered by a Board of Trustees made up of union and employer representatives pursuant to the requirements of Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. §186(c)(5). The Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA (29 USC § 1132(d)(1). The purpose of the Funds, among other things, is to provide fringe benefit to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the building and construction industry and the union.

4.    The Funds maintain their principal place of business at 520 8th Avenue, New York, NY 10018. The administrator of the Funds as of February 1, 2020 is Anna Gutsin.

5.    The Mason Tenders District Council of Greater New York and Long Island (the "MTDC" or the "Union") is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 USC § 185) which represents employers in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act (29 USC § 142) and Section 3(4) of ERISA (29 U.S.C. § 1002(4)). The Union maintains its principal place of business at 520 8th Avenue, Suite 650, New York, NY 10018.

6.    Michael Prohaska was the Business Manager of the Union at the time of the filing of this action and brings this action for dues and contributions in his representative capacity pursuant to Section 12 of the General Associations Law of the State of New York.

7.    Hilt is a construction contractor whose business address is 120 Old Complain Road, Hillsborough, New Jersey 08844.   At all relevant times Respondent was bound to the terms and conditions of the Project Labor Agreements Covering Specified Construction Work Under the Capital Improvement Program For the New York City School Construction Authority ("SCA PLA") to which the Union is a party as a BCTC member. Hilt's President and Vice-President respectively signed affidavits binding Hilt to the terms and conditions of the PLA.  Id.

8.    This action seeks to confirm and enforce an arbitration award against Respondent that arose from its failure to make all benefit funds contributions and other monies found due to the Funds for work performed by Hilt employees pursuant to the SCA PLA.

9.    These benefit contributions are required under ERISA, the terms and condition of the in force PLA; 2) the Trust Agreements and any amendments thereto (Relevant portions attached hereto as Ex. 3); and 3) the Arbitration Procedures and Rules Governing Employer Audit and Delinquency Disputes adopted by the Funds and to which Respondent agreed to be bound when assenting to the terms of the PLAs. Ex. 4.

10.   Jurisdiction of the subject matter of this action is based on 28 U.S.C § 1331, Section 301 of the LMRA, 29 U.S.C § 185.

11.   In addition to establishing the terms and conditions of employment for all employees performing covered work, the PLA at Article 11 among other things requires signatory employers to pay contributions to the Funds for all employees covered at the rates set forth therein and to be bound by any modification to these contribution rates made during the term of the agreement. In addition to

contributions owed the Funds at the rate set forth therein, the Funds incorporates by reference the local union trade independent agreement as Schedule A and which designate the Funds as the authorized collection agent for contributions due to the New York State Laborers Employer Cooperation and Education Trust Fund, New York Laborers Health and Safety Trust Fund and Greater New York Laborers – Employers Cooperation and Education Trust Fund. The Funds are also designated as the authorized collection agent for the Mason Tenders District Council and Mason Tenders District Council Political Action Committee ("PAC") for dues and contributions respectively which are voluntarily authorized by employees on forms provided for that purpose by the Union. Ex.2.

12. The SCA PLA at Article 11, Section 2 (c) respectively bind signatory employers to the written terms of the legally established jointly trusteed agreements specifying the detailed basis on which payments are paid into the Funds for covered work. Ex. 2.

13. The Trust Agreements in turn at Article IX provide the Trustees have the power to demand, collect and receive Employer contributions and are authorized to take steps, including the institution of legal or administrative proceedings, to collect delinquent contributions including the option of initiating arbitration proceedings against delinquent employers. Among other things, the Trust Agreements require that participating employers pay contributions monthly no later than the due dates set forth in the CBA and in all instances no later than the fifteenth (15th) day of the month following the month for which they are due as provided in the CBA. Exs. 3 and.4.

14. Article 9.8 of the Trust Agreements provides that if an Employer fails to make required contributions to the Funds or fails to provide its books and records for examination, the Trustees have the option of commencing proceedings to enforce the Employer's obligations through arbitration. Ex. 3.

15. The Trust agreements at Article IX, Sections 9.8 and 9.9 (Ex. 2), the Arbitration Procedures and Rules Governing Employer Audit and Delinquency Disputes adopted by the Funds (Ex. 4) and provide

that in any action for unpaid contributions commenced by the Trust Fund, the Employer shall pay to the Funds all unpaid contributions due and payable, interest on such unpaid contributions, interest on the unpaid contributions as and for liquidated damages and all attorney's fees and costs of the action.

16.    The Trust Agreements at Article 9.5 requires that an Employer in default for ten (10) business days shall be obligated to pay interest from the due date by using the rate prescribed under Section 6621 of Title 26 of the United States Code.

17.    This action to confirm and enforce Arbitrator Harris' Award commenced on December 22, 2022 by the filing of the petition. Ex. 5. Petitioners on January 12, 2023 served copies of the Petition and summons on Respondent by personal service on Ganju Reddy, Hilt's owner. *Id.*

18.    This action seeks confirmation in all respects Arbitrator Harris' award in which he ordered Respondent to pay the Funds $97,174.85 in total delinquent fringe benefit contributions, union dues and Political Action Committee contributions, interest, liquidated damages, attorney fees for the period March 26, 2018 through December 29, 2019 as based on a books and records examinations of Hilt performed by Funds' auditors pursuant to Hilt's obligations under the SCA PLA and the Funds' Trust Agreements . Ex. 1.

19.    The Funds served Hilt with an original  notice and demand for arbitration on June 4, 2021. Ex. 6. On June 5, 2021, Arbitrator Harris set a hearing date in the matter for June 29, 2021. *Id.* That matter was adjourned  and a second notice was served on Hilt dated October 22, 2021.  A certified mail receipt green card indicated Hilt received the arbitration on October 28, 2021. *Id.* On October 27, 2021, Harris notified the parties that he would be conducting a telephonic/video hearing on November 22, 2021. *Id.*

20.    Arbitrator Harris convened the hearing on November 22. Ex. 1. No representative appeared for Hilt, and the arbitrator finding Hilt had received notice in the matter and failed to respond or appear proceeded with the hearing as a default matter. *Id.*

21. The Funds submitted evidence in support of their claim that Respondent failed to pay required benefit contributions and other monies which included amended summary findings prepared by Funds' arbitrators identifying by name and date each individual for whom Hilt failed to remit benefit contributions to the Funds as required under the SCA PLA . Ex. 7, Ex.1. These findings were on November 4, 2021 to reflect payments received by the Funds after the initial arbitration demands had been served on Hilt.

22. Based upon the unrebutted evidence and hearing record, Arbitrator Harris in his Award found in favor of the Petitioners and ordered Respondent to pay the Funds a total amount of $97,174.85 comprising $62,233.83 in delinquent contributions, $4,538.92 in dues and PAC, $8,298.53 in interest on the unpaid benefit contributions, $9,127.63 in audit costs and $8,298.53 in liquidated damages. Arbitrator Harris further found Hilt owed $2,977.41 in late contributions made to the Funds for the period June 1, 2018 through December 31, 2018. Finally, Arbitrator Harris awarded the Funds $500.00 in attorney fees and $1,200.00 in arbitration costs. Ex. 1at 2.

23. Upon receipt, Petitioners made further demands for payment forwarding a copy of the Award to Respondent. No payments have been received against the Award.

I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge and belief.

Dated:    New York, NY

      April 21, 2023               /S

                       By:    Haluk Savci, Esq.
                             Counsel for Plaintiffs
                             Associate General Counsel
                             Mason Tenders District
                             Council of Greater NY
                             520 Eighth Avenue, Suite 650
                             New York, NY 10018
                             hsavci@masontenders.org

Exhibit 1

OFFICE OF THE IMPARTIAL ARBITRATOR

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In the Matter of the Arbitration Between          (
                                                   (
TRUSTEES OF THE MASON TENDERS DISTRICT COUNCIL     (
FRINGE BENEFIT FUNDS   (Funds)                     (          OPINION AND
                                                   (          DEFAULT AWARD
          -and-                                    (
MASON TENDERS DISTRICT COUNCIL OF GREATER NEW      (
YORK   (Union)                                     (          Joseph A. Harris, Ph.D.
                                                   (          Impartial Arbitrator
          -against-                                (
                                                   (
HILT CONSTRUCTION, INC.   (Defendant)              (
                                                   (

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


Appearances:

For the Funds:
Haluk Savci, Esq.          Associate General Counsel, MTDC
Dominick Giammona          Mason Tenders Trust Funds
Bill Austin (by phone)     Schulteis & Panettieri LLP

For the Employer:
    No one

The Defendant and the Funds are bound by the terms of the "Project Labor Agreement Covering Specified Construction Work Under the Capital Improvement Program for Fiscal Years 2009-2014 on Behalf of the New York City School Construction Authority."( NYC SCA PLA) (Funds F-2) They are also bound by the terms of the renewal agreement for 2014-2019. (F-3).

The Defendant's President, M. Ilyas Chaudry, signed an affidavit of project labor agreement re the NYC SCA PLA on May 11, 2010. (F-2.1) Vice-President Gongodhan Reddy signed another affidavit of project labor agreement re the NYC SCA PLA on November 19, 2014. (F-2.2)

Article 11.2.B of the NYC SCA PLA provides that the Contractors will be bound by the provisions of the Trust Agreements:

> The Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to Project Work done under this Agreement and only for those employees to whom this Agreement requires such benefit payments. (F-2 and F-3)

The Funds sent the Defendant a Notice of Intention to Arbitrate dated October 22, 2021, with a copy sent to me, requesting that I schedule an arbitration to consider the following:

1

Delinquent fringe benefit contributions and other contributions due to the Funds and the District Council pursuant to the provisions of the collective bargaining agreement between HILT CONSTRUCTION, INC. and the MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK as determined by an audit for the period 03/26/2018 through 12/29/2019 in the amount of $162,745.02 in addition to $11,645.47 in dues and PAC contributions, $23,869.27 in imputed audit fees and $13,046.03 in statutory interest owed as of 01/26/2021 for a total of **$211,305.79**.

In addition, interest for the periods between 06/01/2018 and 12/31/2018 in the amount of **$2,977.41** is also due.

On October 27, 2021, I sent the Parties my Notice of Arbitration for November 22, 2021 by email, certified mail, and first class mail. The Defendant received the snail mail and informed the Funds it had not received my email. The Funds then sent the Defendant my email with a correct address. Neither the Funds nor I received any communication from the Defendant indicating it would not appear at the hearing.

On November 22, 2021, the virtual hearing proceeded as scheduled. However, since the Defendant did not attend, I was forced to conduct the hearing without its participation.

The Funds introduced a payroll audit for 03/26/18 through 12/29/19. (F-4) It introduced a revised Funds' Deficiency Report for this period, as of November 15, 2021, that lists unpaid fringe benefits of $62,233.83, dues and PAC of $4,538.92, current interest of $8,298.53, and imputed audit cost of $84,198.91 for a total of **$120,323.14**. (F-4.1)

Second, the Funds assert that interest on late contribution payments for the periods between 06/01/2018 and 12/31/2018 in the amount of **$2,977.41** is owed. The Funds ask the arbitrator to rule that the Defendant owes both of these monies. In addition, it asks for an ERISA penalty equal to the amount of interest owed on unpaid principal (liquidated damages), legal fees of $500, and pro-rated arbitrator's fees.

## AWARD

Based on the credible evidence that was presented to me, the undersigned finds the Defendant owes delinquent fringe benefits and associated items as detailed in the most recent Deficiency Report. HILT CONSTRUCTION, INC. shall pay to the Funds the total below.

| **Audit Period: 03/26/18 – 12/29/19** | |
| --- | --- |
| Delinquent Contributions for Fringes | $ 62,233.83 |
| Dues & PAC | 4,538.92 |
| Current Interest | 8,298.53 |
| Audit Fees (imputed) | 9,127.63 |
| ERISA Penalty (liquidated damages) | 8,298.53 |
| **Subtotal** | **$92,497.44** |
| | |
| **Interest Owed: 06/01/18 – 12/31/18** | **$ 2,977.41** |

| | |
|---|---|
| Attorney Fees | $ 500.00 |
| Arbitrator Fees (pro-rated daily rate + writing | 1,200.00 |
| **Subtotal** | **$ 1,700.00** |
| **TOTAL** | **$ 97,174.85** |

Date: December 24, 2021

*Joseph A Harris*

Joseph Harris, Ph.D.
Impartial Arbitrator

STATE OF NEW YORK  )

COUNTY OF NEW YORK  )

The Undersigned under penalty of perjury affirms that he is the Arbitrator in the within proceeding and signed same in accordance with the arbitration law of the State of New York.

*Joseph A Harris*

Sent by email to the Defendant (hiltconst@msn.com) and to the Funds.

Exhibit 2

**PROJECT LABOR AGREEMENT
COVERING SPECIFIED CONSTRUCTION
WORK UNDER THE CAPITAL IMPROVEMENT
PROGRAM FOR FISCAL YEARS 2014 -2019**

**ON BEHALF OF THE NEW YORK CITY SCHOOL
CONSTRUCTION AUTHORITY**

NYC SCA PLA
# TABLE OF CONTENTS

ARTICLE 1 - PREAMBLE ........................................................................................ 1

    SECTION 1. PARTIES TO THE AGREEMENT ..................................................... 2

ARTICLE 2 - GENERAL CONDITIONS ................................................................ 3

    SECTION 1. DEFINITIONS ...................................................................................... 3

    SECTION 2. CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE ............. 3

    SECTION 3. ENTITIES BOUND & ADMINISTRATION OF AGREEMENT ................ 4

    SECTION 4. SUPREMACY CLAUSE ..................................................................... 4

    SECTION 5. LIABILITY ........................................................................................... 5

    SECTION 6. THE SCA ............................................................................................. 5

    SECTION 7. AVAILABILITY AND APPLICABILITY ......................................... 6

ARTICLE 3-SCOPE OF THE AGREEMENT ........................................................ 6

    SECTION 1. WORK COVERED .............................................................................. 6

    SECTION 2. TIME LIMITATIONS ........................................................................ 8

    SECTION 3. EXCLUDED EMPLOYEES ............................................................... 8

    SECTION 4. NON-APPLICATION TO CERTAIN ENTITIES ........................... 10

ARTICLE 4- UNION RECOGNITION AND EMPLOYMENT ........................... 10

    SECTION 1. PRE-HIRE RECOGNITION ............................................................ 10

    SECTION 2. UNION REFERRAL ........................................................................ 10

    SECTION 3. NON-DISCRIMINATION IN REFERRALS .................................. 12

    SECTION 4. MINORITY AND FEMALE REFERRALS ..................................... 13

    SECTION 5. CROSS AND QUALIFIED REFERRALS ...................................... 13

    SECTION 6. UNION DUES .................................................................................... 13

    SECTION 7. CRAFT FOREPERSONS AND GENERAL FOREPERSONS ................. 14

**ARTICLE 5- UNION REPRESENTATION** ................................................................ 14

    SECTION 1. LOCAL UNION REPRESENTATIVE .................................................. 14

    SECTION 2. STEWARDS .............................................................................................. 14

    SECTION 3. LAYOFF OF A STEWARD ................................................................... 15

**ARTICLE 6- MANAGEMENT'S RIGHTS** ................................................................ 15

    SECTION 1. RESERVATION OF RIGHTS ............................................................. 15

    SECTION 2. MATERIALS, METHODS & EQUIPMENT ...................................... 16

**ARTICLE 7- WORK STOPPAGES AND LOCKOUTS** ........................................... 16

    SECTION 1. NO STRIKES-NO LOCK OUT ........................................................... 16

    SECTION 2. DISCHARGE FOR VIOLATION ....................................................... 17

    SECTION 3. NOTIFICATION ..................................................................................... 17

    SECTION 4. EXPEDITED ARBITRATION ............................................................. 18

    SECTION 5. ARBITRATION OF DISCHARGES FOR VIOLATION ................. 20

**ARTICLE 8 - LABOR MANAGEMENT COMMITTEE** .......................................... 20

    SECTION 1. SUBJECTS ............................................................................................... 20

    SECTION 2. COMPOSITION ...................................................................................... 20

**ARTICLE 9- GRIEVANCE & ARBITRATION PROCEDURE** ............................. 20

    SECTION 1. PROCEDURE FOR RESOLUTION OF GRIEVANCES ............... 20

    SECTION 2. LIMITATION AS TO RETROACTIVITY ....................................... 23

    SECTION 3. PARTICIPATION BY CONSTRUCTION PROJECT MANAGER .......... 23

**ARTICLE 10 - JURISDICTIONAL DISPUTES** ...................................................... 24

    SECTION 1. NO DISRUPTIONS ............................................................................... 24

    SECTION 2. ASSIGNMENT ....................................................................................... 24

    SECTION 3. NO INTERFERENCE WITH WORK ............................................... 24

ARTICLE 11 - WAGES AND BENEFITS.................................................................. 24

    SECTION 1. CLASSIFICATION AND BASE HOURLY RATE ...................................... 24

    SECTION 2. EMPLOYEE BENEFITS.............................................................. 25

ARTICLE 12- HOURS OF WORK, PREMIUM PAYMENTS,.................................... 30

SHIFTS AND HOLIDAYS .................................................................................... 30

    SECTION 1. WORK WEEK AND WORK DAY .................................................. 30

    SECTION 2. OVERTIME............................................................................ 31

    SECTION 3. SHIFTS ................................................................................ 32

    SECTION 4. HOLIDAYS........................................................................... 34

    SECTION 5. REPORTING PAY ................................................................... 34

    SECTION 6. PAYMENT OF WAGES.............................................................. 36

    SECTION 7. EMERGENCY WORK SUSPENSION ............................................. 36

    SECTION 8. INJURY/DISABILITY ............................................................... 36

    SECTION 9. TIME KEEPING ..................................................................... 37

    SECTION 10. MEAL PERIOD..................................................................... 37

    SECTION 11. BREAK PERIODS .................................................................. 37

ARTICLE 13 - APPRENTICES................................................................................ 37

    SECTION 1. RATIOS................................................................................ 37

ARTICLE 14-SAFETY PROTECTION OF PERSON AND PROPERTY ........................... 38

    SECTION 1. SAFETY REQUIREMENTS.......................................................... 38

    SECTION 2. CONTRACTOR RULES .............................................................. 38

    SECT1ON 3. INSPECTIONS....................................................................... 38

ARTICLE 15 - NO DISCRIMINATION...................................................................... 39

    SECTION 1. COOPERATIVE EFFORTS .......................................................... 39

SECTION 2. LANGUAGE OF AGREEMENT ........................................................................ 39

**ARTICLE 16- GENERAL TERMS** .................................................................................. 39

SECTION 1. PROJECT RULES ......................................................................................... 39

SECTION 2. TOOLS OF THE TRADE .............................................................................. 40

SECTION 3. SUPERVISION ............................................................................................. 40

SECTION 4. TRAVEL ALLOWANCES ............................................................................ 40

SECTION 5. FULL WORK DAY ....................................................................................... 40

SECTION 6. COOPERATION AND WAIVER ................................................................... 40

**ARTICLE 17. SAVINGS AND SEPARABILITY** ............................................................ 41

SECTION 1. THIS AGREEMENT ..................................................................................... 41

SECTION 2. THE BID SPECIFICATIONS ........................................................................ 41

SECTION 3. NON-LIABILITY .......................................................................................... 42

SECTION 4. NON-WAIVER .............................................................................................. 42

**ARTICLE 18- FUTURE CHANGES IN SCHEDULE A AREA CONTRACTS** ................. 42

SECTION 1. CHANGES TO AREA CONTRACTS ............................................................ 42

SECTION 2. LABOR DISPUTES DURING AREA CONTRACT NEGOTIATIONS.... 43

**ARTICLE 19 - WORKERS' COMPENSATION ADR** ...................................................... 43

SECTION 1. ..................................................................................................................... 43

**ARTICLE 20 – SUBCONTRACTING** ............................................................................ 44

**ARTICLE 21 - HELMETS TO HARDHATS** .................................................................. 44

SECTION 1. ..................................................................................................................... 44

SECTION 2. ..................................................................................................................... 45

## PROJECT LABOR AGREEMENT COVERING
## SPECIFIED CONSTRUCTION ON BEHALF OF THE
## NEW YORK CITY SCHOOL CONSTRUCTION SCA

### ARTICLE 1 - PREAMBLE

WHEREAS, the New York City School Construction Authority (' SCA"), acting as its own Construction Manager, desires to provide for the cost efficient, safe, quality, and timely completion of certain rehabilitation and renovation work performed under the SCA's Capital Improvement Program ("CIP") ("Program Work," as defined in Article 3) for Fiscal Years 2015 to 2019 in a manner designed to afford the lowest costs to the SCA, and the Public it represents, and the advancement of permissible statutory objectives;

WHEREAS, this Project Labor Agreement will foster the achievement of these goals, inter alia, by:

(1)    providing a mechanism for responding to the unique construction needs associated with this Program Work and achieving the most cost effective means of construction, including direct labor cost savings, the Building and Construction Trades Council of Greater New York and Vicinity, on its behalf and on behalf of its affiliated Local Unions and their members, waiving various shift and other hourly premiums and   other work and pay practices which would otherwise apply to  Program Work.

(2)    expediting the construction process and otherwise minimizing the disruption to the educational environment of New York City public schools;

(3)    promoting the statutory objectives stated in the SCA's enabling legislation, Public Authorities Law § 1725 et seq., in a non-discriminatory manner designed to open construction opportunities to all qualified bidders;

(4)    avoiding the costly delays of potential strikes, slowdowns, walkouts,

picketing and other disruptions arising from work disputes and promoting labor harmony and peace for the duration of the Program Work;

(5)     standardizing the terms and conditions governing the employment of labor on the Program Work

(6)     permitting wide flexibility in work scheduling and shift hours and times to allow maximum work to be done during off-school hours yet at affordable pay rates;

(7)     permitting adjustments to work rules and staffing requirements from those which otherwise might obtain;

(8)     providing comprehensive and standardized mechanisms for the settlement of work disputes, including those relating to jurisdiction;

(9)     furthering public policy objectives as to improved employment opportunities for minorities, women and the economically disadvantaged;

(10)    ensuring a reliable source of skilled and experienced labor;

and, WHEREAS, the Building and Construction Trades Council of Greater New York and Vicinity, its affiliated Local Unions and their members, desire to assist the SCA in improving public education in the City of New York, as well as to provide for stability, security and work opportunities which are afforded by a Project Labor Agreement;

and, WHEREAS, the Parties desire to maximize Program Work safety conditions for both workers and users of New York City Schools under construction;

NOW, THEREFORE, the Parties enter into this Agreement:

### SECTION 1. PARTIES TO THE AGREEMENT

This is a Project Labor Agreement ("Agreement") for rehabilitation and renovation work to be performed under the defined CIP and Restructuring Program entered into

by the New York City School Construction Authority ("SCA") and the Building and Construction Trades Council of Greater New York and Vicinity ("Council" or "BCTC") and its signatory affiliated Local Unions and their members) ("Local Unions").

## ARTICLE 2 - GENERAL CONDITIONS

### SECTION 1. DEFINITIONS

Throughout this Agreement, the various Union parties, the Building and Construction Trades Council of Greater New York and Vicinity and its affiliated Local Unions' construction divisions, as opposed to their maintenance and/or repair and service divisions, if any, are referred to singularly and collectively as "Union(s)"; where specific reference is made to "Local Unions," that phrase is sometimes used; the term "Contractor(s)" shall include any Construction Project Manager who may serve as a successor to the SCA in that role, to General Contractors and to all other contractors, and subcontractors of whatever tier, engaged in Program Work within the scope of this Agreement as defined in Article 3; the SCA is referred to as the "SCA" except that when the SCA is referred to in its capacity as Construction Project Manager, it (or any successor to the SCA acting in that capacity) is referred to as "Construction Project Manager;" the Building and Construction Trades Council of Greater New York and Vicinity is referred to as the "Council" or "BCTC"; and the work covered by this Agreement (as defined in Article 3) is referred to as "Program Work".

### SECTION 2. CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE

This Agreement shall not become effective unless each of the following conditions are met: (1) the Agreement is signed by the Council, on behalf of itself, its affiliated Local Unions and their members; and (2) the Agreement is approved and signed by the President & CEO of the SCA.

## SECTION 3. ENTITIES BOUND & ADMINISTRATION OF AGREEMENT

This Agreement shall be binding on all Unions and their construction divisions the Construction Project Manager (in its capacity as such) and all Contractors performing Program Work, as defined in Article 3. The Contractors shall include in any subcontract that they let for performance during the term of this Agreement a requirement that their subcontractors, of whatever tier, become signatory and bound by this Agreement with respect to that subcontracted work falling within the scope of Article 3 and all Contractors and subcontractors performing Program Work shall be required to sign an Affidavit of Project Labor Agreement in the form annexed hereto as Exhibit "A". This Agreement shall be administered by the Construction Project Manager or such other designee as may be named by the SCA, on behalf of all Contractors.

## SECTION 4. SUPREMACY CLAUSE

This Agreement, together with the local Collective Bargaining Agreements appended hereto as Schedule A, represents the complete understanding of all signatories and supersedes any national agreement, local agreement or other collective bargaining agreement of any type which would otherwise apply to this Program Work, in whole or in part. The Collective Bargaining Agreements of the affiliated local unions that cover the particular type of construction work to be performed by the contractor, and as set forth in the Schedule A list of Agreements, shall be deemed the Schedule A Collective Bargaining Agreements ("Schedule A CBA") under this Agreement. Where association and independent Collective Bargaining Agreements for a particular type of construction work are both set forth in Schedule A, association members shall treat the applicable association agreement as the Schedule A CBA and independent contractors shall treat the applicable independent agreement as the Schedule A

CBA. Where a subject covered by the provisions, of this Agreement is also covered by a Schedule A, the provisions of this Agreement shall prevail. It is further understood that no Contractor shall be required to sign any other agreement as a condition of performing Program Work. No practice, understanding or agreement between a Contractor and a Local Union which is not set forth in this Agreement shall be binding on this Program Work unless endorsed in writing by the Construction Project Manager or such other designee as may be designated by the SCA.

It is further agreed that, where there is a conflict, the terms and conditions of this Project Labor Agreement shall supersede and override terms and conditions of any and all other national, area, or local collective bargaining agreements, except for all work performed under the NTL Articles of Agreement, the National Stack/Chimney Agreement, the National Cooling Tower Agreement, all instrument calibration work and loop checking shall be performed under the terms of the UA/IBEW Joint National Agreement for Instrument and Control Systems Technicians, and the National Agreement of the International Union of Elevator Constructors, with the exception of Articles 7, 9 and 10 of this Project Labor Agreement, which shall apply to such work.

## SECTION 5. LIABILITY

The liability of any Contractor and the liability of any Union under this Agreement shall be several and not joint. The Construction Project Manager and any Contractor shall not be liable for any violations of this Agreement by any other Contractor; and the Council and Local Unions shall not be liable for any violations of this Agreement by any other Union.

## SECTION 6. THE SCA

The SCA shall require in its bid specifications for all Program Work within the

scope of Article 3 that all successful bidders, and their subcontractors of all tiers, become bound by, and signatory to, this Agreement. The SCA (including in its role as Construction Project Manager) shall not be liable for any violation of this Agreement by any Contractor. It is understood that nothing in this Agreement shall be construed as limiting the sole discretion of the SCA (including in its role as Construction Project Manager) in determining which Contractors shall be awarded contracts for Program Work. It is further understood that the SCA (including in its role as Construction Project Manager) has sole discretion at any time to terminate, delay or suspend the Program Work, in whole or part, on any Program.

## SECTION 7. AVAILABILITY AND APPLICABILITY
## TO ALL SUCCESSFUL BIDDERS

The Unions agree that this Agreement will be made available to, and will fully apply to, any successful bidder for Program Work who becomes signatory thereto, without regard to whether that successful bidder performs work at other sites on either a union or non-union basis and without regard to whether employees of such successful bidder are, or are not, members of any unions. This Agreement shall not apply to the work of any Contractor which is performed at any location other than the site of Program Work.

## ARTICLE 3-SCOPE OF THE AGREEMENT
## SECTION 1. WORK COVERED

Program Work shall be limited to designated rehabilitation and renovation construction contracts bid and let by the SCA after the effective date of this Agreement for rehabilitation and renovation work performed on New York City Public Schools pursuant to funds authorized under the Capital Improvement and Restructuring Programs for Fiscal Years 2015 to 2019. Subject to the foregoing, and the exclusions below, such Program Work generally

shall include demolition, reconstruction, rehabilitation, renovation work associated with school improvement and restructuring, technology enhancement, safety enhancement, general enhancement, CIP and other programs and needs as set forth in the Capital Program.

It is understood that Program Work does not include, and this Project Labor Agreement shall not apply to, any other work, including:

1. Contracts let and work performed in connection with projects carried over, recycled from, or performed under bids or rebids relating to work initiated under Fiscal Year Programs prior to the date of execution of this 2015 PLA or to any contracts for Fiscal Year Programs after the date of execution of this 2015 PLA that have been bid prior to the effective date of this Agreement.

2. Contracts let and work performed in connection with any and all Mentor and Graduate Mentor Contracts involving minority and women contractors, provided such contracts have a value of $1,000,000 or less; except to the extent that a Mentor Contractor not otherwise bound to a Schedule "A" chooses, on a job-by-job basis, to work under the terms of the PLA.

3. Contracts let by and work performed under New York City Department of Education or New York City Department of Design and Construction Management.

4. Contracts let and work performed for lease build out construction.

5. Contracts let and work performed under the New Capacity Program of the Capital Plan (including new building construction, additions to existing facilities, and lease build outs).

6. Contracts let and work performed under the Charter and Partnership Schools Program of the Capital Plan.

7.     Contracts let and work performed for Maintenance and Janitorial work.

8.     Technology Enhancements to the extent they do not involve construction services.

## SECTION 2. TIME LIMITATIONS

In addition to falling within the scope of Section 1, to be covered by this Agreement Program Work must be (1) let for bid after the effective date of this Agreement, and (2) let for bid prior to June 30, 2019, the expiration date of this Agreement. It is understood that this Agreement, together with all of its provisions, shall remain in effect for all such Program Work until completion, even if not completed by the expiration date of the Agreement. If Program Work otherwise falling within the scope of Section 1 is not let for bid by the expiration date of this Agreement, this Agreement may be extended to that work by mutual agreement of the parties.

## SECTION 3. EXCLUDED EMPLOYEES

The following persons are not subject to the provisions of this Agreement, even though performing Program Work:

a.     Superintendents, supervisors (excluding general and forepersons specifically covered by a craft's Schedule A), engineers, professional engineers and/or licensed architects engaged in inspection and testing, quality control/assurance personnel, timekeepers, mail carriers, clerks, office workers, messengers, guards, technicians, non-manual employees, and all professional, engineering, administrative and management persons;

b.     Employees of the SCA, or of any New York City or other municipal or State agency entity (including, but not limited to, employees of the New York City Department of Education ("DOE")), or employees of any other public employer, even though working on the

## SECTION 4. NON-APPLICATION TO CERTAIN ENTITIES

This Agreement shall not apply to those parents, affiliates, subsidiaries, or other joint or sole ventures of any Contractor which do not perform work Project Work. It is agreed, for the purposes of this Agreement only, that this Agreement does not have the effect of creating any joint employment, single employer or alter ego status among the SCA (including in its capacity as Construction Project Manager) or any Contractor. The Agreement shall further not apply to the SCA or any New York City or other municipal or State agency, SCA, or entity (including, but not limited to, the DOE or the New York City Department of Design & Construction), or any other public entity, and nothing contained herein shall be construed to prohibit or restrict the SCA or its employees, or any New York State, New York City, or other municipal or State agency or entity (including but not limited to the DOE) and its employees from performing on or off-site work related to Programs. As the contracts involving covered work are completed and accepted, the Agreement shall not have further force or effect on such items or areas except where inspections, additions, repairs, modifications, check-out and/or warranty work are assigned in writing (copy to Local Union involved) by the Construction Project Manager for performance under the terms of this Agreement.

## ARTICLE 4- UNION RECOGNITION AND EMPLOYMENT

### SECTION 1. PRE-HIRE RECOGNITION

The Contractors recognize the Unions as the sole and exclusive bargaining representatives of all craft employees who are performing on-site Program Work, with respect to that work.

### SECTION 2. UNION REFERRAL

A.     The Contractors agree to employ and hire craft employees for Program

Work covered by this Agreement through the job referral systems and hiring halls (where the referrals meet the qualifications set forth in items 1, 2 and 4 of subparagraph B) established in the Local Unions' area collective bargaining agreements (attached as Schedule A to this Agreement). Notwithstanding this, Contractors shall have sole right to determine the competency of all referrals; to determine the number of employees required; select employees for layoff (subject to Article 5, Section 3); and the sole right to reject any applicant referred by a Local Union, subject to the show-up payments. In the event that a Local Union is unable to fill any request for qualified employees within a 48 hour period after such requisition is made by a Contractor (Saturdays, Sundays and holidays excepted), a Contractor may employ qualified applicants from any other available source. In the event that the Local Union does not have a job referral system, the Contractor shall give the Local Union first preference to refer applicants, subject to the other provisions of this Article. The Contractor shall notify the Local Union of craft employees hired for Program Work within its jurisdiction from any source other than referral by the Union.

B. A Contractor may request by name, and the Local will honor, referral of persons who have applied to the Local for Program Work and who meet the following qualifications:

(1)     possess any license required by New York State law for the Program Work to be performed;

(2)     have worked a total of at least 1000 hours in the Construction field during the prior three (3) years; and

(3)     were on the Contractor's active payroll for at least 60 out of the 180 calendar days prior to the contract award.

No more than twelve (12%) percent of the employees covered by this Agreement, per Contractor by craft, shall be hired through the special provisions above. Under this provision, name referrals begin with the eighth employee needed and continue on that same basis.

C. Notwithstanding Section 2(B) above, a Mentor or Graduate Mentor performing work under this PLA on a contract valued at one million ($1,000,000) dollars or less may employ its core workforce meeting the standards set forth in Section 2B(1),(2) and (3) above, and any additional employees shall be hired in accordance with Section 2A above. Where a Mentor or Graduate Mentor chooses to employ its core workforce in accordance with this provision, such Mentor or Graduate Mentor Contractor shall provide to the SCA and the Construction Manager, if appropriate, a list of core employees with sufficient back-up documentation, including, but not limited to, payroll records, establishing that those employees satisfy the standards set forth in Section 2B above, and such information shall be provided to any Local Union requesting same for the purpose of monitoring compliance with this Agreement.

D. Where a Mentor or Graduate Mentor Contractor voluntarily enters into a Collective Bargaining Agreement ("CBA") with a BCTC Union, the employees of such Contractor at the time the CBA is executed shall be allowed to join the Union for the applicable trade subject to satisfying the Union's basic standards of proficiency for admission.

## SECTION 3. NON-DISCRIMINATION IN REFERRALS

The Council represents that each Local Union hiring halls and referral systems will be operated in a non-discriminatory manner and in full compliance with all applicable federal, state, and local laws and regulations which require equal employment opportunities. Referrals shall not be affected in any way by the rules, regulations, bylaws, constitutional

provisions, or any other aspects or obligations of Union membership, policies or requirements and shall be subject to such other conditions as are established in this Article. No employment applicant shall be discriminated against by any referral system or hiring hall because of the applicant's Union membership, or lack thereof.

## SECTION 4. MINORITY AND FEMALE REFERRALS

In the event a Local Union either fails, or is unable, to refer qualified minority or female applicants in percentages equaling affirmative action goals as set forth in the SCA's bid specifications, the Contractor may employ qualified minority or female applicants from any other available source. In the event that the SCA adopts local workforce participation goals to be set forth in its bid specifications, the SCA and the BCTC will work together to seek agreement on appropriate goals to be set forth in applicable bid documents and to be subject to the provisions of this section.

## SECTION 5. CROSS AND QUALIFIED REFERRALS

The Local Unions shall not knowingly refer to a Contractor an employee then employed by another Contractor working under this Agreement. The Local Unions will exert their utmost efforts to recruit sufficient numbers of skilled and qualified crafts employees to fulfill the requirements of the Contractor.

## SECTION 6. UNION DUES

All employees covered by this Agreement shall be subject to the union security provisions contained in the applicable Schedule A local agreements, as amended from time to time, but only for the period of time during which they are performing on-site Program Work and only to the extent of tendering payment of the applicable union dues and assessments uniformly required for union membership in the Local Unions which represent the craft in which

the employee is performing Program Work. No employee shall be discriminated against at any Program Work site because of the employee's union membership or lack thereof. In the case of unaffiliated employees, the dues payment will be received by the Local Unions as an agency shop fee.

### SECTION 7. CRAFT FOREPERSONS AND GENERAL FOREPERSONS

The selection of craft forepersons and/or general forepersons and the number of forepersons required shall be solely the responsibility of the Contractor except where otherwise provided by specific provisions of an applicable Schedule A. All forepersons shall take orders exclusively from the designated Contractor representatives. Craft forepersons shall be designated as working forepersons at the request of the Contractor, except when an existing local Collective Bargaining Agreement prohibits a foreperson from working when the craftpersons he is leading exceed a specified number

### ARTICLE 5- UNION REPRESENTATION

### SECTION 1. LOCAL UNION REPRESENTATIVE

Each Local Union representing on-site Program Work employees shall be entitled to designate in writing (copy to Contractor involved and Construction Project Manager) one representative, and/or the Business Manager, who shall be afforded access to the Project Work site.

### SECTION 2. STEWARDS

(a) Each Local Union shall have the right to designate a working journey person as a Steward and an alternate, and shall notify the Contractor and Construction Project Manager of the identity of the designated Steward (and alternate) prior to the assumption of such duties. Stewards shall not exercise supervisory functions and will receive the regular rate of pay for their

craft classifications. There will be no non-working Stewards, all Stewards are working Stewards.

(b) In addition to his/her work as an employee, the Steward shall have the right to receive complaints or grievances and to discuss and assist in their adjustment with the Contractor's appropriate supervisor. Each Steward shall be concerned with the employees of the Steward's Contractor and, if applicable, subcontractors of that Contractor, but not with the employees of any other Contractor. The Contractor will not discriminate against the Steward in the proper performance of Union duties.

(c) The Stewards shall not have the right to determine when overtime shall be worked, or who shall work overtime except pursuant to a Schedule A provision providing procedures for the equitable distribution of overtime.

## SECTION 3. LAYOFF OF A STEWARD

Contractors agree to notify the appropriate Union twenty-four (24) hours prior to the layoff of a Steward, except in cases of discipline or discharge for just cause. If a Steward is protected against layoff by a Schedule A provision, such provision shall be recognized to the extent the Steward possesses the necessary qualifications to perform the work required. In any case in which a Steward is discharged or disciplined for just cause, the Local Union involved shall be notified immediately by the Contractor.

## ARTICLE 6- MANAGEMENT'S RIGHTS

## SECTION 1. RESERVATION OF RIGHTS

Except as expressly limited by a specific provision of this Agreement, Contractors retain full and exclusive authority for the management of their operations including, but not limited to: the right to direct the work force, including determination as to the number of employees to be hired and the qualifications therefore; the promotion, transfer, layoff of its

employees; or the discipline or discharge for just cause of its employees; the assignment and schedule of work; the promulgation of reasonable Program Work rules that are not inconsistent with this Agreement or rules common in the industry and are reasonably related to the nature of work; and, the requirement, timing and number of employees to be utilized for overtime work. No rules, customs, or practices which limit or restrict productivity or efficiency of the individual, as determined by the Contractor or SCA (including in its role as Construction Project Manager), and/or joint working efforts with other employees shall be permitted or observed.

## SECTION 2. MATERIALS, METHODS & EQUIPMENT

There shall be no limitation or restriction upon the Contractors' choice of materials, techniques, methods, technology or design, or, regardless of source or location, upon the use and installation of equipment, machinery, package units, pre-cast, pre-fabricated, pre-finished, or pre-assembled materials or products, tools, or other labor-saving devices. Contractors may, without restriction, install or use materials, supplies or equipment regardless of their source, provided that they comply with lawful union standards clauses and fabrication provisions contained in Schedule "A" agreements. The on-site installation or application of such items shall be performed by the craft having jurisdiction over such work; provided, however, it is recognized that other personnel having special qualifications may participate, in a supervisory capacity, in the installation, check-off or testing of specialized or unusual equipment or facilities as designated by the Contractor. There shall be no restrictions as to work which is performed off-site for Program Work.

## ARTICLE 7- WORK STOPPAGES AND LOCKOUTS

## SECTION 1. NO STRIKES-NO LOCK OUT

There shall be no strikes, sympathy strikes, picketing, work stoppages,

slowdowns, hand billing, demonstrations, or other disruptive activity at the Program Work site for any reason by any Union or employee against any Contractor or employer. There shall be no other Union, or concerted or employee activity which disrupts or interferes with the operation of the Program Work or the educational mission and objectives of the New York City public schools at any Program Work site. Failure of any Union or employee to cross any picket line established by any Union, signatory or non-signatory to this Agreement, or the picket or demonstration line of any other organization, at or in proximity to a Program Work site is a violation of this Article. Should any employees breach this provision, the Unions will use their best efforts to try immediately to end that breach and return all employees to work. There shall be no lockout at a Program Work site by any signatory Contractor.

## SECTION 2. DISCHARGE FOR VIOLATION

A Contractor may discharge any employee violating Section 1, above, and any such employee will not be eligible thereafter for referral under this Agreement for a period of one hundred (100) days.

## SECTION 3. NOTIFICATION

If a Contractor contends that any Union has violated this Article, it shall notify the Local Union involved advising of such fact, with copies of the notification to the Council. The Local Union shall instruct and order, the Council shall request, and each shall otherwise use their best efforts to cause, the employees (and where necessary the Council shall use its best efforts to cause the Local Union), to immediately cease and desist from any violation of this Article. If the Council complies with these obligations it shall not be liable for the unauthorized acts of a Local Union or its members. Similarly, a Local Union and its members will not be liable for any unauthorized acts of the Council. Failure of a Contractor or the Construction Project Manager to

give any notification set forth in this Article shall not excuse any violation of Section 1 of this Article.

## SECTION 4. EXPEDITED ARBITRATION

Any Contractor or Union alleging a violation of Section 1 of this Article may utilize the expedited procedure set forth below (in lieu of, or in addition to, any actions at law or equity) that may be brought.

a.      A party invoking this procedure shall notify Richard Adelman or Richard C. Cooper who shall alternate (beginning with Arbitrator Richard Adelman) as Arbitrator under this expedited arbitration procedure. If the Arbitrator next on the list is not available to hear the matter within twenty-four (24) hours of notice, the next Arbitrator on the list shall be called. Copies of such notification will be simultaneously sent to the alleged violator and Council.

b.      The arbitrator shall thereupon, after notice as to time and place to the Contractor, the Local Union involved, the Council and the Construction Project Manager, hold a hearing within forty-eight (48) hours of receipt of the notice invoking the procedure if it is contended that the violation still exists. The hearing will not, however, be scheduled for less than twenty-four (24) hours after the notice to the district or area council required by Section 3, above.

c.      All notices pursuant to this Article may be provided by telephone, telegraph, hand delivery, or fax, confirmed by overnight delivery, to the Arbitrator, Contractor, Construction Project Manager, and Local Union involved. The hearing may be held on any day, including Saturdays or Sundays. The hearing shall be completed in one session, which shall not exceed eight (8) hours duration (no more than four (4) hours being allowed to either side to present their case, and conduct their cross examination) unless otherwise agreed. A failure of any

Union or Contractor to attend the hearing shall not delay the hearing of evidence by those present or the issuance of an award by the Arbitrator.

      d.     The sole issue at the hearing shall be whether a violation of Section 1, above, occurred. If a violation is found to have occurred, the Arbitrator shall issue a Cease and Desist Award restraining such violation and serve copies on the Contractor and Union involved. The Arbitrator shall have no authority to consider any matter in justification, explanation or mitigation of such violation or to award damages (any damages issue is reserved solely for court proceedings, if any.) The Award shall be issued in writing within 3 hours after the close of the hearing, and may be issued without an Opinion. If any involved party desires an Opinion, one shall be issued within fifteen (15) calendar days, but its issuance shall not delay compliance with, or enforcement of, the Award.

      e.     An Award issued under this procedure may be enforced by any court of competent jurisdiction upon the filing of this Agreement together with the Award. Notice of the filing of such enforcement proceedings shall be given to the Union or Contractor involved, and the Construction Project Manager. In any court proceeding to obtain a temporary or preliminary order enforcing the arbitrator's Award as issued under this expedited procedure, the involved Union and Contractor waive their right to a hearing and agree that such proceedings may be ex parte, provided notice is given to opposing counsel. Such agreement does not waive any party's right to participate in a hearing for a final court order of enforcement or in any contempt proceeding.

        f.     Any rights created by statute or law governing arbitration proceedings which are inconsistent with the procedure set forth in this Article, or which interfere with compliance thereto, are hereby waived by the Contractors and Unions to whom they accrue.

g. The fees and expenses of the Arbitrator shall be equally divided between the involved Contractor and Union.

## SECTION 5. ARBITRATION OF DISCHARGES FOR VIOLATION

Procedures contained in Article 9 shall not be applicable to any alleged violation of this Article, with the single exception that an employee discharged for violation of Section 1, above, may have recourse to the procedures of Article 9 to determine only if the employee did, in fact, violate the provisions of Section 1 of this Article, but not for the purpose of modifying the discipline imposed where a violation is found to have occurred.

## ARTICLE 8 - LABOR MANAGEMENT COMMITTEE

### SECTION 1. SUBJECTS

The Program Labor Management Committee will meet on a regular basis to: 1) promote harmonious relations among the Contractors and Unions; 2) enhance safety awareness, cost effectiveness and productivity of construction operations; 3) protect the public interests; 4) discuss matters relating to staffing and scheduling with safety and productivity as considerations; and 5) review Affirmative Action and equal employment opportunity matters pertaining to the Project Work.

### SECTION 2. COMPOSITION

The Committee shall be jointly chaired by a designee of the SCA and the Council. It may include representatives of the Local Unions and Contractors involved in the issues being discussed. The Committee may conduct business through mutually agreed upon sub-committees.

## ARTICLE 9- GRIEVANCE & ARBITRATION PROCEDURE

### SECTION 1. PROCEDURE FOR RESOLUTION OF GRIEVANCES

Any question, dispute or claim arising out of, or involving the interpretation or

application of this Agreement (other than jurisdictional disputes or alleged violations of Article 7, Section 1) shall be considered a grievance and shall be resolved pursuant to the exclusive procedure of the steps described below, provided, in all cases, that the question, dispute or claim arose during the term of this Agreement. Grievances shall include the SCA contract number and the program work address provided that such information is posted at the program work site, and available on the SCA website or other publically accessible location.

Grievances as to whether a scope of work is included or excluded from this Agreement shall be submitted to the Labor Management Committee (LMC) in the first instance rather than Step 1 below. To be timely, such notice must be given no later than ten (10) days prior to a bid opening if the grievance is challenging a determination by the SCA that the contract is not subject to this Agreement. For other grievances as to Contractor scope of work issues, notice of such challenges shall be submitted to the LMC within seven (7) calendar days after the act, occurrence or event giving rise to the grievance. If the scope of work grievance is not resolved within twenty-one (21) days of its submission to the LMC, then the grievance may proceed directly to Step 3 below.

**Step 1:**

(a)     When any employee covered by this Agreement feels aggrieved by a claimed violation of this Agreement, the employee shall, through the Local Union business representative or job steward give notice of the claimed violation to the work site representative of the involved Contractor and the Construction Project Manager. To be timely, such notice of the grievance must be given within seven (7) calendar days after the act, occurrence or event giving rise to the grievance. The business representative of the Local Union or the job steward and the work site representative of the involved Contractor shall meet and endeavor to adjust the

matter within seven (7) calendar days after timely notice has been given. If they fail to resolve the matter within the prescribed period, the grieving party, may, within seven (7) calendar days thereafter, pursue Step 2 of the grievance procedure by serving the involved Contractor with written copies of the grievance setting forth a description of the claimed violation, the date on which the grievance occurred, and the provisions of the Agreement alleged to have been violated. Grievances and disputes settled at Step 1 are non-precedential except as to the specific Local Union, employee and Contractor directly involved unless the settlement is accepted in writing by the Construction Project Manager (or designee) as creating a precedent.

(b) Should any signatory to this Agreement have a dispute (excepting jurisdictional disputes or alleged violations of Article 7, Section 1) with any other signatory to this Agreement and, if after conferring, a settlement is not reached within seven (7) calendar days, the dispute shall be reduced to writing and proceed to Step 2 in the same manner as outlined in subparagraph (a) for the adjustment of employee grievances.

**Step 2:**

A Step 2 grievance shall be filed with the SCA, the BCTC, the Contractor, and, where applicable, the subcontractor. The Business Manager or designee of the involved Local Union, together with representatives of the involved Contractor, Council, and the Construction Project Manager (or designee), shall meet in Step 2 within seven (7) calendar days of service of the written grievance to arrive at a satisfactory settlement. The BCTC shall schedule the Step 2 meeting.

**Step 3:**

(a) If the grievance shall have been submitted but not resolved in Step 2, any of the participating Step 2 entities may, within twenty-one (21) calendar days after the initial Step 2

meeting, submit the grievance in writing (copies to other participants, including the Construction Project Manager or designee) to Richard Adelman or Richard C. Cooper who shall act, alternately (beginning with Arbitrator Richard Adelman), as the Arbitrator under this procedure. The Labor Arbitration Rules of the American Arbitration Association shall govern the conduct of the arbitration hearing, at which all Step 2 participants shall be parties. The decision of the Arbitrator shall be final and binding on the involved Contractor, Local Union and employees and the fees and expenses of such arbitrations shall be borne equally by the involved Contractor and Local Union.

(b) Failure of the grieving party to adhere to the time limits set forth in this Article shall render the grievance null and void. These time limits may be extended only by written consent of the Construction Project Manager (or designee), involved Contractor and involved Local Union at the particular step where the extension is agreed upon. The Arbitrator shall have SCA to make decisions only on the issues presented to him and shall not have the SCA to change, add to, delete or modify any provision of this Agreement.

## SECTION 2. LIMITATION AS TO RETROACTIVITY

No arbitration decision or award, with the exception of those related to compliance with requirements to pay prevailing wages and supplements in accordance with Federal or State law, may provide retroactivity of any kind exceeding sixty (60) calendar days prior to the date of service of the written grievance on the Construction Project Manager and the involved Contractor or Local Union.

## SECTION 3. PARTICIPATION BY CONSTRUCTION PROJECT MANAGER

The Construction Project Manager (or such other designee of the SCA) shall be notified by the involved Contractor of all actions at Steps 2 and 3 and, at its election, may

participate in full in all proceedings at these Steps, including Step 3 arbitration.

## ARTICLE 10 - JURISDICTIONAL DISPUTES

The New York Plan For the Settlement of Jurisdictional Disputes ("New York Plan") shall apply to the settlement of all jurisdictional disputes involving Program Work.

### SECTION 1. NO DISRUPTIONS

There will be no strikes, sympathy strikes, work stoppages, slowdowns, picketing, or other disruptive activity of any kind arising out of any jurisdictional dispute. Pending the resolution of the dispute, the work shall continue uninterrupted and as assigned by the Contractor. No jurisdictional dispute shall excuse a violation of Article 7.

### SECTION 2. ASSIGNMENT

All Project Work assignments shall be made by the Contractor to the construction divisions of BCTC or BCTD affiliated unions pursuant to the Greenbook decisions of the New York Plan. Where there are no applicable Greenbook decisions, assignments shall be made in accordance with the provisions of the New York Plan.

### SECTION 3. NO INTERFERENCE WITH WORK

There shall be no interference or interruption of any kind with the Project Work while any jurisdictional dispute is being resolved. The work shall proceed as assigned by the Contractor until finally resolved under the applicable procedure of this Article. The award shall be confirmed in writing to the involved parties. There shall be no strike, work stoppage, or interruption in protest of any such award.

## ARTICLE 11 - WAGES AND BENEFITS

### SECTION 1. CLASSIFICATION AND BASE HOURLY RATE

All employees covered by this Agreement shall be classified in accordance with

the work performed and paid the base, straight time hourly wage rates applicable for those classifications as required by the applicable prevailing wage laws.

## SECTION 2. EMPLOYEE BENEFITS

A.    The Contractors agree to pay timely  contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in Schedule A (in the appropriate Schedule A amounts), provided that such benefits are required to be paid on public works under any applicable prevailing wage law.  Bona fide jointly trusteed employee benefit plans established or negotiated through collective bargaining during the life of this Agreement may be added if similarly required under applicable prevailing wage law.  Contractors, not otherwise contractually bound to do so, shall not be required to contribute to benefits, trusts, or plans of any kind which are not required by the prevailing wage law; however, this provision does not relieve Contractors signatory to local collective bargaining agreement with any affiliated union from complying with the fringe benefit requirements for all funds contained in the CBA.

B.    1.    Notwithstanding Section 2 (A) above, and subject to 2 (B)(2) below, Contractors who designate employees pursuant to Article 4, Section 2 (B) and (C) ("core" employees) that are not signatory to a Schedule A Agreement and who maintain bona fide private benefit plans which satisfy the requirements of Section 220 of the Labor Law, may satisfy the above benefit obligation with respect to those employees by providing those employees with coverage under their private benefit plans (to the extent consistent with Section 220). The total benefit payments to be made on behalf of each such employees must be equal to the total Section 220 supplement amount and any shortfall must be paid by cash supplement to the employee.

2. A Contractor that will satisfy its Section 220 obligations in accordance with subsection 2(B)(1) above shall make available to the SCA at the time of contract award a complete set of plan documents for each non-Schedule A benefit plan into which contributions will be made and/or coverage provided pursuant to the provisions of Section 2(B)(l) above. The Contractor shall also provide certification from a certified public accountant as to the annualized hourly value of such benefits consistent with the requirements of Section 220.

3. The SCA shall verify that the alternate benefit plan(s), together with any cash supplement to the employee, is compliant with Section 220 prior to awarding the Contractor a contract covered by this Agreement. In the event the Contractor's alternate benefit plan(s), together with any cash supplement to the employee, is determined to be compliant with Section 220 and will be utilized by the Contractor on behalf of Article 4, Section 2(B) and (C) core employees, the Local Unions have no duty to enforce the Contractor's obligations on the alternate benefit plan(s) as they are not party to the alternate plan(s) or privy to the terms and conditions of the plan obligations. In the event the SCA determines the alternate benefit plan(s), together with any cash supplement to the employee, is not compliant with Section 220, the Contractor may, upon executing a Letter of Assent, satisfy its obligations for all employees, including core employees, by contributing to the Schedule A benefit plans in accordance with the terms of the Schedule A Agreements.

C. The Contractors agree to be bound by the written terms of the legally established jointly trusteed Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds but only with regard to Program Work done under this Agreement and only for those employees to whom this Agreement requires such benefit payments.

D.    1. To the extent consistent with Public Authorities Law Section 1734 and other applicable SCA procurement requirements, and in consideration of the Unions' waiver of their rights to withhold labor from a Contractor or subcontractor delinquent in the payment of employee benefit contributions ("Delinquent Contractor"); the SCA agrees that where any such union and/or employee benefit fund shall notify the SCA, the General Contractor, and the Delinquent Contractor, in writing with back-up documentation that the Delinquent Contractor has failed to make fringe benefit contributions to it as provided herein and the Delinquent Contractor shall fail, within ten (10) calendar days after receipt of such notice, to furnish either proof of such payment or notice that the amount claimed by the union and/or employee benefit fund is in dispute, the SCA shall withhold from amounts then or thereafter becoming due and payable to the General Contractor an amount equal to that portion of such payment due to the General Contractor that relates solely to the work performed by the Delinquent Contractor which the Union or employee benefit fund claims to be due it, and shall remit the amount when and so withheld to the employee benefit fund and deduct such payment from the amounts then otherwise due and payable to the General Contractor, which payment shall, as between the General Contractor and the SCA, be deemed a payment by the SCA to the General Contractor; provided however, that in any month, such withholding shall not exceed the amount contained in the General Contractor's monthly invoice for work performed by the Delinquent Contractor. The Union or its employee benefit funds shall include in its notification of delinquent payment of fringe benefits only such amount it asserts the Delinquent Contractor failed to pay on the specific project against which the claim is made and the Union or its employee benefit funds may not include in such notification any amount such Delinquent Contractor may have failed to pay on any other SCA or non-SCA project.

2.      In addition, where a Union or employee benefit fund gives notice to the SCA that a Contractor is Delinquent as defined in subsection 2(D)(1) above and the SCA determines that the notice includes appropriate back-up documentation that the Contractor is delinquent, the SCA will promptly, but not later than twenty (20) days after receipt of the notice, provide a copy of said notice to the SCA Labor Law Compliance Unit. Any documentation by the SCA that there is insufficient back-up must be reasonable. In the event the SCA determines there is insufficient back-up documentation, it will notify the appropriate Union and/or employee benefit fund promptly, but not later than twenty (20) days after receipt of the Delinquency Notice, and shall include notice of what additional documentation is requested. This provision is intended to enhance compliance with the prevailing wage law and the PLA with respect to the payment of fringe benefits, and is not intended as a substitute for the resolution of a disputed claim pursuant to any applicable law or agreement.

The SCA will thereafter require the Delinquent Contractor to provide cancelled checks or other equivalent proof of payment of benefit contributions that have come due, to be submitted with certified payroll reports for all Program Work covered by this Agreement on which the Delinquent Contractor is engaged, for at least a one (1) year period or such earlier period if the Contractor is ultimately determined not be a Delinquent Contractor. Such proof of payment, when required, is a condition of payment of the Delinquent Contractor's invoices by any entity, including, but not limited to, the SCA, Construction Manager, General Contractor, the prime, or higher level subcontractor, as is appropriate under the Delinquent Contractor's engagement. The Union and the employee benefit funds shall, upon request, receive copies of the certified payrolls, cancelled checks, or other proof of payment from the SCA.

E.      In the event the General Contractor or Delinquent Contractor shall notify

the SCA as above provided that the claim of the Union or employee benefit fund is in dispute, the SCA shall withhold from amounts then or thereafter becoming due and payable to the General Contractor an amount equal to that portion of such payment due to the General Contractor that relates solely to the work performed by the Delinquent Contractor which the Union and/or employee benefit fund claims to be due it, pending resolution of the dispute pursuant to the Union's Schedule A agreement, and the amount shall be paid to the party or parties ultimately determined to be entitled thereto, or held until the Delinquent Contractor and union or fringe benefit fund shall otherwise agree as to the disposition thereof; provided however, that such withholding shall not exceed the amount contained in the General Contractor's monthly invoice for work performed by the Delinquent Contractor. In the event the SCA shall be required to withhold amounts from a General Contractor for the benefit of more than one employee benefit fund, the amounts so withheld in the manner and amount prescribed above shall be applied to or for such fund in the order in which the written notices of nonpayment have been received by the SCA, and if more than one such notice was received on the same day, proportionately based upon the amount of the union and/or employee benefit fund claims received on such day. Nothing herein contained shall prevent the SCA from commencing an interpleader action to determine entitlement to a disputed payment in accordance with section one thousand six of the civil practice law and rules or any successor provision thereto.

F.      Payment to an employee benefit fund under this provision shall not relieve the General Contractor or Delinquent Contractor from responsibility for the work covered by the payment. Except as otherwise provided, nothing contained herein shall create any obligation on the part of the SCA to pay any Union or employee benefit fund, nor shall anything provided herein serve to create any relationship in contract or otherwise, implied or expressed, between

the Union/employee benefit fund and/or fringe benefit and the SCA.

## ARTICLE 12- HOURS OF WORK, PREMIUM PAYMENTS,

## SHIFTS AND HOLIDAYS

### SECTION 1. WORK WEEK AND WORK DAY

A.     The standard work week shall be Monday through Friday, and consist of forty (40) hours of work at straight time rates per one of the following schedules:

(1)     Five-Day Work Week: Five (5) days, Eight (8) hours plus 1/2 hour unpaid lunch period each day.

(2)     Four-Day Work Week: Four (4) days, Ten (10) hours plus 1/2 hour unpaid lunch period each day.

(3)  Notwithstanding the above, the standard work week may be reduced to 35 or 37 ½ hours of work at straight time rates, Monday through Friday, 7 or 7 ½ hours per day, plus ½ hour unpaid lunch hour in those limited circumstances where the SCA is prevented from working a full  eight (8) hours by the New York City Department of Buildings, Department of Transportation, or other governmental regulatory agency.  The 10 hour, 8 hour, 7 ½, or 7 hour work day must be established by the SCA and may not be altered by the Contractor.

B. Except as provided in paragraph A(3) above, in accordance with Program needs, the Day Shift shall commence between the hours of 6:00 a.m. and 9:00 a.m. and shall end between the hours of 2:30 p.m. and 7:30 p.m. The Evening Shift shall commence between the hours of 3:00 p.m. and 6:00 p.m., unless different times are necessitated by the SCA's phasing plans on specific projects.   The Night Shift shall commence between the hours of 11:00 p.m. and 2:00 a.m., unless different times are necessitated by the SCA's phasing plans on specific projects. Subject to the foregoing, starting and quitting times shall occur at the Program Work site

designated by the Contractor.

C. Scheduling - Monday through Friday is the standard work week. The Contractor shall have the option of scheduling either a five-day or four-day work week and work day hours consistent with work requirements and with emphasis on the minimization of interference with the educational mission of the New York City public schools. (A Contractor may switch between five-day and four-day weeks only with notice to and approval of the SCA.) When conditions beyond the control of the Contractor, such as severe weather, power failure, fire, or natural disaster, prevent the performance of Program Work on a regularly scheduled work day, the Contractor may, with mutual agreement of the Local Union on a craft-by-craft basis, schedule Friday (where on 4/10s) or schedule Saturday (where on 5/8s) during that calendar week in which a workday was lost, at straight time pay (subject to Section 3 B), provided it does not actually constitute overtime for the employees as set forth in Section 2 below.

D. Notice - Contractors shall provide not less than five (5) days prior notice to the Local Union involved as to the work week and work hour schedules to be worked or such lesser notice as may be mutually agreed upon.

## SECTION 2. OVERTIME

Except as provided elsewhere in the PLA (e.g., Article 12, Section 1C and Article 12, Section 3B), overtime pay for hours outside of the standard work week and work day, described in Section 1(A) above, shall be paid in accordance with the applicable Schedule A. There will be no restriction upon the Contractor's scheduling of overtime or the non-discriminatory designation of employees who shall be worked, including the use of employees, other than those who have worked the regular or scheduled work week at straight time rates, except that, in order to promote efficiency, weekend overtime work shall be offered first to

members of the crew which handled that work during the week. There shall be no pyramiding of overtime pay under any circumstances. The Contractor shall have the right to schedule work so as to minimize overtime or schedule overtime as to some, but not all, of the crafts and whether or not of a continuous nature.

## SECTION 3. SHIFTS

A.     Flexible Schedules - Scheduling of shift work, including Saturday and Sunday work, shall be within the discretion of the Contractor in order to meet Project Work schedules and existing Project Work conditions including the minimization of interference with the educational mission of the New York City public schools. It is not necessary to work a day shift in order to schedule a second or third shift, or a second shift in order to schedule a third shift, or to schedule all of the crafts when only certain crafts or employees are needed. Shifts must have prior approval of the Construction Project Manager, and must be scheduled with not less than five work days notice to the Local Union.

B.     Second/or Third Shifts/Saturday and/or Sunday Work - The second shift shall start between 3 p.m. and 6 p.m. and the third shift shall start between 11 p.m. and 2 a.m., subject to different times necessitated by the SCA's phasing plans on specific projects. There shall be no reduction in shift hours work; however, with respect to second and third shift work there shall be a five (5%) percent shift differential premium.

1) This five (5%) percent shift differential premium shall also apply to second and/or third shift work performed on Saturdays or Sundays as make-up days, when necessitated by severe weather, power failure, fire or natural disaster of for similar circumstances beyond the Contractor's control. (The Contractor shall notify the Local Union on the missed day or as soon thereafter as practicable if such a make-up day is to be worked.) No other premium or other

payments for such work shall be required unless such work is in excess of forty (40) hours in the week.

2) Weekend Work: Where a worker has not already worked five (5) full work days in accordance with the alternate work day schedules in Section 1 (A), in the week, work performed on weekend days, that are not make-up days, shall be paid at the Contract rate or Time and one-half, whichever is less.

3) Weekend Overtime work: Where a worker has already worked full work days in accordance with the alternate work day schedules in Section 1 (A) during the regular work week, work performed as weekend overtime work shall be paid pursuant to Schedule "A."

4) All employees within a classification performing Program Work will be paid at the same wage base rate regardless of the shift or work schedule, subject only to the foregoing provisions.

5) The parties acknowledge that the foregoing, providing for second and third shift work to be performed at a five (5%) percent differential above the labor costs of day shift work, is material to the purposes of this Agreement.

C.      Flexible Starting Times - Shift starting times will be adjusted by the Contractor as necessary to fulfill Project Work requirements subject to the notice requirements of paragraph A.

D.      Four Tens (4/10s) — Notwithstanding any other provision of this Agreement, when working a four-day work week, the standard work day shall consist of ten (10) hours work for ten (10) hours of pay at the straight time rate exclusive of an unpaid 1/2 hour meal period and regardless of the starting time, upon the proper approval by the New York State Department of Labor, as necessary.

## SECTION 4. HOLIDAYS

A.    Schedule - There shall be nine (9) recognized holidays on the Project:

| | |
|---|---|
| New Years Day | Labor Day |
| Martin Luther King Day | President's Day |
| Memorial Day | Veteran's Day |
| | Thanksgiving Day |
| Independence Day | Christmas Day |

All said holidays shall be observed on the dates designated by New York State Law. In the absence of such designation, they shall be observed on the calendar date except those holidays which occur on Saturday or Sunday shall be observed on the following Monday.

B.    Payment - Regular holiday pay, if any, for work performed on such a recognized holiday shall be in accordance with the applicable Schedule A.

C. Exclusivity - No holidays other than those listed in Section 4-A above shall be recognized or observed.

## SECTION 5. REPORTING PAY

A.    Employees who report to the work location pursuant to their regular schedule and who are not provided with work shall be paid two (2) hours reporting pay at straight time rates. An employee whose work is terminated early by a Contractor due to severe weather, power failure, fire or natural disaster or for similar circumstances beyond the Contractor's control, shall receive pay only for such time as is actually worked. In other instances in which an employee's work is terminated early (unless provided otherwise elsewhere in this Agreement), the employee shall be paid for his full shift. Contractors shall not be permitted to call, text, or email

or voicemail employees in advance of their regularly scheduled shift starting time to avoid reporting pay. Notwithstanding the above, in the event that the National Weather Service issues a Weather Advisory for the area in which the work location is situated, and the entire project is shut down as a result of the Weather Advisory, the Contractor shall be permitted to ~~call or~~ speak to employees no less than four (4) hours in advance of their shift starting time, unless the Local Union consents to a shorter notice in writing, to advise them not to report to work due to the National Weather Service Advisory, and employees who are so notified shall not receive two (2) hours reporting pay if they report to the work location. The Contractor shall make every effort to notify each employee directly and confirm that notification has been received. Voice, text, and email messages left for employees without confirmation of delivery and receipt by employee do not constitute sufficient notice under this provision.

B. When an employee, who has completed his/her scheduled shift and left the Project Work site, is "called out" to perform special work of a casual, incidental or irregular nature, the employee shall receive overtime pay at the rate of time and one-half of the employee's straight time rate for hours actually worked.

C. When an employee leaves the job or work location of his/her own volition or is discharged for cause or is not working as a result of the Contractor's invocation of Section 7 below, s/he shall be paid only for the actual time worked.

D. Except as specifically set forth in this Article there shall be no premiums, bonuses, hazardous duty, high time, or other special premium payments or reduction in shift hours of any kind.

E. There shall be no pay for time not actually worked except as specifically set forth in this Article and except where an applicable Schedule A requires a full weeks' pay for

forepersons.

## SECTION 6. PAYMENT OF WAGES

A.     Payday – To the extent not inconsistent with Schedule "A", payment shall be made by check, drawn on a New York bank with branches located within commuting distance of the job site. Paychecks shall be issued by the Contractor at the job site by 10 a.m. on Thursdays. In the event that the following Friday is a bank holiday, paychecks shall be issued on Wednesday of that week. Not more than three (3) days wages shall be held back in any pay period. Paycheck stubs shall contain the name and business address of the Contractor, together with an itemization of deductions from gross wages.

B.     Termination- Employees who are laid off or discharged for cause shall be paid in full for that which is due them at the time of termination. The Contractor shall also provide the employee with a written statement setting forth the date of lay off or discharge.

## SECTION 7. EMERGENCY WORK SUSPENSION

A Contractor may, if considered necessary for the protection of life and/or safety of employees or others, suspend all or a portion of Project Work. In such instances, employees will be paid for actual time worked, except that when a Contractor requests that employees remain at the job site available for work, employees will be paid for that time at their hourly rate of pay.

## SECTION 8. INJURY/DISABILITY

An employee, who, after commencing work, suffers a work-related injury or disability while performing work duties, shall receive no less than a full day's pay as in accordance with the employee's regularly scheduled alternate work day schedules in Article 12, Section 1(A) for that day. Further, the employee shall be rehired at such time as able to return to

duties provided there is still Program Work available for which the employee is qualified and able to perform.

## SECTION 9. TIME KEEPING

A Contractor may utilize brassing or other systems to check employees in and out. Each employee must check in and out. The Contractor will provide adequate facilities for checking in and out in an expeditious manner.

## SECTION 10. MEAL PERIOD

A Contractor shall schedule an unpaid period of not more than 1/2 hour duration at the work location between the 3rd and 5th hour of the scheduled shift. A Contractor may, for efficiency of operation, establish a schedule which coordinates the meal periods of two or more crafts. If an employee is required to work through the meal period, the employee shall be compensated in a manner established in the applicable Schedule A.

## SECTION 11. BREAK PERIODS

There will be no rest periods, organized coffee breaks or other non-working time established during working hours. Individual coffee containers will be permitted at the employee's work location.

## ARTICLE 13 - APPRENTICES

## SECTION 1. RATIOS

Recognizing the need to maintain continuing supportive programs designed to develop adequate numbers of competent workers in the construction industry and to provide craft entry opportunities for minorities, women and economically disadvantaged non-minority males, Contractors will employ apprentices in their respective crafts to perform such work as is within their capabilities and which is customarily performed by the craft in which they are indentured.

Contractors may utilize apprentices and such other appropriate classifications in the maximum ratio permitted under law, rule, or regulation of the New York State Department of Labor. Apprentices and such other classifications as are appropriate shall be employed in a manner consistent with the provisions of the appropriate Schedule A. The parties encourage the use of the Edward J. Malloy Initiative for Construction Skills, Non-Traditional Employment for Women ("N.E.W."), and New York City Helmets to Hardhats as appropriate sources of apprentice recruitment.

## ARTICLE 14-SAFETY PROTECTION OF PERSON AND PROPERTY

### SECTION 1. SAFETY REQUIREMENTS

Each Contractor will ensure that applicable OSHA and safety requirements are at all times maintained on the Project Work site and the employees and Unions agree to cooperate fully with these efforts. Employees will perform their work at all times in a safe manner and protect themselves and the property of the Contractor and SCA from injury or harm to the extent consistent with their rights and obligations under the law. Failure to do so will be grounds for discipline, including discharge.

### SECTION 2. CONTRACTOR RULES

Employees covered by this Agreement shall at all times be bound by the reasonable safety, security, and visitor rules as established by the Contractors and the Construction Project Manager for this Project Work. Such rules will be published and posted in conspicuous places throughout the Project Work sites.

### SECTION 3. INSPECTIONS

The Contractors and Construction Project Manager retain the right to inspect incoming shipments of equipment, apparatus, machinery, and construction materials of every

kind.

## ARTICLE 15 - NO DISCRIMINATION

### SECTION 1. COOPERATIVE EFFORTS

The Contractors and Unions agree that they will not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, marital status, age or any other status provided by law, in any manner prohibited by law or regulation.

### SECTION 2. LANGUAGE OF AGREEMENT

The use of the masculine or feminine gender in this Agreement shall be construed as including both genders.

## ARTICLE 16- GENERAL TERMS

### SECTION 1. PROJECT RULES

A.     The Construction Project Manager and the Contractors shall establish such reasonable Program Work rules that are not inconsistent with this Agreement or rules common in the industry and are reasonably related to the nature of work. These rules will be explained at the pre-job conference and posted at the Project Work sites and may be amended thereafter as necessary, notice of amendments will be provided to the appropriate Local Union. Failure of an employee to observe these rules and regulations shall be grounds for discipline, including discharge. The fact that no order was posted prohibiting a certain type of misconduct shall not be a defense to an employee disciplined or discharged for such misconduct when the action taken is for cause.

B.     The Parties to this Agreement adopt and incorporate by reference herein the BCTC's Standards of Excellence annexed hereto as Exhibit "B".

## SECTION 2. TOOLS OF THE TRADE

The welding/cutting torch and chain fall are tools of the trade having jurisdiction over the work performed. Employees using these tools shall perform any of the work of the trade. There shall be no restrictions on the emergency use of any tools or equipment by any qualified employee or on the use of any tools or equipment for the performance of work within the employee's jurisdiction.

## SECTION 3. SUPERVISION

Employees shall work under the supervision of the craft foreperson or general foreperson.

## SECTION 4. TRAVEL ALLOWANCES

There shall be no payments for travel expenses, travel time, subsistence allowance, or other such reimbursements or special pay except as expressly set forth in this Agreement.

## SECTION 5. FULL WORK DAY

Employees shall be at their work area at the starting time established by the Contractor. The signatories reaffirm their policy of a fair days work for a fair day's wage.

## SECTION 6. COOPERATION AND WAIVER

The Construction Project Manager, Contractors and the Unions will cooperate in seeking any New York State Department of Labor, or any other government approvals that may be needed for implementation of any terms of this Agreement. In addition, the Council, on its own behalf and on behalf of its affiliated Local Unions and their individual members, intend the provisions of this Agreement to control to the greatest extent permitted by law, notwithstanding contrary provisions of any applicable prevailing wage, or other, law and intend this Agreement to

constitute a waiver of any such prevailing wage, or other, law to the greatest extent permissible for work within the scope of this Agreement, including specifically, but not limited to those provisions relating to shift, night, and similar differentials and premiums. This Agreement does not, however, constitute a waiver or modification of the prevailing wage schedules applicable to work not covered by this Agreement.

## ARTICLE 17. SAVINGS AND SEPARABILITY

### SECTION 1. THIS AGREEMENT

In the event that the application of any provision of this Agreement is enjoined, on either an interlocutory or permanent basis, or is otherwise determined to be in violation of law, or if such application may cause the loss of Program funding for all or any part of the Program, the provision involved (and/or its application to a particular part of the Program, as necessary) shall be rendered, temporarily or permanently, null and void, but where practicable the remainder of the Agreement shall remain in full force and effect to the extent allowed by law, unless the part or parts so found to be in violation of law are wholly inseparable from the remaining portions of the Agreement and/or are material to the purposes of the Agreement. In the event a court of competent jurisdiction finds any portion of the Agreement to be invalid, the parties shall immediately enter into negotiations concerning the substance affected by such decision for the purpose of achieving conformity with the court determination and the intent of the parties hereto for contracts to be let in the future.

### SECTION 2. THE BID SPECIFICATIONS

In the event that the SCA's bid specifications, or other action, requiring that a successful bidder become signatory to this Agreement is enjoined, on either an interlocutory or permanent basis, is otherwise determined to be in violation of law, or may cause the loss of

Program funding for all or any part of the Program, such requirement (and/or its application to a particular part of the Program, as necessary) shall be rendered, temporarily or permanently, null and void, but where practicable the Agreement shall remain in full force and effect to the extent allowed by law. In such event, the Agreement shall remain in effect for contracts already bid and awarded or in construction only where the Contractor voluntarily accepts the Agreement. The parties will enter into negotiations as to modifications to the Agreement to reflect the court or other action taken and the intent of the parties for contracts to be let in the future.

## SECTION 3. NON-LIABILITY

In the event of an occurrence referenced in Section 1 or Section 2 of this Article, neither the SCA, the Construction Project Manager or any Contractor, or any Union shall be liable, directly or indirectly, for any action taken, or not taken, to comply with any court order or injunction, other determination, or in order to maintain funding for Program Work. Bid specifications will be issued in conformance with court orders then in effect and no retroactive payments or other action will be required if the original court determination is ultimately reversed.

## SECTION 4. NON-WAIVER

Nothing in this Article shall be construed as waiving the prohibitions of Article 7 as to signatory Contractors and signatory Unions.

## ARTICLE 18- FUTURE CHANGES IN SCHEDULE A AREA CONTRACTS

## SECTION 1. CHANGES TO AREA CONTRACTS

A.      Schedule A to this Agreement shall continue in full force and effect until the Contractor and/or Union parties to the Area Collective Bargaining Agreements which are the basis for Schedule A notify the Construction Project Manager in writing of the hourly rate

changes agreed to in that Area Collective Bargaining which are applicable to work covered by this Agreement and their effective dates.

B. It is agreed that any provisions negotiated into Schedule A collective bargaining agreements will not apply to work under this Agreement if such provisions are less favorable to those uniformly required of contractors for construction work normally covered by those agreements; nor shall any provision be recognized or applied on Program Work if it may be construed to apply exclusively, or predominantly, to work covered by this Agreement.

C. Any disagreement between signatories to this Agreement over the incorporation into Schedule A of provisions agreed upon in the renegotiation of Area Collective Bargaining Agreements shall be resolved in accordance with the procedure set forth in Article 9 of this Agreement.

## SECTION 2. LABOR DISPUTES DURING AREA CONTRACT NEGOTIATIONS

The Unions agree that there will be no strikes, work stoppages, sympathy actions, picketing, slowdowns or other disruptive activity or other violations of Article 7 affecting the Program Work by any Local Union involved in the renegotiation of Area Local Collective Bargaining Agreements nor shall there be any lock-out on such Program Work affecting a Local Union during the course of such renegotiations.

## ARTICLE 19 - WORKERS' COMPENSATION ADR

## SECTION 1.

The SCA is continuing to investigate the feasibility of utilizing a Workers Compensation ADR program under Section 25 (2-C) of the New York Workers Compensation Law, to be used in conjunction with its Owner Controlled Insurance Program ("OCIP") for Program Work. The SCA's current OCIP expires December 31, 2015. The SCA agrees that it

will bargain with the Union over inclusion of a pilot Workers Compensation ADR program for use under any OCIP it may have after January 1, 2016. This bargaining will include negotiations concerning the pilot program site, the availability of an ADR carrier with the necessary waivers or exemptions under the statute for the particular pilot program site, and other terms and conditions for such an ADR program. Contractors will be required to participate in any resulting program as determined by the SCA. In the event the pilot ADR program is successful and demonstrates meaningful savings for the SCA, the parties will negotiate regarding an ADR program on a Program wide basis. Notwithstanding the status of any of these negotiations, the remainder of this Agreement will remain in full force and effect.

## ARTICLE 20 – SUBCONTRACTING

The Contractor agrees that neither it nor any of its contractors or subcontractors will subcontract any work to be done on the Project except to a person, firm or corporation who is or agrees to become party to this Agreement. Any Contractor or subcontractor working on the Project shall, as a condition to working on said Project, become signatory to and perform all work under the terms of this Agreement.

## ARTICLE 21 - HELMETS TO HARDHATS

### SECTION 1.

The Contractors and the Unions recognize a desire to facilitate the entry into the building and construction trades of veterans who are interested in careers in the building and construction industry. The Contractors and Unions agree to utilize the services of the "New York City Helmets to Hardhats" program to serve as a resource for preliminary orientation, assessment of construction aptitude, referral to apprenticeship programs or hiring halls, counseling and

mentoring, support network, employment opportunities, and other needs as identified by the parties.

## SECTION 2.

The Unions and Contractors agree to coordinate with the Program to create and maintain an integrated database of veterans interested in working on this Project and of apprenticeship and employment opportunities for this Project. To the extent permitted by law, the Unions will give credit to such veterans for bona fide, provable past experience.

IN WITNESS WHEREOF the parties have caused this Agreement to be executed and effective as of the ___ day of_____, _____

FOR BUILDING AND CONSTRUCTION TRADES COUNCIL
OF GREATER NEW YORK AND VICINITY      I

BY: _____
                    (Name/Title)


FOR NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY

BY:_____
                    (Name/Title)

**AFFILIATES:   See attached for signatory affiliates**

# BUILDING AND CONSTRUCTION TRADES COUNCIL OF GREATER NEW YORK AND VICINITY AFFILIATE EXECUTION PAGE FOR PROJECT LABOR AGREEMENT

TO: Michael Prohaska, Business Manager - Laborers 79 Construction and General Building Laborers

FROM: Gary LaBarbera, President – Building and Construction Trades Council of Greater New York and Vicinity.

The Executive Board of the Building and Construction Trades Council of Greater New York has approved the Project Labor Agreement enclosed herewith. Additionally, the Building Trades Department of the AFL-CIO has approved the same. This Project Labor Agreement has also been executed by the Construction Manager/General Contractor/Owner-Developer.

Pursuant to the Executive Board and BCTD approval of this PLA, please execute below, which shall constitute your agreement with the PLA and make the PLA valid, binding and enforceable.

Acknowledged and agreed to by:

_____          _____
Signature                                        Date

_____
Print name

_____
Title and Local

61

# BUILDING AND CONSTRUCTION TRADES COUNCIL OF GREATER NEW YORK AND VICINITY AFFILIATE EXECUTION PAGE FOR PROJECT LABOR AGREEMENT

TO:       Robert Bonanza, Business Manager - Mason Tenders District Council

FROM:    Gary LaBarbera, President – Building and Construction Trades Council of Greater New York and Vicinity.

The Executive Board of the Building and Construction Trades Council of Greater New York has approved the Project Labor Agreement enclosed herewith. Additionally, the Building Trades Department of the AFL-CIO has approved the same. This Project Labor Agreement has also been executed by the Construction Manager/General Contractor/Owner-Developer.

Pursuant to the Executive Board and BCTD approval of this PLA, please execute below, which shall constitute your agreement with the PLA and make the PLA valid, binding and enforceable.

Acknowledged and agreed to by:

_____          _____
Signature                                                      Date

_____
Print name

_____
Title and Local

*Local 79    Fax  212-465-7-903*



NEW YORK CITY SCHOOL
CONSTRUCTION AUTHORITY

# SUB-CONTRACTOR
## AFFIDAVIT OF PROJECT LABOR AGREEMENT

SOLICITATION NO.: SCA 0 _1 - 0436_
Contract Number  C _D010436_
School _P.S 6 Rooftop Renovation_ Borough _Manhattan_
Description _Roof top Renovation_

I, _H-ILVAS CHAUDRY_____, a duly authorized Officer of _Hilt Construction, Inc_
sub-contractor of *(Contractor),* _Hilt Construction, Inc_ on the above-referenced project
hereby attest that *(Subcontractor),* _____, shall be bound by the
provisions of the Project Labor Agreement executed on the 10th of November, 2004, with respect to
all Work to be performed under the solicitation.

Firm Name: _Hilt Construction, Inc_
Address: _120 old Camplain Rd Hillsborough, N.J 08844_
By: {Signature of Authorized Officer} _By. Jrad_
Print Name: _M. ILVAS CHAUDRY_
Print Title: _President_
Telephone: _908 255 4215_____ Fax: _908 255 4213_
Date: _5/11/10_____ Tax ID Number: _22-341 7872_

STATE OF ___NJ_____ )
                          )ss:
COUNTY OF _Middlesex_ )

On the __11th__ day of _May 25_, in the year 20 _1 0_, before me personally came
_____, to me known and known to me to be their person
described in and who executed the foregoing instrument, and he/she duly acknowledged that he/she
executed the same.

ZAHIDA T CHAUDRY
Notary Public, State of New Jersey
My Commission Expires
July 10, 2011
Notary Public




## AFFIDAVIT OF PROJECT LABOR AGREEMENT
## SOLICITATION NO: SCA15-14582D-1
## PS 16 (Bronx)
## Water Penetration / Retaining Wall

I, _Gangadhar Reddy_____, a duly authorized Officer of Hilt Construction, Inc., hereby attest that Hilt Construction, Inc. and its subcontractors of any tier shall be signatory to, and be bound by, the provisions of the Project Labor Agreement executed on the 15th of October, 2009, with respect to all Work to be performed under this solicitation.

Firm Name:

Address:

By: _____
(Signature of Authorized Officer)

Hilt Construction, Inc
120 Old Camplain Road
Hillsborough, NJ 08844
Ph: (908)255-4215

Print Name: _Gangadhar Reddy_____

Print Title: _V. President_____

Telephone: _908.255.4215_____  Fax: _908.255.4213_____

Date: _11/19/14_____  Tax ID Number: _22.3517872_____

STATE OF _NJ_____ )
) ss:
COUNTY OF _Middlesex_ )

On the _19th_ day of _Nov_____, in the year 20_14___, before me personally came _Gangadhar Y Reddy_____, to me known and known to me to be their person described in and who executed the foregoing instrument, and he/she duly acknowledged that he/she executed the same.

_Zahida Chaudry_____
Notary Public

ZAHIDA T CHAUDRY
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 6 2016

Exhibit 3

# ARTICLE IX

## PAYMENTS TO THE FUND

### 9.1   Rate of Contributions.

(a)   In order to effectuate the purposes hereof, each Employer shall remit to the Fund the amount required by the applicable Collective Bargaining Agreement.

(b)   The rate of contributions shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modifications thereto.

(c)   Nothing in this Agreement shall be deemed to change, alter or amend any of the terms or provisions of any such Collective Bargaining Agreements regarding the rate and amount of contributions.

### 9.2   Effective Date of Employer Contributions.
All contributions shall be made effective as required by the applicable Collective Bargaining Agreements, and said contributions shall continue to be paid as long as the Employer is so obligated pursuant to said Collective Bargaining Agreements, or until it ceases to be an Employer within the meaning of this Agreement.

### 9.3   Mode of Payment.
All contributions shall be made payable to "Mason Tenders' District Council Trust Funds," and shall be paid in such manner and form as may be prescribed by the Board.

### 9.4   Due Date for Payment.
Employer payments to the Trust Fund are due no later than the due dates set forth in the applicable Collective Bargaining Agreement. In the event that the applicable Collective Bargaining Agreement is silent or does not apply for any other reason determined by the Trustees, the due date for any payments shall be no later than the 15th day of the month immediately following the month in which the Covered Employee was engaged in the performance of work for which contributions are payable to the Trust Fund.

### 9.5   Default in Payment.

(a)   In addition to any other remedies which may exist under the applicable Collective Bargaining Agreement, or to which the parties otherwise may be entitled, an Employer in default for ten (10) business days shall be obligated to pay interest from the due date (as defined in Section 9.4), in the amount determined by using the rate prescribed under section 6621 of Title 26 of the United States Code, plus all additional payments required as a result of any litigation (as described in Section 9.9 of this Article IX), together with all expenses of collection incurred by the Trustees (including, without limitation, attorneys fees, auditing fees and court costs).

37

(b)     In addition to all other requirements applicable to an Employer under a Collective Bargaining Agreement, the Board is further authorized and empowered to require that a bond either in cash or by a recognized surety be posted in accordance with a formula to be determined by the Board, in its sole and absolute discretion, in order to insure prompt payment of contributions to the Fund. The Board shall have sole discretion in establishing rules to determine when bonds shall be posted.

(c)     The Board may proceed at law and/or in equity to enforce the payment of contributions due hereunder, and specifically, all Employers who become obligated to make contributions to this Fund or become a party to a Collective Bargaining Agreement or this Agreement agree to be bound by the decisions of the Board and the terms and conditions of this Agreement.

(d)     In the event that any Employer shall fail to make required Employer contributions to the Trust Fund when due, the Board may and is empowered, in its sole and absolute discretion, to terminate, on a prospective basis, the participation of the Employer in the Plan and Trust Fund, and the crediting of future service credit to Employees of such terminated Employer. Nothing in this Section 9.5(d) shall affect or otherwise modify the ability of the Board to assert and enforce any and all other rights (as may be set forth in this Agreement, the Plan or any Collective Bargaining Agreement, or as may be provided by applicable law) against such Employer for the collection of any delinquent Employer contributions to the Plan or Trust Fund (including, but not limited to, those rights and actions set forth in this Article IX).

9.6     Report of Contributions.

(a)     The Employer shall file written reports with the Fund Office in such form and containing such data as the Trustees (or the Fund Director) shall from time to time determine to be necessary with respect to each Employee for whom contributions are made.

(b)     In the event, after the Trustees (or the Fund Director) have made a reasonable request, the Employer fails to produce its books and records necessary for a proper audit, the Trustees (or the Fund Director), in their sole discretion, may determine that the Employer's monthly hours subject to contributions for each month of the requested audit period are the highest number of employee hours for any month during the last twelve months audited, or during the last twelve months for which reports were filed, whichever monthly number of hours is greater. Such determination by the Trustees (or the Fund Director) shall constitute presumptive evidence of delinquency. Prior to making such determination, the Trustees shall mail a final seven day written notice to the Employer advising him that such determination shall be made if the Employer does not schedule a prompt audit. Nothing herein shall mean that the Fund relinquishes its right to commence legal proceedings to compel an examination of the Employer's books and records for audit.

### 9.7 Audits.

(a) The Board, a Certified Public Accountant selected by the Board, or such other representative or representatives duly authorized by the Board, may examine and audit payroll, employment, and any other pertinent records of any Employer, as the Trustees deem necessary (and as set forth in the applicable Collective Bargaining Agreement), whenever such examination is deemed necessary or advisable by the Board or the Fund Director in connection with the proper administration of the Fund.

(b) The audit shall take place at any reasonable time during the normal business hours of the Employer.

(c) In the event that an Employer fails to produce the books and records necessary for an audit, the Employer agrees to pay a penalty of $400.00.

(d) If, after an audit of its books and records, an Employer is found to be substantially delinquent in the payment of contributions to the Fund (as set forth in the applicable Collective Bargaining Agreement), the Employer shall bear the costs of the audit (as required by the applicable Collective Bargaining Agreement).

### 9.8 Enforcement Actions.
In addition to any other remedies to which the Board may be entitled hereunder, in the event that an Employer fails to make required contributions to the Trust Fund, in accordance with the terms and conditions of this Agreement and any rules or guidelines promulgated by the Board pursuant hereto (hereinafter collectively referred to as "Unpaid Contributions"), the Board may bring an action on behalf of the Trust Fund and/or the Plan pursuant to Sections 502(g)(2) and 515 of ERISA to enforce the Employer's obligation to contribute to the Trust Fund. The Board also has the right, in its sole and absolute discretion, to determine whether to initiate arbitration proceedings against a delinquent Employer (in lieu of pursuing any other remedies or legal action) and to designate the specific issue(s) and delinquency period(s) that are the subject of (and are to be decided during) any such arbitration proceeding. Nothing in the preceding sentence shall be construed to confer any right on an Employer to initiate an arbitration proceeding with regard to any delinquency dispute or matter involving the Fund, or to extend any such proceeding to cover matters not designated by the Board.

### 9.9 Legal Actions for Unpaid Contributions.
In any legal action for Unpaid Contributions commenced by the Trust Fund (and/or the Board or the Fund Director) under this Article IX, the Employer shall pay the following amounts to the Trust Fund:

(a) all Unpaid Contributions due and payable; plus

(b) interest on such Unpaid Contributions (computed in accordance with the method set forth in Section 9.5(a) of this Article IX); plus

(c) interest on the Unpaid Contributions as and for liquidated damages; plus

(d)     all attorneys' fees and costs of the action, reasonable expenses attributable to any audit of the Employer's records with respect to Unpaid Contributions or payments, and any other related expenses; and

(e)     such other legal or equitable relief as the court deems appropriate.

## 9.10   No Waiver of Other Rights.

(a)     The failure of any Employer to make Employer contributions to the Trust Fund when due shall not relieve any other Employer of its obligations to make Employer contributions to said Trust.

(b)     Nothing in this Article IX shall be construed as a waiver or limitation on the right of the Plan, the Trust, the Board or the Fund Director to enforce an Employer's contribution obligation in any other type of proceeding, and the provisions of this Article IX shall be without prejudice to the rights of the Union to enforce the provisions of any Collective Bargaining Agreement to which it is a party.

## 9.11   Audit and Delinquency Committee.

(a)     The Trustees shall elect an Audit and Delinquency Committee consisting of at least two (2) Trustees (or such other number as the Trustees shall, in their sole discretion, determine), having an equal number of Employer Trustees and Union Trustees, and such other members who shall serve at the sole pleasure of the Trustees. The members of the Audit and Delinquency Committee shall elect a Chairperson from their number.

(b)     Subject to the action of the Trustees and the provisions of the Plan, the functions of the Audit and Delinquency Committee shall be to:

(1)     monitor the actions of the Fund's internal and outside auditors and coordinate with the Fund's internal and outside auditors, including the establishment and implementation of a reporting procedure between such auditors and the Committee;

(2)     develop and pay the cost of a compliance audit program with respect to all matters related to Employer contributions to the Fund, and supervise the Fund's internal and outside auditors and attorneys in conducting such compliance audits;

(3)     develop procedures and guidelines with respect to the form and manner of the remittance or other reports Employers are required to file with the Fund;

(4)     determine, in its sole and absolute discretion (or duly authorize the Fund Director to determine, in the Director's sole and absolute discretion),

40

Exhibit 4

<u>**ARBITRATION PROCEDURES AND RULES**</u>

<u>**GOVERNING EMPLOYER AUDITS AND DELINQUENCY DISPUTES**</u>

<u>**AMENDED MARCH 2020**</u>

I. <u>**Definitions:**</u>

    (A) <u>Employer</u> shall mean an employer who is bound by a collective bargaining agreement or participation agreement to pay contributions to the Plan on behalf of its covered employees.

    (B) <u>Fund</u> shall mean the Trust Fund established pursuant to the Plan Amended and Restated Agreement and Declaration of Trust.

    (C) <u>Trust Agreement</u> shall mean the Amended and Restated Agreement and Declaration of Trust, as it may be amended from time to time by the Trustees of the Fund.

    (D) <u>Board of Trustees</u> or <u>Trustees</u> shall mean the Fund Administrator as provided in the Trust Agreement and as that term is defined by Section 3(16) of the Employee Retirement Income Security Act of 1974, as amended.

    (E) <u>ERISA</u> shall mean the Employee Retirement Income Security Act of 1974, as amended.

    (F) <u>Delinquency</u> or <u>Delinquent Contributions</u> shall mean unpaid contributions including interest on such contributions, liquidated damages as defined by Section 502(g) of ERISA, attorneys fees, audit fees and related expenses or assessments owed by an Employer to the Fund.

(G) Audit or Payroll Audit shall mean an examination of an Employer's relevant books and records by an auditor retained by the Fund to determine if the Employer has paid all contributions due to the Fund under the terms of the Employer's collective bargaining agreement or Participation Agreement.

(H) Fund Director shall mean the person or persons designated by the Trustees to carry out the day to day administration of the Fund.

(I) Neutral Arbitrator shall mean the arbitrators agreed to and appointed by the Board of Trustees of the Fund, to hear and decide a dispute under these Rules.

## II. **Applicability.**

These procedures and rules, and not the grievance procedures established under the Employer's collective bargaining agreement with the Union, shall apply to any disputes between the Fund and an Employer involving a Payroll Audit, **(including, but not limited to, a dispute arising from the Fund's attempt to conduct a Payroll Audit of an Employer),** and/or any claims by the Fund for Delinquent Contributions (hereinafter referred to as "Disputes") that are referred to arbitration pursuant to the Trust Agreement.

## III. **Referral of Disputes to Arbitration.**

Disputes may be referred to arbitration by the Fund by sending a written request for arbitration to the Neutral Arbitrator, with a copy to the employer.

Such request shall briefly state the issue and delinquency period to be decided and, where known, the amounts in dispute. **In the case of an Employer's refusal to submit or respond to a Fund's request to conduct a Payroll Audit, the request for arbitration shall also include the date the Funds' request to conduct a Payroll Audit, and the date, where known, the Employer refused or did not respond to the request.**

IV. <u>Scheduling of Hearing.</u>

Promptly after receipt of the referral, the Neutral Arbitrator shall fix the date and time of the hearing and shall notify the Fund and the Employer of the scheduled date and time. The Neutral Arbitrator may consult with representatives of the Fund and the Employer prior to scheduling the hearing. The hearing shall be held promptly but not be sooner than 10 business days from the date of the referral. The hearing shall be held at the Fund office, located at 520 8th Avenue, New York, NY 10018. **The hearing may also be heard remotely through any telephonic or video conferencing means in accordance with the procedures outline below in Section VI.**

V. <u>Hearing Procedures.</u>

(A) The parties may be represented at the hearing by counsel or other authorized representatives.

(B) The hearing shall begin promptly at the appointed time and shall proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. In such case, the award of the

Neutral Arbitrator shall be based solely on the evidence presented by the appearing party.

(C) No stenographic record shall be made unless specifically requested by a party and such requesting party shall be responsible for arranging for the presence of a certified stenographic reporter and for payment of all fees and expenses connected with the creation of a stenographic record unless all parties request a stenographic record in which case the cost shall be shared equally between or among the requesting parties.

(D) The parties may offer such evidence documents and testimony (live or by affidavit) as may be relevant, material, and necessary for a resolution of the Dispute. The Neutral Arbitrator shall determine what evidence is relevant, material and/or necessary and what weight shall be given to such evidence. Each party shall provide the other party[ies] with identical copies of all documents submitted to the Neutral Arbitrator.

(E) The parties may provide by written agreement that the dispute may be submitted to the Neutral Arbitrator upon specified documents and without the necessity of a hearing.

(F) Once the hearing and/or acceptance of evidence has been closed, no further evidence may be submitted or accepted except on a showing of good cause. The Neutral Arbitrator shall determine whether written post-hearing briefs shall be submitted and shall specify the issues to be briefed.

## VI. Telephonic or Video Conferencing Hearings

In lieu of a in-person hearing and in the event the parties elect not to proceed with hearing in accordance with written submissions as described in Section V(e), the Neutral Arbitrator may elect to proceed with either a telephonic or video hearing at the request of either party. Such a request to proceed telephonically or by video conference shall be made in writing by mail or electronic mail to the Neutral Arbitrator copying all parties within five (5) days of receipt of the notice of arbitration. The Neutral Arbitrator shall promptly in writing notify the parties of his decision to proceed via telephonic means or video conferencing and schedule such a hearing  The hearing notice shall specify a date and time for the commencement of the hearing and shall also schedule a pre-hearing telephonic conference no less than seven (7) days prior to the scheduled arbitration hearing date.  At this conference, the parties will exchange or have exchanged all written exhibits the parties intend to submit at the hearing either by mail or electronic mail to the parties with copies to the Neutral Arbitrator. The Neutral Arbitrator will endeavor at this pre-hearing conference to resolve all hearing procedural issues, including but not limited to the specific manner of the conduct of the hearing.

## VII. Time, Form and Notice of Award.

(A) The Neutral Arbitrator shall render an award promptly and in any event, within thirty (30) days. If the parties have been instructed to submit briefs, the award shall be rendered promptly after the submission of briefs.

(B) The award shall be in writing, signed and dated by the Neutral Arbitrator, and shall include a brief statement of the reasons therefore. The remedies that shall be awarded shall be those available pursuant to the Trust Agreement, relevant collective bargaining agreement and/or Section 502 of ERISA including, but not limited to, interest, liquidated damages and attorneys' fees and costs. The award shall be final.

(C) The Neutral Arbitrator shall send a copy of the award to each of the parties or their representatives by first class mail and/or by such means of communication (postal or electronic) as may be agreed to by the parties.

VII. **Costs and Fees.**

Witness fees, including any subpoena and or service fees or charges, as well as document copying costs, shall be paid by the party calling the witness and producing the documents. **Any expenses incurred for telephonic or video hearings shall be the responsibility of the individual parties.** If the Neutral Arbitrator finds for the Fund with respect to any portion of the claim, the Employer shall be liable for the Neutral Arbitrator's fees. If the Neutral Arbitrator finds for the Employer in its entirety, the Fund shall bear the cost of the Neutral Arbitrator's fee.

Exhibit 5

Haluk Savci, Esq.
Mason Tender District Council
520 8th Avenue, Suite 650
New York, N.Y. 10018
(212) 452-9407
Attorney for Petitioners

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

TRUSTEES FOR THE MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND, and
TRAINING PROGRAM FUND, and ANNA
GUTSIN, in her fiduciary capacity as Director,

     and

MICHAEL PROHASKA as Business Manager
of the MASON TENDERS DISTRICT COUNCIL
OF GREATER NEW YORK,
     Petitioners,

    -against-

HILT CONSTRUCTION, INC.

     Respondent.
-------------------------------------------------------- x

Civil Action No.

ECF CASE

**PETITION TO CONFIRM
ARBITRATION AWARD**

   The Trustees for the Mason Tenders District Council Welfare Funds, Pension Fund,

Annuity Fund and Training Program Fund (hereinafter the "Funds") and the Mason Tenders

District Council of Greater New York (the "Union" or "MTDC") which both have their principal

place of business at 520 8th Avenue, Suite 600 and 650, New York, NY 10018, hereby bring the

following allegations against Hilt Construction, Inc. (the "Respondent" or "Hilt Construction"),

which maintains its principal place of business at 120 Old Camplain RD, Hillsborough, NJ

08844. This petition is brought pursuant to Section 301(c) of the Labor Management Relations

Act ("LMRA"), 29 U.S.C. § 185 to confirm and enforce an arbitration award (the "Award")

issued by Arbitrator Joseph Harris on December 24, 2022 (attached hereto as Exhibit 1) in accordance with the grievance and arbitration terms set forth in a collective bargaining agreement and the written terms of the legally-established jointly trusteed Trust Agreements to which the Respondent is bound. The Petition arises from the failure of the Respondent to timely pay all monies owed pursuant to the Award. The Funds and the MTDC seek a judgment confirming the Award and ordering the Respondent to pay the Funds $97,174.85 in delinquent fringe contributions, dues & PAC contributions, current interest, liquidated damages, attorney fees, and arbitration costs.

## THE PARTIES

1.        Petitioners are the Trustees of the Mason Tenders District Council Welfare, Annuity, Pension and Training Program Funds. These Funds are "employee benefit plan[s]" as defined in Section 3 (3) of ERISA, 29 U.S.C. § 1002(3) and "multiemployer plan[s]" within the meaning of Section 3 (37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). Each Fund is established and maintained pursuant to an Amended and Restated Agreement and Declaration of Trust (the "Benefit Plan Trust Agreement" and the "Pension Fund Trust Agreement", collectively, the "Trust Agreements"). The Plans are each jointly administered by a Board of Trustees made up of union and employer representatives pursuant to the requirements of Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Funds are authorized to maintain suit as independent legal entities under Section 502(d)(1) of ERISA, 29 U.S.C. § 1132(d)(1). The purpose of the Funds, among other things, is to provide fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to collective bargaining agreements between employers in the building and construction industry and the union. The Funds maintain their

principal place of business at 520 8th Avenue, Suite 600, New York, NY 10018. Anna Gutsin is the Director of the Funds.

2.        The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185) which represents employers in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act (29 U.S.C § 142) and Section 3(4) of ERISA (29 U.S.C. § 1002(4)). The Union maintains its principal place of business at 520 8th Avenue, Suite 650, New York, NY 10018. Petitioner the MTDC is a "labor organization" within the meaning of 29 U.S.C. § 152(5). The MTDC maintains its principal place of business within this judicial district, at 520 8th Avenue, Suite 650, New York, NY 10018.

3.        Michael Prohaska is the Business Manager of the MTDC.

4.        Respondent is an "employer" in an industry affecting commerce within the meaning of 29 U.S.C. § 152(2). Hilt Construction is located at 120 Old Camplain RD, Hillsborough, NJ 08844.

## JURISDICTION AND VENUE

5.        This Court has jurisdiction over this action under Section 301 of the LMRA, 29 U.S.C. § 185, and 28 U.S.C. § 1331 and § 1337.

6.        Venue lies in this judicial district under Section 301 of the LMRA, 29 U.S.C. § 185, because on information and belief the Respondent transacts business in this judicial district. Venue lies in this judicial district under 28 U.S.C. § 1391(b), because the Funds and MTDC maintain offices in this judicial district and the arbitration proceeding was convened in this judicial district.

## STATEMENT OF FACTS

7.      At all relevant times Hilt Construction was party to the Project Labor Agreement Covering Specified Construction Under the Capital Improvement Program On Behalf of the New York City School Construction Authority (the "SCA PLA"), . The Union is a party to the PLA agreement as a member of the BCTC.

8.      The SCA PLA at Article 11, Section 2(b) specifies that that an Employer covered under the PLA "agree[s] to and shall be bound by all terms and conditions of the Trust Agreements." The PLA and the Trust Agreements require Respondent to pay contributions to the Funds for all employees covered by the PLA at the rates set forth therein. In addition to contributions owed the Funds at the rate set forth therein, pursuant to the PLA and Trust Agreements, the Funds have been designated as the authorized collection agent for contributions due to the New York State Laborers Employer Cooperation and Education Trust Fund, New York Laborers Health and Safety Trust Fund and Greater New York Laborers – Employers Cooperation and Education Trust Fund and the Mason Tenders District Council Political Action Committee for dues and contributions respectively which are voluntarily authorized by employees on forms provided for that purpose by the Union.

9.      The Trust Agreements to which a PLA signatory has specifically agreed to be bound to the written terms permit the Trustees of the Plans to take any legal action for the purpose of collecting the unpaid benefits from an employer including the commencement of arbitration proceedings against delinquent employers to seek allegedly delinquent contributions.

10.     The Trust Agreements provide that in the event legal action is taken, the Employer is responsible for:

        a.      unpaid contributions;

b.        interest on unpaid contributions determined by using the rate prescribed under 26 U.S.C. § 6621;

c.        an amount equal to the aforesaid interest on the unpaid contributions as and for liquidated damages;

d.        reasonable attorneys' fees and costs of the action;

e.        such other legal or equitable relief as the court deems appropriate.

11.     The PLA further provides that the Respondent agrees to and shall be bound by all terms and conditions of the Trust Agreements, regulations or By-Laws adopted by the Funds' Trustees and any amendments to Trust Fund Agreements.

12.     Respondent is an "Employer" as defined by the Trust Agreements.  It is bound to the terms and provisions of the Trust Agreements, the Respondent's contributions to the Plans, and acceptance of the Plans' coverage for its employees. The Trust Agreements require that participating employers pay contributions monthly no later than the due dates set forth in the PLA and in all instances no later than the fifteenth (15th) day of the month following the month for which they are due as provided in the Agreement.

13.     The Trust Agreements further provide the Trustees have the power to demand, collect and receive Employer contributions and are authorized to take steps, including the institution of legal or administrative proceedings, to collect delinquent contributions including initiating arbitration proceedings against delinquent employers.

14.     In addition, pursuant to the Trust Agreements, in any legal action for unpaid contributions commenced by the Trust Fund, the Employer shall pay to the Funds all unpaid contributions due and payable, interest on such unpaid contributions, interest on the unpaid contributions as and for liquidated damages and all attorney's fees and costs of the action.

15.     Under duly adopted amendments to the Trust Agreements for the Welfare, Pension, and Annuity Funds, if an Employer becomes delinquent in the payment of contributions to the Funds, the Trustees have the option of commencing a proceeding to enforce the Employer's obligations through arbitration before one of a panel of two designated arbitrators.

16.     A dispute arose concerning the Respondent's failure to meet obligations to make fringe benefit and other contributions to the Trust Funds pursuant to its PLA and the relevant Trust Agreements for the period of March 26, 2018 through December 29, 2019 as based on an examination of the Respondent's books and records conducted by Funds auditors. A further dispute arose concerning the Respondent's failure to remit payments on interest generated from late payments for the period June 1, 2018 through December 31, 2018

17.     Pursuant to the PLA and the Trust Agreements, the Funds on or around October 22, 2021 referred the disputes to Arbitrator Joseph Harris for arbitration, who by letter to the Respondent dated October 27, 2021 scheduled a hearing for November 22, 2021.

18.     The hearing was duly conducted on November 22, 2021. No one appeared on behalf of the Respondent. The Funds submitted evidence in support of its claims including a books and records examination conducted by Funds auditors indicating that for the period March 26, 2018 through December 29, 2019 the Respondent owed $62,233.83 in delinquent fringe benefit contributions, $4,538.92 in dues & PAC contributions, $8,298.53 in current interest, and $9,127.63 in audit fees for the books and records examination. The funds introduced further evidence that the Respondent owed $2,977.41 in interest generated from late payments for the period June 1, 2018 through December 31, 2018.

19.     On December 24, 2021 Arbitrator Harris issued his Award ordering Respondent to pay the Funds a total of $97,174.85 comprising delinquent fringe benefit contributions, dues and

PAC contributions, current interest, liquidated damages, audit costs, attorney fees, arbitration costs, and interest generated from late payments.

20.     Since the issuance of the Award, no payments have been submitted against the Award by Hilt Construction or any other party.

21.     Petitioners pray for an Order confirming and enforcing the Award in its entirety and directing entry of Judgment against Hilt Construction in favor of the Union and the Funds in the amount of $97,174.85 with statutory interest to accrue from the date of the entry of Judgment.


Dated: December 22, 2022
       New York, NY

By: _____
    Haluk Savci, Esq.
    Mason Tender District Council
    520 8th Avenue, Suite 650
    New York, N.Y. 10018
    (212)452-9407
    hsavci@masontenders.org



P7866890

TRUSTEES FOR THE MASON TENDERS DISTRICT COUNCIL WELFARE FUND,
ET AL.,
PETITIONER
- vs -
HILT CONSTRUCTION, INC.
RESPONDENT

U S DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK
Docket No. 1:22-CV-10824-LGS

**Person to be Served**
HILT CONSTRUCTION, INC.
120 OLD CAMPLAIN ROAD
HILLSBOROUGH NJ 08844

**AFFIDAVIT OF SERVICE**
(For Use By Private Service)

**Papers Served:** SUMMONS IN A CIVIL ACTION, PETITION TO CONFIRM ARBITRATION AWARD, ECF CASE RULE 7.1 STATEMENT, INDIVIDUAL RULES AND PROCEDURES FOR CIVIL CASES AND INDIVIDUAL RULES OF PRACTICE IN CIVIL CASES
**Service Data:**
Served Successfully X  Not Served _____  Date: 01/12/2023 Time: 3:25PM Attempts: _____

_____ Delivered a copy to him/her personally

Name of person served and relationship / title:

Ganja Reddy

_____ Left a copy with a competent household member of over 14 years of age residing therein.

OWNER

X  Left a copy with a person authorized to accept service, who provided verbal confirmation that he or she is authorized by appointment or law to receive service on behalf of the Defendant.

**Description of Person Accepting Service:**

SEX: **MALE**    COLOR: **BROWN**    HAIR: **BLACK**    APP.AGE: **58**    APP. HT: **5'10**    APP. WT: **250**
OTHER:

**Comments Or Remarks:**

Sworn to before me this
17TH day of JANUARY, 2023

*[signature]*

(TINA GIORDANO
Notary Public, State of New Jersey
No. 2428940
Qualified in
Commission Expires 01/17/2023

I, PATRICK PERSICANO, was at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

*[signature]*

Signature of Process Server                Date

Client File Number:

Lexitas
219 South Street STE 102
New Providence, NJ 07974
908-897-0273
MASON TENDERS DISTRICT COUNCIL

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*     HILT CONSTRUCTION, INC.
was received by me on *(date)*     01/10/2023

☐ I personally served the summons on the individual at *(place)*
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)*     Ganja Reddy, Owner     , who is
designated by law to accept service of process on behalf of *(name of organization)*
HILT CONSTRUCTION, INC.     on *(date)*     01/12/2023     ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00

I declare under penalty of perjury that this information is true.

Date:  *1-17-23*

_____
*Server's signature*

PATRICK PERSICANO, PROCESS SERVER
_____
*Printed name and title*

219 SOUTH ST, SUITE 102
NEW PROVIDENCE, NJ 07974
*Server's address*

Additional information regarding attempted service, etc:

**Exhibit 6**

```
---------------------------------------------------------- X
```

TRUSTEES of the MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND and
TRAINING PROGRAM FUND,

        and

MASON TENDERS DISTRICT COUNCIL OF         <u>NOTICE OF INTENTION</u>
GREATER NEW YORK         <u>TO ARBITRATE</u>

        Plaintiffs,

        against

HILT CONSTRUCTION, INC.

        Defendants.

```
---------------------------------------------------------- X
```

        PLEASE TAKE NOTICE that the TRUSTEES of the MASON TENDERS
DISTRICT COUNCIL WELFARE FUND, PENSION FUND, ANNUITY FUND and
TRAINING PROGRAM FUND and the MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK hereby demand and intend to conduct an arbitration before
Arbitrator Joseph Harris against HILT CONSTRUCTION, INC. with respect to the
following controversies:

        Delinquent fringe benefit contributions and other contributions due to the Funds and
the District Council pursuant to the provisions of the collective bargaining agreement
between HILT CONSTRUCTION, INC. and the MASON TENDERS DISTRICT
COUNCIL OF GREATER NEW YORK as determined by an audit for the period 03/26/2018
through 12/29/2019 in the amount of $162,745.02 in addition to $11,645.47 in dues and PAC
contributions, $23,869.27 in imputed audit fees and $13,046.03 in statutory interest owed as
of 01/26/2021 for a total of **$211,305.79.**

        In addition, interest for the periods between 06/01/2018 and 12/31/2018 in the
amount of **$2,977.41** is also due.

Dated:     New York, New York
          June 4, 2021

Mason Tenders District Council Welfare Fund, et al.
By: Haluk Savci, Esq.
520 8TH AVENUE,
SUITE 650,
NEW YORK, NY 10018

To: Arbitrator Joseph Harris
cc: Hilt Construction, Inc.
<u>Via Regular and Certified Mail</u>



# JOSEPH A. HARRIS, PH.D.
## *Arbitrator, Mediator*
### Teaneck Business Assoc., Inc.
### 267 Griggs Avenue, Teaneck, New Jersey 07666

*C  201 280-8580*                                              *harrisjilr@gmail.com*

June 05, 2021                          **BY CERTIFIED AND REGULAR MAIL and EMAIL**

Hilt Construction, Inc.                    Haluk Savci, Esq.
120 Old Camplain Road                 Mason Tenders District Council of Greater NY
Hillsborough, NJ 08844                  520 8th Avenue, Suite 650
ilyas@hilt-construction.com            New York, NY 10018
                                                    PH: 212 452-9431 (Kaitlyn Schuster)
                                                    KSchuster@masontenders.org

**Trustees of the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund *and* the Mason Tenders District Council of Greater New York *against* Hilt Construction, Inc.**

To Whom It May Concern:

The Mason Tenders Fringe Benefits Funds and the MTDC sent a "Notice of Intention to Arbitrate" to me, dated June 04, 2021, and asked that I schedule a telephonic or video conferencing hearing date pursuant to Section VI of the Amended March 2020 Arbitration Procedures and Rules. The Funds states that the Collective Bargaining Agreement between you names me as a grievance Arbitrator. I have scheduled the virtual hearing for the date and time below.

    Date:  **June 29, 2021**
    Time:  **10:00 AM**

I will send the Parties a Zoom invitation prior to the scheduled hearing. By **June 22, 2021**, the Parties will exchange or have exchanged all written exhibits the Parties intend to submit at the hearing, via mail or electronic mail, with each other and with the Arbitrator.

| YOU MUST E-MAIL ME YOUR TELEPHONE NUMBER BY JUNE 28. |
| --- |

Please notify me ***BY E-MAIL (WITH COPY TO KAITLYN SCHUSTER AT MASON TENDERS FUNDS—SEE ABOVE)*** as to your availability of said dates within seven (7) days of the date of this letter. An absent response shall assume the date to be satisfactory. My daily rate is $1,400.00. The cancellation fee of $1,400.00 applies if I receive a request for postponement (and grant it) less than 14 complete days before a Hearing date.

Very truly yours,

*Joseph A Harris*

Joseph A. Harris, Ph.D.
Impartial Arbitrator

```
-------------------------------------------------------- X
```
TRUSTEES of the MASON TENDERS
DISTRICT COUNCIL WELFARE FUND,
PENSION FUND, ANNUITY FUND and
TRAINING PROGRAM FUND,

and

MASON TENDERS DISTRICT COUNCIL OF          <u>NOTICE OF INTENTION</u>
GREATER NEW YORK                           <u>TO ARBITRATE</u>

Plaintiffs,

against

HILT CONSTRUCTION, INC.

Defendants.
```
-------------------------------------------------------- X
```

      PLEASE TAKE NOTICE that the TRUSTEES of the MASON TENDERS
DISTRICT COUNCIL WELFARE FUND, PENSION FUND, ANNUITY FUND and
TRAINING PROGRAM FUND and the MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK hereby demand and intend to conduct an arbitration before
Arbitrator Joseph Harris against HILT CONSTRUCTION, INC. with respect to the
following controversies:

      Delinquent fringe benefit contributions and other contributions due to the Funds and
the District Council pursuant to the provisions of the collective bargaining agreement
between HILT CONSTRUCTION, INC. and the MASON TENDERS DISTRICT
COUNCIL OF GREATER NEW YORK as determined by an audit for the period 03/26/2018
through 12/29/2019 in the amount of $162,745.02 in addition to $11,645.47 in dues and PAC
contributions, $23,869.27 in imputed audit fees and $13,046.03 in statutory interest owed as
of 01/26/2021 for a total of **$211,305.79.**

      In addition, interest for the periods between 06/01/2018 and 12/31/2018 in the
amount of **$2,977.41** is also due.

Dated:     New York, New York
           October 22, 2021

Mason Tenders District Council Welfare Fund, et al.

By:    Haluk Savci, Esq.
520 8TH AVENUE,
SUITE 650
NEW YORK, NY 10018

To:   Arbitrator Joseph Harris
cc:   Hilt Construction, Inc.
<u>Via Regular and Certified Mail</u>

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Hilt Construction, Inc.
120 Old Complain Road
Hillsborough, NJ 08844

9590 9402 5813 0034 1393 86

2. Article Number *(Transfer from service label)*

7019 2970 0001 8411 4495

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X          ☑ Agent
             ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
                       10/28

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

# JOSEPH A. HARRIS, PH.D.
## *Arbitrator, Mediator*
### Teaneck Business Assoc., Inc.
### 267 Griggs Avenue, Teaneck, New Jersey 07666
*C 201 280-8580*                                    *harrisjilr@gmail.com*

October 27, 2021                                    **SENT BY EMAIL ONLY**

Hilt Construction, Inc.                     Haluk Savci, Esq.
120 Old Complain Road                  Mason Tenders District Council of Greater NY
Hillsborough, NJ 08844                   520 8th Avenue, Suite 650
ilyas@hilt-construction.com             New York, NY 10018
                                                        PH: 212 452-9431 (Henry Solotaroff-Webber)
                                                        henry@masontenders.org

**Trustees of the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund *and* the Mason Tenders District Council of Greater New York *against* Hilt Construction, Inc.**

To Whom It May Concern:

The Mason Tenders Fringe Benefits Funds and the MTDC sent a "Notice of Intention to Arbitrate" to me, dated October 22, 2021, and asked that I schedule a telephonic or video conferencing hearing date pursuant to Section VI of the Amended March 2020 Arbitration Procedures and Rules. The Funds states that the Collective Bargaining Agreement between you names me as a grievance Arbitrator. I have scheduled the virtual hearing for the date and time below.

          Date:  **November 22, 2021**
          Time:  **11:40 AM**

I will send the Parties a Zoom invitation prior to the scheduled hearing. By **November 15, 2021,** the Parties will exchange or have exchanged all written exhibits the Parties intend to submit at the hearing, via mail or electronic mail, with each other and with the Arbitrator.

| YOU MUST E-MAIL ME YOUR TELEPHONE NUMBER BY NOVEMBER 21. |
| --- |

Please notify me ***BY E-MAIL (WITH COPY TO HENRY SOLOTAROFF-WEBBER AT MASON TENDERS FUNDS—SEE ABOVE)*** as to your availability of said dates within seven (7) days of the date of this letter. An absent response shall assume the date to be satisfactory. My daily rate is $1,400.00. The cancellation fee of $1,400.00 applies if I receive a request for postponement (and grant it) less than 14 complete days before a Hearing date.

Very truly yours,

*Joseph A Harris*

Joseph A. Harris, Ph.D.
Impartial Arbitrator

# Exhibit 7

**REVISED**

---

<table>
<thead>
<tr><th># OF MONTHS</th><th></th><th></th></tr>
</thead>
<tbody>
<tr><td>65</td><td></td><td>$0.00</td></tr>
<tr><td>64</td><td></td><td>$0.00</td></tr>
<tr><td>63</td><td></td><td>$0.00</td></tr>
<tr><td>62</td><td></td><td>$0.00</td></tr>
<tr><td>61</td><td></td><td>$0.00</td></tr>
<tr><td>60</td><td></td><td>$0.00</td></tr>
<tr><td>59</td><td></td><td>$0.00</td></tr>
<tr><td>58</td><td></td><td>$0.00</td></tr>
<tr><td>57</td><td></td><td>$0.00</td></tr>
<tr><td>56</td><td></td><td>$0.00</td></tr>
<tr><td>55</td><td></td><td>$0.00</td></tr>
<tr><td>54</td><td></td><td>$0.00</td></tr>
<tr><td>53</td><td></td><td>$0.00</td></tr>
<tr><td>52</td><td></td><td>$0.00</td></tr>
<tr><td>51</td><td></td><td>$0.00</td></tr>
<tr><td>50</td><td></td><td>$0.00</td></tr>
<tr><td>49</td><td></td><td>$0.00</td></tr>
<tr><td>48</td><td></td><td>$0.00</td></tr>
<tr><td>47</td><td></td><td>$0.00</td></tr>
<tr><td>46</td><td></td><td>$0.00</td></tr>
<tr><td>45</td><td></td><td>$0.00</td></tr>
<tr><td>44</td><td></td><td>$0.00 Less $891.83 money on acc adj</td></tr>
<tr><td>43</td><td></td><td>$0.00</td></tr>
<tr><td>42</td><td></td><td>$0.00</td></tr>
<tr><td>41</td><td>$0.00</td><td>$0.00</td></tr>
<tr><td>40</td><td></td><td>$0.00</td></tr>
<tr><td>39</td><td>$380.81</td><td>$61.88</td></tr>
<tr><td>38</td><td>$2,483.20</td><td>$393.17</td></tr>
<tr><td>37</td><td>$4,407.68</td><td>$679.52</td></tr>
<tr><td>36</td><td>$7,655.79</td><td>$1,148.37</td></tr>
<tr><td>35</td><td>$13,176.48</td><td>$1,921.57</td></tr>
<tr><td>34</td><td>$3,724.80</td><td>$527.68</td></tr>
<tr><td>33</td><td>$248.32</td><td>$34.14</td></tr>
<tr><td>32</td><td>$279.36</td><td>$37.25</td></tr>
<tr><td>31</td><td>$695.84</td><td>$89.85</td></tr>
<tr><td>30</td><td>$27,008.95</td><td>$3,376.12</td></tr>
<tr><td>29</td><td></td><td>$0.00</td></tr>
<tr><td>28</td><td>$248.32</td><td>$28.97</td></tr>
<tr><td>27</td><td></td><td>$0.00</td></tr>
<tr><td>26</td><td></td><td>$0.00</td></tr>
<tr><td>25</td><td>$1,924.48</td><td>$0.00</td></tr>
<tr><td>24</td><td></td><td>$0.00</td></tr>
<tr><td>23</td><td></td><td>$0.00</td></tr>
<tr><td>22</td><td></td><td>$0.00</td></tr>
<tr><td>21</td><td></td><td>$0.00</td></tr>
<tr><td>20</td><td></td><td>$0.00</td></tr>
<tr><td>19</td><td></td><td>$0.00</td></tr>
<tr><td>18</td><td></td><td>$0.00</td></tr>
<tr><td>17</td><td></td><td>$0.00</td></tr>
<tr><td>16</td><td></td><td>$0.00</td></tr>
<tr><td>15</td><td></td><td>$0.00</td></tr>
<tr><td>14</td><td></td><td>$0.00</td></tr>
<tr><td>13</td><td></td><td>$0.00</td></tr>
<tr><td>12</td><td></td><td>$0.00</td></tr>
<tr><td>11</td><td></td><td>$0.00</td></tr>
<tr><td>10</td><td></td><td>$0.00</td></tr>
<tr><td>9</td><td></td><td>$0.00</td></tr>
<tr><td>8</td><td></td><td>$0.00</td></tr>
<tr><td>7</td><td></td><td>$0.00</td></tr>
<tr><td>6</td><td></td><td>$0.00</td></tr>
<tr><td>5</td><td></td><td>$0.00</td></tr>
<tr><td>4</td><td></td><td>$0.00</td></tr>
<tr><td>3</td><td></td><td>$0.00</td></tr>
<tr><td>2</td><td></td><td>$0.00</td></tr>
<tr><td>1</td><td></td><td>$0.00</td></tr>
</tbody>
</table>

INT RATE
5.00%

Hilt Constructon
ER# 16313, 16314 & 16318

Audit period
3/26/18 - 12/29/19

November 15, 2021

# mos.audit.covers
22

| DEFICIENCY | $62,233.83 | $8,298.53 | $9,127.63 | $79,659.99 |
|---|---|---|---|---|

| | |
|---|---|
| Fringes | $62,233.83 |
| Dues & Pac | $4,538.92 |
| Current Interest | $8,298.53 |
| Audit Cost | $9,127.63 |
| **TOTAL** | **$84,198.91** |



## Schultheis & Panettieri LLP
### — Accountants and Consultants —

**RECEIVED**
NOV 15 2021
MTDC TRUST FUNDS

**Please Reply to:**
450 Wireless Boulevard
Hauppauge, NY 11788
Telephone: (631) 273-4778
Fax: (631) 273-3488

21 Vernon Street
Floral Park, NY 11001
Telephone: (516) 216-5695

485A US Route 1 South
Suite 360
Iselin, NJ 08830
Telephone: (732) 268-1301

http://www.snpcpa.com

**PARTNERS**
Carol Westfall, CPA
Vincent F. Panettieri, CPA
Max Capone, CPA
James M. Heinzman, CPA
Donna Panettieri, CPA
Peter M. Murray, CPA
Sharon M. Haddad, CPA
Gary Waldren, CPA
Alexander Campo, CPA.CITP
Jennifer Evans, CPA
Richard B. Silvestro, CPA
Jamie L. Krainski, CPA
Vincent A. Gelpi, CPA

**DIRECTORS**
Stephen Bowen
Anthony Sgroi
William R. Shannon
William Austin
Kimberly Miller
Michael Fox
Viorel Kuzma

### INDEPENDENT ACCOUNTANT'S REPORT
### ON APPLYING AGREED-UPON PROCEDURES

11/15/21

®

Board of Trustees
c/o Mr. Dominick Giammona
Mason Tenders' District Council Trust Funds
520 8th Avenue, Suite 600
New York, New York 10018-4196

A#30865
A#30866
a#30869

### REVISED 11/4/2021
Re: Employer: Hilt Construction, Inc.
Employer #: 16313, 16314, 16316, 16317, 16318, 16319
Period Covered: March 26, 2018 - December 29, 2019
<u>Scheduled Deficiency:</u> **$66,772.75**

We have performed the procedures enumerated, which were agreed to by the management of the Mason Tenders' District Council Trust Funds (the "Funds"), solely to assist you with respect to determining whether employer contributions provided by Hilt Construction, Inc. (the "Employer") on behalf of the Funds' participants for the period March 26, 2018 through December 29, 2019 were made in accordance with collective bargaining agreements. This agreed-upon procedures engagement was conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants. The Employer is responsible for making employer contributions in accordance with applicable agreements. The management of the Funds is responsible for the collection of employer contributions and the sufficiency of the procedures. Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which this report has been requested or for any other purpose.

A. **Procedure:** Determined the applicable collective bargaining agreements and identified all covered work for which the employer is required to remit contributions to the Funds.

   **Findings:** No exceptions were found as a result of applying the procedure.

B. **Procedure:** Gross wages reported in Employer's payroll records, per quarter, were compared to federal and state payroll tax filings. All payroll discrepancies that aggregate $500.00 or more, per quarter, will be reported.

   **Findings:** No exceptions were found as a result of applying the procedure.

C. **Procedure:** Total payroll hours for employees performing covered work, including but not limited to employees reported to the Funds or being paid laborer's rate as determined by applicable agreement, were compared to total hours reported for benefits. We will report any discrepancies.

   **Findings: Exceptions were found as a result of applying the procedure. A deficiency totaling $66,772.75 was scheduled. (See Appendix A.)**

D. **Procedure:** Total payroll hours for employees performing covered work were compared to total hours reported on shop steward reports. We will report consistent systematic variances that may indicate another source of payroll.

   **Findings:** No exceptions were found as a result of applying the procedure.

E. **Procedure:** Employer's cash disbursement journal was analyzed for transfers to related companies, non-payroll disbursements to participants and payments to non-signatory subcontractors where there was an indication that bargaining unit work was performed. We will report all such transfers, disbursements and payments.

   **Findings:** No exceptions were found as a result of applying the procedure.

F. **Procedure:** The Employer's cash disbursement journal was compared to the Employer's general ledger when available. We will report any additional transfers, disbursements or payments as noted in item E that were not disclosed in disbursement records.

   **Findings:** No exceptions were found as a result of applying the procedure.

G. **Procedure:** When applicable, hours worked by both Tier A and Tier B employees were compared on a quarterly basis to determine if the Employer was compliant in satisfying Tier A/Tier B ratio requirements as outlined in the applicable Collective Bargaining Agreement. All discrepancies will be reported.

   **Findings:** No exceptions were found as a result of applying the procedure.

We were not engaged to and did not conduct an audit, the objective of which would be the expression of an opinion on whether the Employer remitted contributions to the Funds in accordance with the applicable collective bargaining agreement(s). Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

This report is intended solely for the information and use of the Funds, and is not intended and should not be used by anyone other than those specified parties.

*Schultheis & Panettieri, LLP*

SCHULTHEIS & PANETTIERI, LLP
Hauppauge, New York

REPORT DATE: May 14, 2020

REVISED DATE: November 04, 2021

Enc.

# MASON TENDERS' DISTRICT COUNCIL TRUST FUNDS

| | |
|---|---|
| **Employer** | Hilt Construction, Inc. |
| **Address** | 120 Old Camplain Road, Hillsborough, NJ 08844 |
| **Mail Recap To** | 120 Old Camplain Road, Hillsborough, NJ 08844 |
| **Telephone #** | 1-(908)-255-4215 **Ext.** **Fax #** 1-(908)-255-4213 |
| **Email Address** | ilyas@hilt-construction.com |
| **Contact** | M. Ilyas Chaudry **Position** President |
| **Principal** | M. Ilyas Chaudry **Position** President |
| **Audit Period** | 03/26/2018 - 12/29/2019 |

| Employer # | Group # | Agreement |
|---|---|---|
| 16313 | 776 | SCA PLA - Apprentice (3rd Yr) |
| 16314 | 76 | SCA Project Labor Agreement (Local 79) - Apprentice |
| 16316 | 397 | NYCHA PLA - Apprentice (3rd Yr) |
| 16317 | 295 | NYC PLA - Public Work Apprentice |
| 16318 | 700 | School Construction Authority Project Labor Agreement (Local 79 Work) |
| 16319 | 195 | NYC PLA - Public Work Local 79 |

| | | | |
|---|---|---|---:|
| Principal Due | 16313 | 776 | 1,343.30 |
| Principal Due | 16314 | 76 | 199.00 |
| Principal Due | 16316 | 397 | 0.00 |
| Principal Due | 16317 | 295 | 0.00 |
| Principal Due | 16318 | 700 | 61,583.36 |
| Principal Due | 16319 | 195 | 0.00 |
| Less On Acct Money | | | -891.83 |
| **Total Principal Due** | | | **$ 62,233.83** |

| | | | |
|---|---|---|---:|
| Dues & PAC Due | 16313 | 776 | 134.33 |
| Dues & PAC Due | 16314 | 76 | 19.90 |
| Dues & PAC Due | 16316 | 397 | 0.00 |
| Dues & PAC Due | 16317 | 295 | 0.00 |
| Dues & PAC Due | 16318 | 700 | 4,384.69 |
| Dues & PAC Due | 16319 | 195 | 0.00 |
| **Total Dues & PAC Due** | | | **4,538.92** |

| | |
|---|---:|
| **Total Principal, Dues & PAC** | **$ 66,772.75** |

11/4/2021

# IMPUTED COST OF AUDIT CALCULATION

**Hilt Construction, Inc.**
**Audit Period From 03/26/2018 To 12/29/2019**

## Audit Cost by Fringe Contribution Method

| | |
|---|---|
| Fringe Contributions, computed from download | 458,065.30 |
| 10% of Fringe Contributions, Audit findings above this would be considered Substantial | $ 45,806.53 |
| If findings are greater than 10% of Fringe Contributions, Y | Y |
| Number of Months | 22 |
| Imputed Cost of Audit, ((Principal Findings/150) x Number of Months) | 9,127.63 |

## Audit Cost by Hours Reported Method

| Year | Hours Reported | Findings | |
|---|---|---|---|
| 2018 | 10,008.50 | 1,054.50 | 10.54 % |
| 2019 | 5,497.50 | 1,007.00 | 18.32 % |
| Totals | 15,506.00 | 2,061.50 | 13.29 % |

| | |
|---|---|
| If findings are greater than 10% of Fringe Contributions, Y | Y |
| Number of Months | 22 |
| Imputed Cost of Audit, [(Principal Findings/150) x Number of Months] | 9,127.63 |

11/4/2021

# Reported Hours

Hilt Construction, Inc.
Audit Period From 03/26/2018 To 12/29/2019

| | Group Number | HRS |
|---|---|---|
| | **76** | |
| Total Hrs for month | 2018/09 | 135.00 |
| Total Hrs for month | 2018/10 | 111.50 |
| Total Hrs for month | 2019/03 | 16.00 |
| Total Hrs for month | 2019/05 | 15.00 |
| Total Hrs for month | 2019/06 | 62.50 |
| Total Hrs for month | 2019/07 | 8.00 |
| Total Hrs for Group # | 76 | 348.00 |
| | **195** | |
| Total Hrs for month | 2018/04 | 1,903.00 |
| Total Hrs for month | 2018/05 | 1,216.00 |
| Total Hrs for month | 2018/06 | 818.50 |
| Total Hrs for Group # | 195 | 3,937.50 |
| | **295** | |
| Total Hrs for month | 2018/04 | 331.00 |
| Total Hrs for month | 2018/05 | 345.00 |
| Total Hrs for month | 2018/06 | 218.00 |
| Total Hrs for month | 2018/07 | 126.00 |
| Total Hrs for month | 2018/08 | 139.50 |
| Total Hrs for Group # | 295 | 1,159.50 |
| | **397** | |
| Total Hrs for month | 2018/07 | 144.00 |
| Total Hrs for month | 2018/08 | 74.00 |
| Total Hrs for Group # | 397 | 218.00 |
| | **700** | |
| Total Hrs for month | 2018/07 | 1,046.00 |
| Total Hrs for month | 2018/08 | 926.50 |
| Total Hrs for month | 2018/09 | 999.50 |
| Total Hrs for month | 2018/10 | 858.50 |
| Total Hrs for month | 2018/11 | 120.00 |
| Total Hrs for month | 2018/12 | 215.50 |

| | Group Number | HRS |
|---|---|---|
| Total Hrs for month | 2019/01 | 369.00 |
| Total Hrs for month | 2019/02 | 269.00 |
| Total Hrs for month | 2019/03 | 681.50 |
| Total Hrs for month | 2019/05 | 1,014.50 |
| Total Hrs for month | 2019/06 | 991.50 |
| Total Hrs for month | 2019/07 | 952.00 |
| Total Hrs for month | 2019/08 | 962.50 |
| Total Hrs for month | 2019/09 | 74.00 |
| Total Hrs for Group # | 700 | 9,480.00 |
| | **776** | |
| Total Hrs for month | 2018/09 | 146.00 |
| Total Hrs for month | 2018/10 | 135.00 |
| Total Hrs for month | 2019/03 | 82.00 |
| Total Hrs for Group # | 776 | 363.00 |
| Total Hrs from download ==> | | 15,506.00 |

**Hilt Construction, Inc.**
Report Period: 03/26/2018 - 12/29/2019

On Account Monies as of 11/04/21:

| EMPLOYER NUMBER | GROUP NUMBER | FRINGE MONIES | | DUES/PAC MONIES | | TOTAL MONIES | |
|---|---|---|---|---|---|---|---|
| 16313 | 776 | $ | - | $ | - | $ | - |
| 16314 | 76 | $ | - | $ | - | $ | - |
| 16316 | 397 | $ | - | $ | - | $ | - |
| 16317 | 295 | $ | - | $ | - | $ | - |
| 16318 | 700 | $ | (891.83) | $ | - | $ | (891.83) |
| 16319 | 195 | $ | - | $ | - | $ | - |
| **TOTAL ON ACCOUNT MONIES:** | | $ | (891.83) | $ | - | $ | (891.83) |

# Hilt Construction, Inc.

On account money for Employer # 16313 (Group 776) as of 11/04/21 for the period 03/26/2018 to 12/29/2019

| AS400 Line # | Work Period | Deposit Date | Code | Hours | Money Due | Money Received | Open | Total On Account | Fringes On Account | Dues & PAC On Account | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 03/31/19 | 06/12/19 | PL | 82.00 | $ 1,799.08 | $ 1,799.98 | $ 0.10 | | | | |
| 2 | 10/31/18 | 03/29/19 | PL | 135.00 | $ 2,961.90 | $ 2,961.90 | $ - | | | | |
| 3 | 09/30/18 | 03/29/19 | PL | 146.00 | $ 3,203.24 | $ 3,203.24 | $ - | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | $ - | $ - | $ - | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Hilt Construction, Inc.**

On account money for Employer # 16314 (Group 76) as of 11/04/21 for the period 03/26/2018 to 12/29/2019

| AS400 Line # | Work Period | Deposit Date | Code | Hours | Money Due | Money Received | Open | Total On Account | Fringes On Account | Dues & PAC On Account | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 07/28/19 | 10/29/21 | PL | 8.00 | $ 175.12 | $ 175.12 | $ - | | | | |
| 2 | 06/30/19 | 10/29/21 | PL | 62.50 | $ 1,368.14 | $ 1,368.14 | $ - | | | | |
| 3 | 05/26/19 | 10/29/21 | PL | 15.00 | $ 328.35 | $ 328.35 | $ - | | | | |
| 4 | 03/31/19 | 06/12/19 | PL | 16.00 | $ 350.24 | $ 350.24 | $ - | | | | |
| 5 | 11/30/18 | 03/29/19 | PL | - | $ - | $ - | $ - | | | | |
| 6 | 10/31/18 | 03/29/19 | PL | 111.50 | $ 2,440.75 | $ 2,440.75 | $ - | | | | |
| 7 | 09/30/18 | 03/29/19 | PL | 135.00 | $ 2,955.15 | $ 2,955.15 | $ - | | | | |
| | | | | | | | | $ - | $ - | $ - | |

**Hilt Construction, Inc.**

On account money for Employer # 16316 (Group 397) as of 11/04/21 for the period 03/26/2018 to 12/29/2019

| AS400 Line # | Work Period | Deposit Date | Code | Hours | Money Due | Money Received | Open | Total On Account | Fringes On Account | Dues & PAC On Account | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 08/31/18 | 01/22/19 | PL | 74.00 | $ 1,623.56 | $ 1,623.56 | $ - | | | | |
| 2 | 07/29/18 | 01/22/19 | PL | 144.00 | $ 3,159.36 | $ 3,159.36 | $ - | | | | |
| | | | | | | | | | | | |
| | | | | | | | | $ - | $ - | $ - | |
| | | | | | | | | $ - | $ - | $ - | |
| | | | | | | | | | | | |

# Hilt Construction, Inc.

On account money for Employer # 16317 (Group 295) as of 11/04/21 for the period 03/26/2018 to 12/29/2019

| AS400 Line # | Work Period | Deposit Date | Code | Hours | Money Due | Money Received | Open | Total On Account | Fringes On Account | Dues & PAC On Account | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 08/31/18 | 01/22/19 | PL | 139.50 | $ 3,053.67 | $ 3,053.66 | $ 0.01 | | | | |
| 2 | 07/29/18 | 01/22/19 | PL | 126.00 | $ 2,758.14 | $ 2,758.14 | $ - | | | | |
| 3 | 06/30/18 | 09/26/18 | PL | 218.00 | $ 4,772.02 | $ 4,772.02 | $ - | | | | |
| 4 | 05/31/18 | 08/27/18 | PL | 345.00 | $ 7,552.05 | $ 7,552.05 | $ - | | | | |
| 5 | 05/31/18 | 08/27/18 | OA | - | $ - | $ 0.45 | $ (0.45) | | | | |
| 6 | 04/30/18 | 07/19/18 | PL | 331.00 | $ 7,245.59 | $ 7,245.59 | $ - | | | | |
| | | | | | | | | | | | |
| | | | | | | | | $ - | $ - | $ - | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

# Hilt Construction, Inc.

On account money for Employer # 16318 (Group 700) as of 11/04/21 for the period 03/26/2018 to 12/29/2019

| AS400 Line # | Work Period | Deposit Date | Code | Hours | Money Due | Money Recieved | Open | Total On Account | Fringes On Account | Dues &PAC On Account | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 09/08/19 | 10/29/21 | PL | 74.00 | $ 2,460.50 | $ 2,460.50 | $ - | | | | |
| 2 | 09/08/19 | 10/29/21 | OA | - | | $ 10.99 | $ (10.99) | $ (10.99) | $ (10.99) | | |
| 3 | 09/08/19 | 11/03/21 | IN | - | $ 238.40 | | $ 238.40 | | | | interest |
| 4 | 08/25/19 | 10/29/21 | PL | 962.50 | $ 32,003.30 | $ 32,003.30 | $ - | | | | |
| 5 | 08/25/19 | 11/03/21 | IN | - | $ 3,394.50 | | $ 3,394.50 | | | | interest |
| 6 | 07/28/19 | 10/29/21 | PL | 952.00 | $ 31,654.00 | $ 31,654.00 | $ - | | | | |
| 7 | 07/28/19 | 11/03/21 | IN | - | $ 3,489.98 | | $ 3,489.98 | | | | interest |
| 8 | 06/30/19 | 10/29/21 | PL | 991.50 | $ 32,967.69 | $ 32,967.69 | $ - | | | | |
| 9 | 06/30/19 | 11/03/21 | IN | - | $ 3,783.24 | | $ 3,783.24 | | | | interest |
| 10 | 05/26/19 | 10/29/21 | PL | 1,014.50 | $ 33,732.37 | $ 33,732.37 | $ - | | | | |
| 11 | 05/26/19 | 11/03/21 | IN | - | $ 3,996.87 | | $ 3,996.87 | | | | interest |
| 12 | 03/31/19 | 08/12/19 | PL | 681.50 | $ 22,659.98 | $ 22,659.98 | $ - | | | | |
| 13 | 03/31/19 | 07/10/19 | IN | - | $ 212.04 | | $ 212.04 | | | | interest |
| 14 | 02/24/19 | 06/12/19 | PL | 269.00 | $ 8,944.25 | $ 8,944.25 | $ - | | | | |
| 15 | 02/24/19 | 07/10/19 | IN | - | $ 127.60 | | $ 127.60 | | | | interest |
| 16 | 01/27/19 | 06/12/19 | PL | 369.00 | $ 12,269.25 | $ 12,269.25 | $ - | | | | |
| 17 | 01/27/19 | 07/10/19 | IN | - | $ 235.48 | | $ 235.48 | | | | interest |
| 18 | 12/31/18 | 03/29/19 | PL | 215.50 | $ 7,165.48 | $ 7,165.48 | $ - | | | | |
| 19 | 12/31/18 | 04/08/19 | IN | (147.00) | $ (4,093.98) | $ (4,093.98) | $ - | | | | |
| 20 | 12/31/18 | 04/04/19 | IN | - | $ 72.27 | | $ 72.27 | | | | interest |
| 21 | 11/30/18 | 03/29/19 | PL | 120.00 | $ 3,990.00 | $ 3,990.00 | $ - | | | | |
| 22 | 11/30/18 | 04/08/19 | IN | (48.00) | $ (1,336.80) | $ (1,336.80) | $ - | | | | |
| 23 | 11/30/18 | 04/04/19 | PL | - | $ 57.20 | | $ 57.20 | | | | interest |
| 24 | 10/31/18 | 04/03/19 | IN | 858.50 | $ 28,545.23 | $ 28,545.23 | $ - | | | | |
| 25 | 10/31/18 | 04/04/19 | PL | - | $ 522.60 | | $ 522.60 | | | | interest |
| 26 | 10/31/18 | 03/29/19 | IN | - | $ - | | $ - | | | | |
| 27 | 09/30/18 | 03/29/19 | PL | 999.50 | $ 33,233.41 | $ 33,233.41 | $ - | | | | |
| 28 | 09/30/18 | 03/29/19 | IN | - | $ 797.75 | $ 797.75 | $ (797.75) | $ (797.75) | $ (797.75) | $ - | |
| 29 | 09/30/18 | 04/04/19 | IN | - | $ 752.40 | | $ 752.40 | | | | interest |
| 30 | 08/31/18 | 11/15/18 | OA | - | $ (27,464.50) | $ (27,464.50) | $ - | | | | |
| 31 | 08/31/18 | 01/22/19 | OA | - | $ 27,464.50 | $ 27,464.50 | $ - | | | | |
| 32 | 08/26/18 | 01/22/19 | PL | 925.50 | $ 30,806.16 | $ 30,806.16 | $ - | | | | |
| 33 | 08/26/18 | 01/22/19 | OA | - | $ 83.09 | $ 83.09 | $ (83.09) | $ (83.09) | $ (83.09) | $ - | |
| 34 | 08/26/18 | 01/22/19 | PL | (45.00) | $ (1,253.25) | $ (1,253.25) | $ - | | | | |
| 35 | 08/26/18 | 02/05/19 | IN | - | $ 544.38 | | $ 544.38 | | | | interest |
| 36 | 07/31/18 | 11/15/18 | IN | - | $ 22,942.50 | $ 22,942.50 | $ - | | | | |
| 37 | 07/31/18 | 01/22/19 | OA | - | $ (22,942.50) | $ (22,942.50) | $ - | | | | |
| 38 | 07/31/18 | 01/22/19 | OA | 1,046.00 | $ 34,779.50 | $ 34,779.50 | $ - | | | | |
| 39 | 07/29/18 | 02/12/19 | PL | (48.00) | $ (1,336.80) | $ (1,336.80) | $ - | | | | |
| 40 | 07/29/18 | 02/05/19 | IN | - | $ 760.00 | | $ 760.00 | | | | interest |
| | | | | | | | | $ (891.83) | $ (891.83) | $ - | |

# Hilt Construction, Inc.

On account money for Employer # 16319 (Group 195) as of 11/04/21 for the period 03/26/2018 to 12/29/2019

| AS400 Line # | Work Period | Deposit Date | Code | Hours | Money Due | Money Received | Open | Total On Account | Fringes On Account | Dues & PAC On Account | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 06/30/18 | 09/26/18 | PL | 742.50 | $ 24,688.16 | $ 24,688.13 | $ 0.03 | | | | |
| 2 | 06/30/18 | 09/26/18 | PL | 76.00 | $ 2,527.00 | $ 2,527.00 | $ - | | | | |
| 3 | 06/30/18 | 10/01/18 | IN | - | $ - | $ - | $ 244.08 | | | | interest |
| 4 | 06/30/18 | 10/01/18 | IN | - | $ 24.48 | $ 24.48 | $ 24.48 | | | | interest |
| 5 | 06/30/18 | 10/11/18 | PL | (20.50) | $ (570.94) | $ (570.94) | $ - | | | | |
| 6 | 05/31/18 | 08/27/18 | PL | 1,135.00 | $ 37,738.75 | $ 37,738.75 | $ - | | | | |
| 7 | 05/31/18 | 08/27/18 | PL | 81.00 | $ 2,693.25 | $ 2,693.25 | $ - | | | | interest |
| 8 | 05/31/18 | 09/05/18 | IN | - | $ 378.14 | $ - | $ 378.14 | | | | |
| 9 | 05/31/18 | 09/05/18 | IN | - | $ 26.28 | $ - | $ 26.28 | | | | interest |
| 10 | 05/31/18 | 09/11/18 | PL | (100.00) | $ (2,785.00) | $ (2,785.00) | $ - | | | | |
| 11 | 05/31/18 | 09/25/18 | OA | - | $ 378.14 | $ 378.14 | $ (378.14) | | | | interest |
| 12 | 05/31/18 | 09/25/18 | OA | - | $ 26.28 | $ 26.28 | $ (26.28) | | | | |
| 13 | 04/30/18 | 07/19/18 | PL | 1,885.00 | $ 62,676.25 | $ 62,676.25 | $ - | | | | |
| 14 | 04/30/18 | 07/19/18 | PL | 18.00 | $ 598.50 | $ 598.50 | $ - | | | | interest |
| 15 | 04/30/18 | 08/01/18 | PL | - | $ 557.70 | $ 557.70 | $ 557.70 | | | | interest |
| 16 | 04/30/18 | 08/01/18 | IN | - | $ 5.20 | $ 5.20 | $ 5.20 | | | | |
| 17 | 04/30/18 | 08/16/18 | PL | (158.00) | $ (4,400.30) | $ (4,400.30) | $ - | | | | interest |
| 18 | 04/30/18 | 09/25/18 | OA | - | $ 557.70 | $ 557.70 | $ (557.70) | | | | interest |
| 19 | 04/30/18 | 09/25/18 | OA | - | $ - | $ 5.20 | $ (5.20) | | | | interest |
| | | | | | | | | $ - | $ - | $ - | |

# APPENDIX A

# MASON TENDERS' DISTRICT COUNCIL TRUST FUNDS
## FRINGE BENEFIT DEFICIENCY

Hilt Construction, Inc.
Audit Period From 03/26/2018 To 12/29/2019

| Month Ending | SSN | Name | Year | Group Number | Audited Hours | Revised Audit Adjustment | Reported Hours | Difference | Fringe Rate | Fringes Due | Dues & PAC Amt | Total Amt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OCT - 2018 | | EDWARDS*ERNESTO | | | 136.00 | 0.00 | 135.00 | 1.00 | 19.95 | $ 19.95 | 1.99 | $ 21.94 |
| Total For | | OCT - 2018 | | | 136.00 | 0.00 | 135.00 | 1.00 | | 19.95 | 1.99 | 21.94 |
| APR - 2019 | | FORD*KEITH | | | 66.50 | 0.00 | 0.00 | 66.50 | 19.90 | 1,323.35 | 132.34 | 1,455.69 |
| Total For | | APR - 2019 | | | 66.50 | 0.00 | 0.00 | 66.50 | | 1,323.35 | 132.34 | 1,455.69 |
| MAY - 2019 | 8 | FORD*KEITH | | | 24.00 | -24.00 | 0.00 | 0.00 | 19.90 | 0.00 | 0.00 | 0.00 |
| Total For | | MAY - 2019 | | | 24.00 | -24.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| Total For Group Number | 776 | Employer Number | 16313 | | 226.50 | -24.00 | 135.00 | 67.50 | | 1,343.30 | 134.33 | 1,477.63 |

11/4/2021

## Hitt Construction, Inc.
## Audit Period From 03/26/2018 To 12/29/2019

| Month Ending | SSN | Name | Year | Group Number | Audited Hours | Revised Audit Adjustment | Reported Hours | Difference | Fringe Rate | Fringes Due | Dues & PAC Amt | Total Amt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MAR - 2019 | | ARROYO*ISMAEL | | | 26.00 | 0.00 | 16.00 | 10.00 | 19.90 | 199.00 | 19.90 | 218.90 |
| **Total For** | | **MAR - 2019** | | | **0.00** | **0.00** | **16.00** | **10.00** | | **199.00** | **19.90** | **218.90** |
| MAY - 2019 | | CLARK*MICHAEL | | | 0.00 | 15.00 | 15.00 | 0.00 | 19.90 | 0.00 | 0.00 | 0.00 |
| **Total For** | | **MAY - 2019** | | | **0.00** | **15.00** | **15.00** | **0.00** | | **0.00** | **0.00** | **0.00** |
| JUNE - 2019 | | HENRY*ASHEEM | | | 0.00 | 38.50 | 38.50 | 0.00 | 19.90 | 0.00 | 0.00 | 0.00 |
| JUNE - 2019 | | MACK*BRYANT | | | 0.00 | 24.00 | 24.00 | 0.00 | 19.90 | 0.00 | 0.00 | 0.00 |
| **Total For** | | **JUNE - 2019** | | | **0.00** | **62.50** | **62.50** | **0.00** | | **0.00** | **0.00** | **0.00** |
| JULY - 2019 | | MACK*BRYANT | | | 0.00 | 8.00 | 8.00 | 0.00 | 19.90 | 0.00 | 0.00 | 0.00 |
| **Total For** | | **JULY - 2019** | | | **0.00** | **8.00** | **8.00** | **0.00** | | **0.00** | **0.00** | **0.00** |
| **Total For Group Number  76** | | **Employer Number  16314** | | | **26.00** | **85.50** | **101.50** | **10.00** | | **199.00** | **19.90** | **218.90** |

| Month Ending | SSN | Name | Year | Group Number | Audited Hours | Revised Audit Adjustment | Reported Hours | Difference | Fringe Rate | Fringes Due | Dues & PAC Amt | Total Amt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MAY - 2018 | | TIMBERLAKE*EDWARD | | | 2.00 | 0.00 | 0.00 | 2.00 | 31.04 | 62.08 | 4.42 | 66.50 |
| **Total For** | | **MAY - 2018** | | | **2.00** | **0.00** | **0.00** | **2.00** | | **62.08** | **4.42** | **66.50** |
| JULY - 2018 | | MISLU*ERVIN | | | 46.00 | 0.00 | 8.00 | 38.00 | 31.04 | 1,179.52 | 83.98 | 1,263.50 |
| JULY - 2018 | | TAMBA ROMERO*JHON S. | | | 144.00 | 0.00 | 143.00 | 1.00 | 31.04 | 31.04 | 2.21 | 33.25 |
| **Total For** | | **JULY - 2018** | | | **190.00** | **0.00** | **151.00** | **39.00** | | **1,210.56** | **86.19** | **1,296.75** |
| AUG - 2018 | | AHMED*SHABBIR | | | 10.00 | 0.00 | 0.00 | 10.00 | 31.04 | 310.40 | 22.10 | 332.50 |
| AUG - 2018 | | CABRERA*LUIS G. | | | 103.00 | 0.00 | 95.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| AUG - 2018 | | ELLIOT*BRUCE | | | 112.00 | 0.00 | 104.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| AUG - 2018 | | MISLU*ERVIN | | | 83.00 | 0.00 | 47.00 | 36.00 | 31.04 | 1,117.44 | 79.56 | 1,197.00 |
| AUG - 2018 | | SOTAMBA ROMERO*JHON S. | | | 146.00 | 0.00 | 138.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| AUG - 2018 | | WANGDUE*LOBSANG | | | 137.00 | 0.00 | 127.00 | 10.00 | 31.04 | 310.40 | 22.10 | 332.50 |
| **Total For** | | **AUG - 2018** | | | **591.00** | **0.00** | **511.00** | **80.00** | | **2,483.20** | **176.80** | **2,660.00** |
| SEPT - 2018 | | BAIG*MIRZA | | | 65.00 | 0.00 | 55.00 | 10.00 | 31.04 | 310.40 | 22.10 | 332.50 |
| SEPT - 2018 | | BEG*AWAIS | | | 107.00 | 0.00 | 0.00 | 107.00 | 31.04 | 3,321.28 | 236.47 | 3,557.75 |
| SEPT - 2018 | | DOH*KENNY J | | | 9.00 | 0.00 | 0.00 | 9.00 | 31.04 | 279.36 | 19.89 | 299.25 |
| SEPT - 2018 | | MISLU*ERVIN | | | 32.00 | 0.00 | 16.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |
| **Total For** | | **SEPT - 2018** | | | **213.00** | **0.00** | **71.00** | **142.00** | | **4,407.68** | **313.82** | **4,721.50** |
| OCT - 2018 | | AHMED*SHABBIR | | | 118.50 | 0.00 | 118.00 | 0.50 | 31.04 | 15.52 | 1.11 | 16.63 |
| OCT - 2018 | | BEG*AWAIS | | | 87.50 | 0.00 | 0.00 | 87.50 | 31.04 | 2,716.00 | 193.38 | 2,909.38 |
| OCT - 2018 | | JOINER, TERRY | | | 0.00 | 8.00 | 0.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| OCT - 2018 | | KERR, STEPTON | | | 0.00 | 8.00 | 0.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| OCT - 2018 | | LEE, DONALD | | | 0.00 | 16.00 | 0.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |
| OCT - 2018 | | PELISSIER, PEDERSIN | | | 0.00 | 16.00 | 0.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |
| OCT - 2018 | | SINGH*BHUPINDER | | | 0.00 | 8.00 | 0.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| OCT - 2018 | | SINGH*MANJINDER | | | 43.00 | 0.00 | 0.00 | 43.00 | 31.04 | 1,334.72 | 95.03 | 1,429.75 |
| OCT - 2018 | | SINGH*VIRENDER | | | 43.00 | 0.00 | 0.00 | 43.00 | 31.04 | 1,334.72 | 95.03 | 1,429.75 |
| OCT - 2018 | | TERRY, JOSHUA | | | 0.00 | 16.00 | 0.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |

| Month Ending | SSN | Name | Year | Group Number | Audited Hours | Revised Audit Adjustment | Reported Hours | Difference | Fringe Rate | Fringes Due | Dues & PAC Amt | Total Amt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total For | OCT - 2018 | | | | 292.00 | 72.00 | 118.00 | 246.00 | | 7,635.84 | 543.67 | 8,179.51 |
| NOV - 2018 | | AHMED*SHABBIR | | | 40.00 | 0.00 | 0.00 | 40.00 | 31.04 | 1,241.60 | 88.40 | 1,330.00 |
| NOV - 2018 | | BAIG*MIRZA | | | 57.50 | 0.00 | 16.00 | 41.50 | 31.04 | 1,288.16 | 91.72 | 1,379.88 |
| NOV - 2018 | | BEG*AWAIS | | | 99.00 | 0.00 | 32.00 | 67.00 | 31.04 | 2,079.68 | 148.07 | 2,227.75 |
| NOV - 2018 | | CABRERA*LUIS G. | | | 64.00 | 0.00 | 16.00 | 48.00 | 31.04 | 1,489.92 | 106.08 | 1,596.00 |
| NOV - 2018 | | CARCH*CHRISTIAN | | | 80.00 | 0.00 | 32.00 | 48.00 | 31.04 | 1,489.92 | 106.08 | 1,596.00 |
| NOV - 2018 | | LEE, DONALD | | | 0.00 | 16.00 | 0.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |
| NOV - 2018 | | PELISSIER, PEDERSIN | | | 0.00 | 24.00 | 0.00 | 24.00 | 31.04 | 744.96 | 53.04 | 798.00 |
| NOV - 2018 | | SINGH*HARBHAJAN | | | 32.00 | 0.00 | 0.00 | 32.00 | 31.04 | 993.28 | 70.72 | 1,064.00 |
| NOV - 2018 | | SINGH*MANJINDER | | | 12.00 | 0.00 | 8.00 | 4.00 | 31.04 | 124.16 | 8.84 | 133.00 |
| NOV - 2018 | | SINGH*VIRENDER | | | 12.00 | 0.00 | 8.00 | 4.00 | 31.04 | 124.16 | 8.84 | 133.00 |
| NOV - 2018 | | TERRY, JOSHUA | | | 0.00 | 47.50 | 0.00 | 47.50 | 31.04 | 1,474.40 | 104.98 | 1,579.38 |
| NOV - 2018 | | WANGDUE*LOBSANG | | | 52.50 | 0.00 | 0.00 | 52.50 | 31.04 | 1,629.60 | 116.03 | 1,745.63 |
| Total For | NOV - 2018 | | | | 449.00 | 87.50 | 112.00 | 424.50 | | 13,176.48 | 938.16 | 14,114.64 |
| DEC - 2018 | | AHMED*SHABBIR | | | 32.00 | 0.00 | 0.00 | 32.00 | 31.04 | 993.28 | 70.72 | 1,064.00 |
| DEC - 2018 | | BEG*AWAIS | | | 16.00 | 0.00 | 8.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| DEC - 2018 | | CABRERA*LUIS G. | | | 40.00 | 0.00 | 24.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |
| DEC - 2018 | | CARCH*CHRISTIAN | | | 52.50 | 0.00 | 44.50 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| DEC - 2018 | | GAVILANEZ*JOSE | | | 8.00 | 0.00 | 0.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| DEC - 2018 | | SINGH*MANJINDER | | | 105.50 | 0.00 | 81.50 | 24.00 | 31.04 | 744.96 | 53.04 | 798.00 |
| DEC - 2018 | | SINGH*VIRENDER | | | 81.50 | 0.00 | 57.50 | 24.00 | 31.04 | 744.96 | 53.04 | 798.00 |
| Total For | DEC - 2018 | | | | 335.50 | 0.00 | 215.50 | 120.00 | | 3,724.80 | 265.20 | 3,990.00 |
| JAN - 2019 | | GAVILANEZ*JOSE | | | 36.00 | 0.00 | 32.00 | 4.00 | 31.04 | 124.16 | 8.84 | 133.00 |
| JAN - 2019 | | MISLIU*ERVIN | | | 32.00 | 0.00 | 28.00 | 4.00 | 31.04 | 124.16 | 8.84 | 133.00 |
| Total For | JAN - 2019 | | | | 68.00 | 0.00 | 60.00 | 8.00 | | 248.32 | 17.68 | 266.00 |
| FEB - 2019 | | QUITO, ANGEL | | | 0.00 | 2.00 | 0.00 | 2.00 | 31.04 | 62.08 | 4.42 | 66.50 |
| FEB - 2019 | | SINGH*MANJINDER | | | 67.00 | 0.00 | 60.00 | 7.00 | 31.04 | 217.28 | 15.47 | 232.75 |
| Total For | FEB - 2019 | | | | 67.00 | 2.00 | 60.00 | 9.00 | | 279.36 | 19.89 | 299.25 |

11/4/2021

# Hilt Construction, Inc.
## Audit Period From 03/26/2018 To 12/29/2019

| Month Ending | SSN | Name | Year | Group Number | Audited Hours | Revised Audit Adjustment | Reported Hours | Difference | Fringe Rate | Fringes Due | Dues & PAC Amt | Total Amt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MAR - 2019 | | SIMS*SAVON | | | 12.00 | 0.00 | 11.50 | 0.50 | 31.04 | 15.52 | 1.11 | 16.63 |
| MAR - 2019 | | SINGH*JASWANT | | | 39.00 | 0.00 | 23.50 | 15.50 | 31.04 | 481.12 | 34.26 | 515.38 |
| **Total For** | **MAR - 2019** | | | | **51.00** | **0.00** | **35.00** | **16.00** | | **496.64** | **35.37** | **532.01** |
| APR - 2019 | | AHMED*SHABBIR | | | 77.00 | 0.00 | 0.00 | 77.00 | 31.04 | 2,390.08 | 170.17 | 2,560.25 |
| APR - 2019 | | CABRERA*LUIS G. | | | 88.00 | 0.00 | 0.00 | 88.00 | 31.04 | 2,731.52 | 194.48 | 2,926.00 |
| APR - 2019 | | ARCHI*CHRISTIAN | | | 89.50 | 0.00 | 0.00 | 89.50 | 31.04 | 2,778.08 | 197.80 | 2,975.88 |
| APR - 2019 | | HOUDHARY*IMRAN | | | 0.00 | 23.00 | 0.00 | 23.00 | 31.04 | 713.92 | 50.83 | 764.75 |
| APR - 2019 | | MISLU*ERVIN | | | 47.00 | 0.00 | 0.00 | 47.00 | 31.04 | 1,458.88 | 103.87 | 1,562.75 |
| APR - 2019 | | ORTEGA*WELLINGTON A | | | 0.00 | 30.50 | 0.00 | 30.50 | 31.04 | 946.72 | 67.41 | 1,014.13 |
| APR - 2019 | | SINGH*BACHTTAR | | | 16.00 | 0.00 | 0.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |
| APR - 2019 | | SINGH*DHARAM | | | 96.00 | 0.00 | 0.00 | 96.00 | 31.04 | 2,979.84 | 212.16 | 3,192.00 |
| APR - 2019 | | SINGH*HARBHAJAN | | | 96.00 | 0.00 | 0.00 | 96.00 | 31.04 | 2,979.84 | 212.16 | 3,192.00 |
| APR - 2019 | | SINGH*JASWANT | | | 72.50 | 0.00 | 0.00 | 72.50 | 31.04 | 2,250.40 | 160.23 | 2,410.63 |
| APR - 2019 | | SINGH*MANJINDER | | | 48.00 | 0.00 | 0.00 | 48.00 | 31.04 | 1,489.92 | 106.08 | 1,596.00 |
| APR - 2019 | | SINGH*VIRENDER | | | 48.00 | 0.00 | 0.00 | 48.00 | 31.04 | 1,489.92 | 106.08 | 1,596.00 |
| APR - 2019 | | SWANSTON*NAEEMAH | | | 96.00 | 0.00 | 0.00 | 96.00 | 31.04 | 2,979.84 | 212.16 | 3,192.00 |
| **Total For** | **APR - 2019** | | | | **774.00** | **53.50** | **0.00** | **827.50** | | **25,685.60** | **1,828.79** | **27,514.39** |
| MAY - 2019 | | CHOUDHARY*IMRAN | | | 0.00 | 49.00 | 49.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| MAY - 2019 | | CLARK*MICHAEL | | | 15.00 | -15.00 | 0.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| MAY - 2019 | | FORD*KEITH | | | 0.00 | 24.00 | 24.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| MAY - 2019 | | ORTEGA*WELLINGTON A | | | 0.00 | 49.00 | 49.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| MAY - 2019 | | SMILEY*KEVIN | | | 0.00 | 5.50 | 5.50 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| MAY - 2019 | | ZERILLI*FELICIA | | | 0.00 | 114.00 | 114.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| **Total For** | **MAY - 2019** | | | | **15.00** | **226.50** | **241.50** | **0.00** | | **0.00** | **0.00** | **0.00** |
| JUNE - 2019 | | CHOUDHARY*IMRAN | | | 0.00 | 84.00 | 84.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JUNE - 2019 | | JACKSON*JEFFREY | | | 115.50 | -8.00 | 107.50 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JUNE - 2019 | | MILLS*ROBERT | | | 0.00 | 20.00 | 20.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JUNE - 2019 | | SAM, WASEEM | | | 0.00 | 8.00 | 0.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| JUNE - 2019 | | WALKER*ROBERT | | | 0.00 | 16.00 | 16.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JUNE - 2019 | | ZERILLI*FELICIA | | | 0.00 | 127.00 | 127.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |

1/14/2021

# Hilt Construction, Inc.
## Audit Period From 03/26/2018 To 12/29/2019

| Month Ending | SSN | Name | Year | Group Number | Audited Hours | Revised Audit Adjustment | Reported Hours | Difference | Fringe Rate | Fringes Due | Dues & PAC Amt | Total Amt Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total For | | JUNE - 2019 | | | 115.50 | 247.00 | 354.50 | 8.00 | | 248.32 | 17.68 | 266.00 |
| JULY - 2019 | | OUDHARY*IMRAN | | | 0.00 | 16.00 | 16.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JULY - 2019 | | CUMMINS*SEAN | | | 0.00 | 16.00 | 16.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JULY - 2019 | | JACKSON*JEFFREY | | | 104.00 | -32.00 | 72.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JULY - 2019 | | RACHEL*DEXTER | | | 0.00 | 8.00 | 8.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JULY - 2019 | | REID*ANTHONY | | | 0.00 | 16.00 | 16.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JULY - 2019 | | WILSON*DARREN | | | 0.00 | 8.00 | 8.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| JULY - 2019 | | ZERILLI*FELICIA | | | 0.00 | 16.00 | 16.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| Total For | | JULY - 2019 | | | 104.00 | 48.00 | 152.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| AUG - 2019 | | DELEE*THOMAS | | | 0.00 | 16.00 | 16.00 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| AUG - 2019 | | JACKSON*JEFFREY | | | 117.50 | 24.00 | 141.50 | 0.00 | 31.04 | 0.00 | 0.00 | 0.00 |
| Total For | | AUG - 2019 | | | 117.50 | 40.00 | 157.50 | 0.00 | | 0.00 | 0.00 | 0.00 |
| SEPT - 2019 | | BERMEO*EDWIN | | | 8.00 | 0.00 | 6.00 | 2.00 | 31.04 | 62.08 | 4.42 | 66.50 |
| SEPT - 2019 | | CARTER*JAMES E | | | 8.00 | 0.00 | 6.00 | 2.00 | 31.04 | 62.08 | 4.42 | 66.50 |
| SEPT - 2019 | | COOKS*LEON | | | 8.00 | 0.00 | 6.00 | 2.00 | 31.04 | 62.08 | 4.42 | 66.50 |
| SEPT - 2019 | | FORTUNATO*RAD*JAMES | | | 8.00 | 0.00 | 6.00 | 2.00 | 31.04 | 62.08 | 4.42 | 66.50 |
| SEPT - 2019 | | JACKSON*JEFFREY | | | 36.00 | 16.00 | 24.00 | 28.00 | 31.04 | 869.12 | 61.88 | 931.00 |
| SEPT - 2019 | | MARTINEZ_ISRAEL | | | 0.00 | 8.00 | 0.00 | 8.00 | 31.04 | 248.32 | 17.68 | 266.00 |
| SEPT - 2019 | | SWANSTON*NAEEMAH | | | 8.00 | 0.00 | 6.00 | 2.00 | 31.04 | 62.08 | 4.42 | 66.50 |
| SEPT - 2019 | | WILSON*SHANE | | | 36.00 | 0.00 | 20.00 | 16.00 | 31.04 | 496.64 | 35.36 | 532.00 |
| Total For | | SEPT - 2019 | | | 112.00 | 24.00 | 74.00 | 62.00 | | 1,924.48 | 137.02 | 2,061.50 |
| Total For Group Number | | 700 | Employer Number | 16318 | 3,495.50 | 800.50 | 2,313.00 | 1,984.00 | | 61,583.36 | 4,384.69 | 65,968.05 |
| | | Less On Account Money Adjustment | | | | | | | | -891.83 | 0.00 | -891.83 |
| | | Grand Totals ===> | | | 3,749.00 | 862.00 | 2,549.50 | 2,061.50 | | 62,233.83 | 4,538.92 | 66,772.75 |

# MASON TENDERS' DISTRICT COUNCIL TRUST FUNDS
## AUDIT HOURS MONTHLY REPORT

Hilt Construction, Inc.
Audit Period From 03/26/2018 To 12/29/2019
Employer Number : 16314    Group Number : 76

| Employer Group # | Month | SSN | NAME | PR | Other | Out of Juris | Val Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16314 | 76 | | PEEP,DAMON | 135.00 | 0.00 | 0.00 | 0.00 | 135.00 | 135.00 | 0.00 | 0.00 | 0.00 |
| | SEPT - 2018 | | Totals for month | 135.00 | 0.00 | 0.00 | 0.00 | 135.00 | 135.00 | 0.00 | 0.00 | 0.00 |
| 16314 | 76 | | ROHER,DAMON | 111.50 | 0.00 | 0.00 | 0.00 | 111.50 | 111.50 | 0.00 | 0.00 | 0.00 |
| | OCT - 2018 | | Totals for month | 111.50 | 0.00 | 0.00 | 0.00 | 111.50 | 111.50 | 0.00 | 0.00 | 0.00 |
| 16314 | 76 | | ARROYO,ISMAEL | 26.00 | 0.00 | 0.00 | 0.00 | 26.00 | 16.00 | 10.00 | 0.00 | 10.00 |
| | MAR - 2019 | | Totals for month | 26.00 | 0.00 | 0.00 | 0.00 | 26.00 | 16.00 | 10.00 | 0.00 | 10.00 |
| 16314 | 76 | | CLARK,MICHAEL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | -15.00 | 15.00 | 0.00 |
| | MAY - 2019 | | Totals for month | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | -15.00 | 15.00 | 0.00 |
| 16314 | 76 | | HENRY,VASHEEM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 38.50 | -38.50 | 38.50 | 0.00 |
| 16314 | 76 | | MACK,BRYANT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24.00 | -24.00 | 24.00 | 0.00 |
| | JUNE - 2019 | | Totals for month | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 62.50 | -62.50 | 62.50 | 0.00 |
| 16314 | 76 | | MACK,BRYANT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | -8.00 | 8.00 | 0.00 |
| | JULY - 2019 | | Totals for month | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | -8.00 | 8.00 | 0.00 |
| | | | Total for group # 76 | 272.50 | 0.00 | 0.00 | 0.00 | 272.50 | 348.00 | -75.50 | 85.50 | 10.00 |
| 16319 | 195 | APR - 2018 | ACOSTA,ROMMEL | 86.00 | 0.00 | 0.00 | 0.00 | 86.00 | 86.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | AHMED,SHABIR | 32.00 | 0.00 | 0.00 | 0.00 | 32.00 | 32.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | BAIG,MIRZA | 158.00 | 0.00 | 0.00 | 0.00 | 158.00 | 158.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | BECKLES,EUGENE | 93.00 | 0.00 | 0.00 | 0.00 | 93.00 | 93.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | BEG,WAIS | 158.00 | 0.00 | 0.00 | 0.00 | 158.00 | 158.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | CABRERA,LUIS G. | 118.00 | 0.00 | 0.00 | 0.00 | 118.00 | 118.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | INGUANZO,ROBERTO | 102.00 | 0.00 | 0.00 | 0.00 | 102.00 | 102.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | MISIU,ERVIN | 18.00 | 0.00 | 0.00 | 0.00 | 18.00 | 18.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | MONTOUTE,ALICK | 118.00 | 0.00 | 0.00 | 0.00 | 118.00 | 118.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | SIGUENCIA,FRANKLIN | 158.00 | 0.00 | 0.00 | 0.00 | 158.00 | 158.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | SIGUENCIA,LUIS | 126.00 | 0.00 | 0.00 | 0.00 | 126.00 | 126.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | SIMAS,OTIS | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 |

**Hllt Construction, Inc.**
Audit Period From 03/26/2018 To 12/29/2019
Employer Number : 16319    Group Number : 195

| Employer # | Group | Month | SSN | NAME | PR | Other | Out of Juris | Vol Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16319 | 195 | APR - 2018 | [redacted] | SINGH PREM P. | 48.00 | 0.00 | 0.00 | 0.00 | 48.00 | 48.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | [redacted] | SINGH BHUPINDER | 150.00 | 0.00 | 0.00 | 0.00 | 150.00 | 150.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | [redacted] | SOTAMBA ROMERO JHON S. | 150.00 | 0.00 | 0.00 | 0.00 | 150.00 | 150.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | [redacted] | TIMBERLAKE EDWARD | 112.00 | 0.00 | 0.00 | 0.00 | 112.00 | 112.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | [redacted] | TSOGE PAMICHA | 118.00 | 0.00 | 0.00 | 0.00 | 118.00 | 118.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | APR - 2018 | [redacted] | WANGDUE LOBSANG | 118.00 | 0.00 | 0.00 | 0.00 | 118.00 | 118.00 | 0.00 | 0.00 | 0.00 |
| | | | | **Totals for month APR - 2018** | 1,903.00 | 0.00 | 0.00 | 0.00 | 1,903.00 | 1,903.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | ACOSTA ROMMEL | 84.00 | 0.00 | 0.00 | 0.00 | 84.00 | 84.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | BAIG MIRZA | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 100.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | BEG AWAIS | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 100.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | CABRERA LUIS G. | 98.00 | 0.00 | 0.00 | 0.00 | 98.00 | 98.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | ELLIOT BRUCE | 72.00 | 0.00 | 0.00 | 0.00 | 72.00 | 72.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | INGUNZA ROBERTO | 47.00 | 0.00 | 0.00 | 0.00 | 47.00 | 47.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | MISLIU YERIM | 81.00 | 0.00 | 0.00 | 0.00 | 81.00 | 81.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | MONTOUTE ALICK | 114.00 | 0.00 | 0.00 | 0.00 | 114.00 | 114.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | SGUENCIA FRANKLIN | 114.00 | 0.00 | 0.00 | 0.00 | 114.00 | 114.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | SIGUENCIA LUIS | 4.00 | 0.00 | 0.00 | 0.00 | 4.00 | 4.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | SINGH BHUPINDER | 114.00 | 0.00 | 0.00 | 0.00 | 114.00 | 114.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | SOTAMBA ROMERO JHON S. | 116.00 | 0.00 | 0.00 | 0.00 | 116.00 | 116.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | TIMBERLAKE EDWARD | 54.00 | 0.00 | 0.00 | 0.00 | 54.00 | 54.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | TSOGE PAMICHA | 4.00 | 0.00 | 0.00 | 0.00 | 4.00 | 4.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | MAY - 2018 | [redacted] | WANGDUE LOBSANG | 114.00 | 0.00 | 0.00 | 0.00 | 114.00 | 114.00 | 0.00 | 0.00 | 0.00 |
| | | | | **Totals for month MAY - 2018** | 1,216.00 | 0.00 | 0.00 | 0.00 | 1,216.00 | 1,216.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | AHMED SHABIR | 38.00 | 0.00 | 0.00 | 0.00 | 38.00 | 38.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | BAIG MIRZA | 103.00 | 0.00 | 0.00 | 0.00 | 103.00 | 103.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | BEG AWAIS | 20.50 | 0.00 | 0.00 | 0.00 | 20.50 | 20.50 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | CABRERA LUIS G. | 110.00 | 0.00 | 0.00 | 0.00 | 110.00 | 110.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | EDWARDS ROBERT | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | ELLIOT BRUCE | 101.00 | 0.00 | 0.00 | 0.00 | 101.00 | 101.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | MISLIU YERIM | 76.00 | 0.00 | 0.00 | 0.00 | 76.00 | 76.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | MONTOUTE ALICK | 93.00 | 0.00 | 0.00 | 0.00 | 101.00 | 101.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | SINGH BHUPINDER | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | SOTAMBA ROMERO JHON S. | 110.00 | 0.00 | 0.00 | 0.00 | 110.00 | 110.00 | 0.00 | 0.00 | 0.00 |
| 16319 | 195 | JUNE - 2018 | [redacted] | WANGDUE LOBSANG | 111.00 | 0.00 | 0.00 | 0.00 | 111.00 | 111.00 | 0.00 | 0.00 | 0.00 |
| | | | | **Totals for month JUNE - 2018** | 810.50 | 0.00 | 0.00 | 8.00 | 818.50 | 818.50 | 0.00 | 0.00 | 0.00 |

**Hilt Construction, Inc.**
Audit Period From 03/26/2018 To 12/29/2019
Employer Number : 16319   Group Number : 195

| Employer # | Group # | Month | SSN | NAME | PR | Other | Out of Juris | Val Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Totals for group #   195 | 3,928.50 | 0.00 | 0.00 | | 3,937.50 | 3,937.50 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | APR - 2018 | | ARCHER DAMON | 126.00 | 0.00 | 0.00 | 0.00 | 126.00 | 126.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | APR - 2018 | | LOUIS STANLEY | 126.00 | 0.00 | 0.00 | 0.00 | 126.00 | 126.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | APR - 2018 | | WASHINGTON JUSTIN | 79.00 | 0.00 | 0.00 | 8.00 | 79.00 | 79.00 | 0.00 | 0.00 | 0.00 |
| | | | | APR - 2018 month | 331.00 | 0.00 | 0.00 | 0.00 | 331.00 | 331.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | MAY - 2018 | | ARCHER DAMON | 116.00 | 0.00 | 0.00 | 0.00 | 116.00 | 116.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | MAY - 2018 | | EDWARDS ERNESTO | 102.00 | 0.00 | 0.00 | 0.00 | 102.00 | 102.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | MAY - 2018 | | HENRY NAISHA | 57.00 | 0.00 | 0.00 | 0.00 | 57.00 | 57.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | MAY - 2018 | | LOUIS STANLEY | 70.00 | 0.00 | 0.00 | 0.00 | 70.00 | 70.00 | 0.00 | 0.00 | 0.00 |
| | | | | MAY - 2018 month | 345.00 | 0.00 | 0.00 | 0.00 | 345.00 | 345.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | JUNE - 2018 | | ARCHER DAMON | 109.00 | 0.00 | 0.00 | 0.00 | 109.00 | 109.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | JUNE - 2018 | | EDWARDS ERNESTO | 109.00 | 0.00 | 0.00 | 0.00 | 109.00 | 109.00 | 0.00 | 0.00 | 0.00 |
| | | | | JUNE - 2018 month | 218.00 | 0.00 | 0.00 | 0.00 | 218.00 | 218.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | JULY - 2018 | | ARCHER DAMON | 126.00 | 0.00 | 0.00 | 0.00 | 126.00 | 126.00 | 0.00 | 0.00 | 0.00 |
| | | | | JULY - 2018 month | 126.00 | 0.00 | 0.00 | 0.00 | 126.00 | 126.00 | 0.00 | 0.00 | 0.00 |
| 16317 | 295 | AUG - 2018 | | ARCHER DAMON | 139.50 | 0.00 | 0.00 | 0.00 | 139.50 | 139.50 | 0.00 | 0.00 | 0.00 |
| | | | | AUG - 2018 month | 139.50 | 0.00 | 0.00 | 0.00 | 139.50 | 139.50 | 0.00 | 0.00 | 0.00 |
| | | | | Group #   295 | 1,159.50 | 0.00 | 0.00 | 0.00 | 1,159.50 | 1,159.50 | 0.00 | 0.00 | 0.00 |
| 16316 | 397 | JULY - 2018 | | EDWARDS ERNESTO | 144.00 | 0.00 | 0.00 | 0.00 | 144.00 | 144.00 | 0.00 | 0.00 | 0.00 |
| | | | | JULY - 2018 month | 144.00 | 0.00 | 0.00 | 0.00 | 144.00 | 144.00 | 0.00 | 0.00 | 0.00 |
| 16316 | 397 | AUG - 2018 | | EDWARDS ERNESTO | 74.00 | 0.00 | 0.00 | 0.00 | 74.00 | 74.00 | 0.00 | 0.00 | 0.00 |
| | | | | AUG - 2018 month | 74.00 | 0.00 | 0.00 | 0.00 | 74.00 | 74.00 | 0.00 | 0.00 | 0.00 |
| | | | | Group #   397 | 218.00 | 0.00 | 0.00 | 0.00 | 218.00 | 218.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2018 | | TIMBERLAKE EDWARD | 2.00 | 0.00 | 0.00 | 0.00 | 2.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| | | | | MAY - 2018 month | 2.00 | 0.00 | 0.00 | 0.00 | 2.00 | 2.00 | 0.00 | 0.00 | 0.00 |

# Hitt Construction, Inc.
## Audit Period From 03/26/2018 To 12/29/2019
### Employer Number : 16318    Group Number : 700

| Employer # | Group | Month | NAME | PR | Other | Out of Juris | Vol Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16318 | 700 | JULY - 2018 | AHMED*SHABIR | 90.00 | 0.00 | 0.00 | 0.00 | 90.00 | 90.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | BAIG*MIRZA | 136.00 | 0.00 | 0.00 | 0.00 | 136.00 | 136.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | BEG*AWAIS | 48.00 | 0.00 | 0.00 | 0.00 | 48.00 | 48.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | CABRERA*LUIS G. | 140.00 | 0.00 | 0.00 | 0.00 | 140.00 | 140.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | DOMY*KENNY J | 9.00 | 0.00 | 0.00 | 0.00 | 9.00 | 9.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | ELLIOTT*BRUCE | 123.00 | 0.00 | 0.00 | 0.00 | 123.00 | 123.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | GAFFORD*EDWARD | 31.00 | 0.00 | 0.00 | 0.00 | 31.00 | 31.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | JONES*KEITH | 72.00 | 0.00 | 0.00 | 0.00 | 72.00 | 72.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | MISLIJ*KEVIN | 46.00 | 0.00 | 0.00 | 0.00 | 46.00 | 8.00 | 38.00 | 0.00 | 38.00 |
| 16318 | 700 | JULY - 2018 | RIVERA*LAURO | 110.00 | 0.00 | 0.00 | 0.00 | 110.00 | 110.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2018 | SOTAMBA ROMERO*JHON S. | 144.00 | 0.00 | 0.00 | 0.00 | 144.00 | 143.00 | 1.00 | 0.00 | 1.00 |
| 16318 | 700 | JULY - 2018 | VANGOUEY*LOBSANG | 136.00 | 0.00 | 0.00 | 0.00 | 136.00 | 136.00 | 0.00 | 0.00 | 0.00 |
| | | Totals for month | JULY - 2018 | 1,085.00 | 0.00 | 0.00 | 0.00 | 1,085.00 | 1,046.00 | 39.00 | 0.00 | 39.00 |
| 16318 | 700 | AUG - 2018 | AHMED*SHABIR | 10.00 | 0.00 | 0.00 | 0.00 | 10.00 | 0.00 | 10.00 | 0.00 | 10.00 |
| 16318 | 700 | AUG - 2018 | ALLEN*DARNELL | 24.00 | 0.00 | 0.00 | 0.00 | 24.00 | 24.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | BAIG*MIRZA | 111.00 | 0.00 | 0.00 | 0.00 | 111.00 | 111.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | BEG*AWAIS | 45.00 | 0.00 | 0.00 | 0.00 | 45.00 | 45.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | CABRERA*LUIS G. | 103.00 | 0.00 | 0.00 | 0.00 | 103.00 | 95.00 | 8.00 | 0.00 | 8.00 |
| 16318 | 700 | AUG - 2018 | CARC*CHRISTIAN | 45.00 | 0.00 | 0.00 | 0.00 | 45.00 | 45.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | CLEMENT*PIERRE | 2.00 | 0.00 | 0.00 | 0.00 | 2.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | ELLIOTT*BRUCE | 112.00 | 0.00 | 0.00 | 0.00 | 112.00 | 104.00 | 8.00 | 0.00 | 8.00 |
| 16318 | 700 | AUG - 2018 | GAFFORD*EDWARD | 42.50 | 0.00 | 0.00 | 0.00 | 42.50 | 42.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | GEORGE*SHERMAN | 45.00 | 0.00 | 0.00 | 0.00 | 45.00 | 45.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | MISLIJ*KEVIN | 83.00 | 0.00 | 0.00 | 0.00 | 83.00 | 47.00 | 36.00 | 0.00 | 36.00 |
| 16318 | 700 | AUG - 2018 | MUNIVE PALLO*JOSE | 2.00 | 0.00 | 0.00 | 0.00 | 2.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | RIVERA*LAURO | 23.00 | 0.00 | 0.00 | 0.00 | 23.00 | 23.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | ROMANO*ANTHONY | 46.00 | 0.00 | 0.00 | 0.00 | 46.00 | 46.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | SINGH*HARBHAJAN | 30.00 | 0.00 | 0.00 | 0.00 | 30.00 | 30.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2018 | SOTAMBA ROMERO*JHON S. | 146.00 | 0.00 | 0.00 | 0.00 | 146.00 | 138.00 | 8.00 | 0.00 | 8.00 |
| 16318 | 700 | AUG - 2018 | VANGOUEY*LOBSANG | 137.00 | 0.00 | 0.00 | 0.00 | 137.00 | 127.00 | 10.00 | 0.00 | 10.00 |
| | | Totals for month | AUG - 2018 | 1,006.50 | 0.00 | 0.00 | 0.00 | 1,006.50 | 926.50 | 80.00 | 0.00 | 80.00 |
| 16318 | 700 | SEPT - 2018 | AHMED*SHABIR | 4.00 | 0.00 | 0.00 | 0.00 | 4.00 | 4.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | ALLEN*DARNELL | 98.50 | 0.00 | 0.00 | 0.00 | 98.50 | 98.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | BAIG*MIRZA | 65.00 | 0.00 | 0.00 | 0.00 | 65.00 | 65.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | BEG*AWAIS | 107.00 | 0.00 | 0.00 | 0.00 | 107.00 | 0.00 | 107.00 | 0.00 | 107.00 |
| 16318 | 700 | SEPT - 2018 | CABRERA*LUIS G. | 133.00 | 0.00 | 0.00 | 0.00 | 133.00 | 133.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | CARC*CHRISTIAN | 126.00 | 0.00 | 0.00 | 0.00 | 126.00 | 126.00 | 0.00 | 0.00 | 0.00 |

| Employer # | Group | Month | SSN | NAME | PR | Other | Out of Juris | Vol Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16318 | 700 | SEPT - 2018 | | JOHKENNY J | 9.00 | 0.00 | 0.00 | 0.00 | 9.00 | 0.00 | 9.00 | 0.00 | 9.00 |
| 16318 | 700 | SEPT - 2018 | | ELLIOTBRUCE | 102.00 | 0.00 | 0.00 | 0.00 | 102.00 | 102.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | | GAFFORIO'EDWARD | 90.00 | 0.00 | 0.00 | 0.00 | 90.00 | 90.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | | GEORGE'SHERMAN | 57.00 | 0.00 | 0.00 | 0.00 | 57.00 | 57.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | | JOSEPH'ROBERT | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | | MISUJUTERVIN | 32.00 | 0.00 | 0.00 | 0.00 | 32.00 | 16.00 | 16.00 | 0.00 | 16.00 |
| 16318 | 700 | SEPT - 2018 | | ROMANO'ANTHONY | 2.00 | 0.00 | 0.00 | 0.00 | 2.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | | SINGH'HARBHAJAN | 140.00 | 0.00 | 0.00 | 0.00 | 140.00 | 140.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | | SOTAMBA ROMERO'JHON S. | 16.00 | 0.00 | 0.00 | 0.00 | 16.00 | 16.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | SEPT - 2018 | | YANGDUE'LOBSANG | 120.00 | 0.00 | 0.00 | 0.00 | 120.00 | 120.00 | 0.00 | 0.00 | 0.00 |
| | | Totals for month | | SEPT - 2018 | 1,141.50 | 0.00 | 0.00 | 0.00 | 1,141.50 | 999.50 | 142.00 | 0.00 | 142.00 |
| 16318 | 700 | OCT - 2018 | | AHMED'SHABBIR | 118.50 | 0.00 | 0.00 | 0.00 | 118.50 | 118.00 | 0.50 | 0.00 | 0.50 |
| 16318 | 700 | OCT - 2018 | | BAG'MIRZA | 142.50 | 0.00 | 0.00 | 0.00 | 142.50 | 142.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | OCT - 2018 | | BEG'AWAIS | 87.50 | 0.00 | 0.00 | 0.00 | 87.50 | 0.00 | 87.50 | 0.00 | 87.50 |
| 16318 | 700 | OCT - 2018 | | CABRERA'LUIS G. | 135.00 | 0.00 | 0.00 | 0.00 | 135.00 | 135.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | OCT - 2018 | | CARCH'CHRISTIAN | 122.50 | 0.00 | 0.00 | 0.00 | 122.50 | 122.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | OCT - 2018 | | ELLIOT'BRUCE | 46.50 | 0.00 | 0.00 | 0.00 | 46.50 | 46.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | OCT - 2018 | | JOINER, TERRY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 |
| 16318 | 700 | OCT - 2018 | | KERR, STEPTON | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 |
| 16318 | 700 | OCT - 2018 | | LEE, DONALD | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | 16.00 |
| 16318 | 700 | OCT - 2018 | | PELISSIER, PEDERSIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | 16.00 |
| 16318 | 700 | OCT - 2018 | | SINGH'BHUPINDER | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 |
| 16318 | 700 | OCT - 2018 | | SINGH'HARBHAJAN | 143.00 | 0.00 | 0.00 | 0.00 | 143.00 | 143.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | OCT - 2018 | | SINGH'MANJINDER | 43.00 | 0.00 | 0.00 | 0.00 | 43.00 | 0.00 | 43.00 | 0.00 | 43.00 |
| 16318 | 700 | OCT - 2018 | | SINGH'VIRENDER | 43.00 | 0.00 | 0.00 | 0.00 | 43.00 | 0.00 | 43.00 | 0.00 | 43.00 |
| 16318 | 700 | OCT - 2018 | | TERRY, JOSHUA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | 16.00 |
| 16318 | 700 | OCT - 2018 | | YANGDUE'LOBSANG | 151.00 | 0.00 | 0.00 | 0.00 | 151.00 | 151.00 | 0.00 | 0.00 | 16.00 |
| | | Totals for month | | OCT - 2018 | 1,032.50 | 0.00 | 0.00 | 0.00 | 1,032.50 | 858.50 | 174.00 | 72.00 | 246.00 |
| 16318 | 700 | NOV - 2018 | | AHMED'SHABBIR | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 0.00 | 40.00 | 0.00 | 40.00 |
| 16318 | 700 | NOV - 2018 | | BAG'MIRZA | 57.50 | 0.00 | 0.00 | 0.00 | 57.50 | 16.00 | 41.50 | 0.00 | 41.50 |
| 16318 | 700 | NOV - 2018 | | BEG'AWAIS | 99.00 | 0.00 | 0.00 | 0.00 | 99.00 | 32.00 | 67.00 | 0.00 | 67.00 |
| 16318 | 700 | NOV - 2018 | | CABRERA'LUIS G. | 64.00 | 0.00 | 0.00 | 0.00 | 64.00 | 16.00 | 48.00 | 0.00 | 48.00 |
| 16318 | 700 | NOV - 2018 | | CARCH'CHRISTIAN | 80.00 | 0.00 | 0.00 | 0.00 | 80.00 | 32.00 | 48.00 | 0.00 | 48.00 |
| 16318 | 700 | NOV - 2018 | | LEE, DONALD | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 0.00 | 16.00 | 16.00 |
| 16318 | 700 | NOV - 2018 | | NAJERA'TELBERTO | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | NOV - 2018 | | PELISSIER, PEDERSIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24.00 | 24.00 |
| 16318 | 700 | NOV - 2018 | | SINGH'HARBHAJAN | 32.00 | 0.00 | 0.00 | 0.00 | 32.00 | 0.00 | 32.00 | 0.00 | 32.00 |

# Hilt Construction, Inc.
Audit Period From 03/26/2018 To 12/29/2019
Employer Number : 16318   Group Number : 700

| Employer # | Group | Month | NAME | PR | Other | Out of Juris | Vol Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16318 | 700 | NOV - 2018 | SINGH^MANJINDER | 12.00 | 0.00 | 0.00 | 0.00 | 12.00 | 8.00 | 4.00 | 0.00 | 4.00 |
| 16318 | 700 | NOV - 2018 | SINGH^VIRENDER | 12.00 | 0.00 | 0.00 | 0.00 | 12.00 | 8.00 | 4.00 | 0.00 | 4.00 |
| 16318 | 700 | NOV - 2018 | TERRY, JOSHUA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 47.50 | 47.50 |
| 16318 | 700 | NOV - 2018 | MANONGUET, LOBSANG | 52.50 | 0.00 | 0.00 | 0.00 | 52.50 | 0.00 | 52.50 | 0.00 | 52.50 |
| | | NOV - 2018 | | 457.00 | 0.00 | 0.00 | 0.00 | 457.00 | 120.00 | 337.00 | 87.50 | 424.50 |
| 16318 | 700 | DEC - 2018 | AHMED^SHABIR | 32.00 | 0.00 | 0.00 | 0.00 | 32.00 | 0.00 | 32.00 | 0.00 | 32.00 |
| 16318 | 700 | DEC - 2018 | ALG^AWAIS | 16.00 | 0.00 | 0.00 | 0.00 | 16.00 | 8.00 | 8.00 | 0.00 | 8.00 |
| 16318 | 700 | DEC - 2018 | CABRERA^LUIS G. | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 24.00 | 16.00 | 0.00 | 16.00 |
| 16318 | 700 | DEC - 2018 | CARCHI^CHRISTIAN | 52.50 | 0.00 | 0.00 | 0.00 | 52.50 | 44.50 | 8.00 | 0.00 | 8.00 |
| 16318 | 700 | DEC - 2018 | GAVILANEZ^JOSE | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 8.00 | 0.00 | 8.00 |
| 16318 | 700 | DEC - 2018 | SINGH^MANJINDER | 105.50 | 0.00 | 0.00 | 0.00 | 105.50 | 81.50 | 24.00 | 0.00 | 24.00 |
| 16318 | 700 | DEC - 2018 | SINGH^VIRENDER | 81.50 | 0.00 | 0.00 | 0.00 | 81.50 | 57.50 | 24.00 | 0.00 | 24.00 |
| | | DEC - 2018 | | 335.50 | 0.00 | 0.00 | 0.00 | 335.50 | 215.50 | 120.00 | 0.00 | 120.00 |
| 16318 | 700 | JAN - 2019 | AHMED^SHABIR | 48.00 | 0.00 | 0.00 | 0.00 | 48.00 | 48.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JAN - 2019 | CABRERA^LUIS G. | 36.00 | 0.00 | 0.00 | 0.00 | 36.00 | 36.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JAN - 2019 | CARCHI^CHRISTIAN | 69.00 | 0.00 | 0.00 | 0.00 | 69.00 | 69.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JAN - 2019 | GAVILANEZ^JOSE | 36.00 | 0.00 | 0.00 | 0.00 | 36.00 | 32.00 | 4.00 | 0.00 | 4.00 |
| 16318 | 700 | JAN - 2019 | MUSU^DEVIN | 32.00 | 0.00 | 0.00 | 0.00 | 32.00 | 28.00 | 4.00 | 0.00 | 4.00 |
| 16318 | 700 | JAN - 2019 | SINGH^MANJINDER | 78.00 | 0.00 | 0.00 | 0.00 | 78.00 | 78.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JAN - 2019 | SINGH^VIRENDER | 78.00 | 0.00 | 0.00 | 0.00 | 78.00 | 78.00 | 0.00 | 0.00 | 0.00 |
| | | JAN - 2019 | | 377.00 | 0.00 | 0.00 | 0.00 | 377.00 | 369.00 | 8.00 | 0.00 | 8.00 |
| 16318 | 700 | FEB - 2019 | CARCHI^CHRISTIAN | 63.00 | 0.00 | 0.00 | 5.00 | 68.00 | 68.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | FEB - 2019 | MUSU^DEVIN | 15.00 | 0.00 | 0.00 | 0.00 | 15.00 | 15.00 | 0.00 | 2.00 | 2.00 |
| 16318 | 700 | FEB - 2019 | QUITO, ANGEL | 15.00 | 0.00 | 0.00 | 0.00 | 15.00 | 15.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | FEB - 2019 | SINGH^HARBHAJAN | 67.00 | 0.00 | 0.00 | 0.00 | 67.00 | 60.00 | 7.00 | 0.00 | 7.00 |
| 16318 | 700 | FEB - 2019 | SINGH^MANJINDER | 51.00 | 0.00 | 0.00 | 0.00 | 51.00 | 51.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | FEB - 2019 | SINGH^VIRENDER | 60.00 | 0.00 | 0.00 | 0.00 | 60.00 | 60.00 | 0.00 | 0.00 | 0.00 |
| | | FEB - 2019 | | 271.00 | 0.00 | 0.00 | 5.00 | 276.00 | 269.00 | 7.00 | 2.00 | 9.00 |
| 16318 | 700 | MAR - 2019 | AHMED^SHABIR | 26.00 | 0.00 | 0.00 | 0.00 | 26.00 | 26.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | CABRERA^LUIS G. | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | CABRERA^LUIS G. | 32.00 | 0.00 | 0.00 | 0.00 | 32.00 | 32.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | CARCHI^CHRISTIAN | 77.00 | 0.00 | 0.00 | 0.00 | 77.00 | 77.00 | 0.00 | 0.00 | 0.00 |

**Hilt Construction, Inc.**
Audit Period From 03/28/2018 To 12/29/2019
Employer Number : 16318   Group Number : 700

| Employer Group # | Month | SSN | NAME | PR | Other | Out of Juris | Vol Rona | Hours Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16318 | 700 | MAR - 2019 | | EDWARDS*ROBERT | 24.00 | 0.00 | 0.00 | 0.00 | 24.00 | 24.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | LOUBRIEL*CHRIS | 26.00 | 0.00 | 0.00 | 0.00 | 26.00 | 26.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | MISUL*EVAN | 56.00 | 0.00 | 0.00 | 0.00 | 56.00 | 56.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | MITCHELL*SHAWN | 24.00 | 0.00 | 0.00 | 0.50 | 24.50 | 24.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | SIMS*SAVON | 12.00 | 0.00 | 0.00 | 0.50 | 12.00 | 11.50 | 0.50 | 0.50 | 0.50 |
| 16318 | 700 | MAR - 2019 | | SINGH*BACHITTAR | 7.00 | 0.00 | 0.00 | 0.00 | 7.00 | 7.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | SINGH*DHARAM | 16.00 | 0.00 | 0.00 | 0.00 | 16.00 | 16.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | SINGH*HARBHAJAN | 89.00 | 0.00 | 0.00 | 0.00 | 89.00 | 89.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | SINGH*JASWANT | 39.00 | 0.00 | 0.00 | 0.00 | 39.00 | 23.50 | 15.50 | 0.00 | 15.50 |
| 16318 | 700 | MAR - 2019 | | SINGH*MANINNDER | 73.00 | 0.00 | 0.00 | 0.00 | 73.00 | 73.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | SINGH*VIRENDER | 89.00 | 0.00 | 0.00 | 0.00 | 89.00 | 89.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | SWANSTON*NAEEMAH | 42.00 | 0.00 | 0.00 | 0.00 | 42.00 | 42.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAR - 2019 | | WINGUNE*LOBSANG | 57.00 | 0.00 | 0.00 | 0.00 | 57.00 | 57.00 | 0.00 | 0.00 | 0.00 |
| | | | Totals for Month: MAR - 2019 | 697.00 | 0.00 | 0.00 | 0.50 | 697.50 | 681.50 | 16.00 | 0.00 | 16.00 |
| 16318 | 700 | APR - 2019 | | AHMED*SHABIR | 77.00 | 0.00 | 0.00 | 0.00 | 77.00 | 0.00 | 77.00 | 0.00 | 77.00 |
| 16318 | 700 | APR - 2019 | | CABRERA*LUIS G. | 88.00 | 0.00 | 0.00 | 0.00 | 88.00 | 0.00 | 88.00 | 0.00 | 88.00 |
| 16318 | 700 | APR - 2019 | | CARCH*CHRISTIAN | 89.50 | 0.00 | 0.00 | 0.00 | 89.50 | 0.00 | 89.50 | 0.00 | 89.50 |
| 16318 | 700 | APR - 2019 | | CHOUDHARY*IMRAN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23.00 | 23.00 |
| 16318 | 700 | APR - 2019 | | MISUL*EVAN | 47.00 | 0.00 | 0.00 | 0.00 | 47.00 | 0.00 | 47.00 | 0.00 | 47.00 |
| 16318 | 700 | APR - 2019 | | ORTEGA*WELLINGTON A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.50 | 30.50 |
| 16318 | 700 | APR - 2019 | | SINGH*BACHITTAR | 16.00 | 0.00 | 0.00 | 0.00 | 16.00 | 0.00 | 16.00 | 0.00 | 16.00 |
| 16318 | 700 | APR - 2019 | | SINGH*DHARAM | 96.00 | 0.00 | 0.00 | 0.00 | 96.00 | 0.00 | 96.00 | 0.00 | 96.00 |
| 16318 | 700 | APR - 2019 | | SINGH*HARBHAJAN | 96.00 | 0.00 | 0.00 | 0.00 | 96.00 | 0.00 | 96.00 | 0.00 | 96.00 |
| 16318 | 700 | APR - 2019 | | SINGH*JASWANT | 72.50 | 0.00 | 0.00 | 0.00 | 72.50 | 0.00 | 72.50 | 0.00 | 72.50 |
| 16318 | 700 | APR - 2019 | | SINGH*MANINNDER | 48.00 | 0.00 | 0.00 | 0.00 | 48.00 | 0.00 | 48.00 | 0.00 | 48.00 |
| 16318 | 700 | APR - 2019 | | SINGH*VIRENDER | 48.00 | 0.00 | 0.00 | 0.00 | 48.00 | 0.00 | 48.00 | 0.00 | 48.00 |
| 16318 | 700 | APR - 2019 | | SWANSTON*NAEEMAH | 96.00 | 0.00 | 0.00 | 0.00 | 96.00 | 0.00 | 96.00 | 0.00 | 96.00 |
| | | | Totals for Month: APR - 2019 | 774.00 | 0.00 | 0.00 | 0.00 | 774.00 | 0.00 | 774.00 | 53.50 | 827.50 |
| 16318 | 700 | MAY - 2019 | | AHMED*SHABIR | 29.50 | 0.00 | 0.00 | 0.00 | 29.50 | 29.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | BESMED*EWAN | 57.00 | 0.00 | 0.00 | 0.00 | 57.00 | 57.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | CABRERA*LUIS G. | 113.00 | 0.00 | 0.00 | 0.00 | 113.00 | 113.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | CHOUDHARY*IMRAN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49.00 | -49.00 | 49.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | CLARK*MICHAEL | 15.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0.00 | 15.00 | -15.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | COLON*ADAM D | 66.00 | 0.00 | 0.00 | 0.00 | 66.00 | 66.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | FORD*KEITH | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 24.00 | -24.00 | 24.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | FORTUNATO*RADHAMES | 71.50 | 0.00 | 0.00 | 0.00 | 71.50 | 71.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | JACKSON*JEFFREY | 30.50 | 0.00 | 0.00 | 0.00 | 30.50 | 30.50 | 0.00 | 0.00 | 0.00 |

| Employer # | Group | Month | SSN | NAME | Hours PR | Other | Out of Juris | Val Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16318 | 700 | MAY - 2019 | | MISILU*KEVIN | 4.00 | 0.00 | 0.00 | 0.00 | 4.00 | 4.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | ORTEGA*WELLINGTON A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49.00 | -49.00 | 49.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | SCOTT*MICHAEL | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | SINGH*DHARAM | 90.00 | 0.00 | 0.00 | 0.00 | 90.00 | 90.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | SINGH*HARBHAJAN | 105.50 | 0.00 | 0.00 | 0.00 | 105.50 | 105.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | SINGH*JASWANT | 101.00 | 0.00 | 0.00 | 0.00 | 101.00 | 101.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | SMILEY*KEVIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.50 | -5.50 | 5.50 | 0.00 |
| 16318 | 700 | MAY - 2019 | | SWANSTON*NAEEMAH | 97.00 | 0.00 | 0.00 | 0.00 | 97.00 | 97.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | MAY - 2019 | | ZERILLI*FELICIA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 114.00 | -114.00 | 114.00 | 0.00 |
| | | Totals for month | MAY - 2019 | | 788.00 | 0.00 | 0.00 | 0.00 | 788.00 | 1,014.50 | -226.50 | 226.50 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | BERMEO*EDWIN | 85.00 | 0.00 | 0.00 | 0.00 | 85.00 | 85.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | CABRERA*LUIS G. | 72.00 | 0.00 | 0.00 | 0.00 | 72.00 | 72.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | CHOUDHARY*IMRAN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 84.00 | -84.00 | 84.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | COLON*ADAM D | 83.50 | 0.00 | 0.00 | 0.00 | 83.50 | 83.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | FORTUNATO*PADHAMES | 145.50 | 0.00 | 0.00 | 0.00 | 145.50 | 145.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | IGBAL*QAISER | 40.00 | 0.00 | 0.00 | 0.00 | 40.00 | 40.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | JACKSON*JEFFREY | 115.50 | 0.00 | 0.00 | 0.00 | 115.50 | 107.50 | 8.00 | -8.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | MILLS*ROBERT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | -20.00 | 20.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | SAAL WASEEM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 |
| 16318 | 700 | JUNE - 2019 | | SINGH*DHARAM | 47.00 | 0.00 | 0.00 | 0.00 | 47.00 | 47.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | SINGH*HARBHAJAN | 55.00 | 0.00 | 0.00 | 0.00 | 55.00 | 55.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | SINGH*JASWANT | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | SWANSTON*NAEEMAH | 101.00 | 0.00 | 0.00 | 0.00 | 101.00 | 101.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | WALKER*ROBERT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | -16.00 | 16.00 | 0.00 |
| 16318 | 700 | JUNE - 2019 | | ZERILLI*FELICIA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 127.00 | -127.00 | 127.00 | 0.00 |
| | | Totals for month | JUNE - 2019 | | 752.50 | 0.00 | 0.00 | 0.00 | 752.50 | 991.50 | -239.00 | 247.00 | 8.00 |
| 16318 | 700 | JULY - 2019 | | BERMEO*EDWIN | 96.00 | 0.00 | 0.00 | 0.00 | 96.00 | 96.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | CABRERA*LUIS G. | 96.00 | 0.00 | 0.00 | 0.00 | 96.00 | 96.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | CARTER*JAMES E | 120.00 | 0.00 | 0.00 | 0.00 | 120.00 | 120.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | CHOUDHARY*IMRAN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | -16.00 | 16.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | COLON*ADAM D | 16.00 | 0.00 | 0.00 | 0.00 | 16.00 | 16.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | CUMMINS*SEAN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | -16.00 | 16.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | FORTUNATO*PADHAMES | 104.00 | 0.00 | 0.00 | 0.00 | 104.00 | 104.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | IGBAL*QAISER | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | JACKSON*JEFFREY | 104.00 | 0.00 | 0.00 | 0.00 | 104.00 | 72.00 | 32.00 | -32.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | RACHEL*DEXTER | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | -8.00 | 8.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | | REID*ANTHONY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | -16.00 | 16.00 | 0.00 |

## Hilt Construction, Inc.
### Audit Period From 03/26/2018 To 12/29/2019
Employer Number : 16318
Group Number : 700

| Employer # | Group # | Month | NAME | PR | Other | Out of Juris | Vol/Rein | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16318 | 700 | JULY - 2019 | SINGH*HARBHAJAN | 128.00 | 0.00 | 0.00 | 0.00 | 128.00 | 128.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | SWANSTON*NAEEMAH | 112.00 | 0.00 | 0.00 | 0.00 | 112.00 | 112.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | WILSON*DARREN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | -8.00 | 8.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | WILSON*SHANE | 120.00 | 0.00 | 0.00 | 0.00 | 120.00 | 120.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | JULY - 2019 | ZERILLI*FELICIA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | -16.00 | 16.00 | 0.00 |
| | | | Totals for month JULY - 2019 | 904.00 | 0.00 | 0.00 | 0.00 | 904.00 | 952.00 | -48.00 | 48.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | AHMED*SHABBIR | 56.00 | 0.00 | 0.00 | 0.00 | 56.00 | 56.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | BERMEO*EDWIN | 133.50 | 0.00 | 0.00 | 0.00 | 133.50 | 133.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | CABRERA*LUIS G. | 72.00 | 0.00 | 0.00 | 0.00 | 72.00 | 72.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | CARTER*JAMES E | 83.50 | 0.00 | 0.00 | 0.00 | 83.50 | 83.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | COOKS*LEON | 31.00 | 0.00 | 0.00 | 0.00 | 31.00 | 31.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | DELEE*THOMAS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | -16.00 | 16.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | FORTUNATO*RADHAMES | 117.50 | 0.00 | 0.00 | 0.00 | 117.50 | 117.50 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | JACKSON*JEFFREY | 117.50 | 0.00 | 0.00 | 0.00 | 117.50 | 141.50 | -24.00 | 24.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | SINGH*HARBHAJAN | 56.00 | 0.00 | 0.00 | 0.00 | 56.00 | 56.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | SWANSTON*NAEEMAH | 114.00 | 0.00 | 0.00 | 0.00 | 114.00 | 114.00 | 0.00 | 0.00 | 0.00 |
| 16318 | 700 | AUG - 2019 | WILSON*SHANE | 141.50 | 0.00 | 0.00 | 0.00 | 141.50 | 141.50 | 0.00 | 0.00 | 0.00 |
| | | | Totals for month AUG - 2019 | 922.50 | 0.00 | 0.00 | 0.00 | 922.50 | 962.50 | -40.00 | 40.00 | 0.00 |
| 16318 | 700 | SEPT - 2019 | BERMEO*EDWIN | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 6.00 | 2.00 | 0.00 | 2.00 |
| 16318 | 700 | SEPT - 2019 | CARTER*JAMES E | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 6.00 | 2.00 | 0.00 | 2.00 |
| 16318 | 700 | SEPT - 2019 | COOKS*LEON | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 6.00 | 2.00 | 0.00 | 2.00 |
| 16318 | 700 | SEPT - 2019 | FORTUNATO*RADHAMES | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 6.00 | 2.00 | 0.00 | 2.00 |
| 16318 | 700 | SEPT - 2019 | JACKSON*JEFFREY | 36.00 | 0.00 | 0.00 | 0.00 | 36.00 | 24.00 | 12.00 | 16.00 | 28.00 |
| 16318 | 700 | SEPT - 2019 | MARTINEZ, ISRAEL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 8.00 |
| 16318 | 700 | SEPT - 2019 | SWANSTON*NAEEMAH | 8.00 | 0.00 | 0.00 | 0.00 | 8.00 | 6.00 | 2.00 | 0.00 | 2.00 |
| 16318 | 700 | SEPT - 2019 | WILSON*SHANE | 36.00 | 0.00 | 0.00 | 0.00 | 36.00 | 20.00 | 16.00 | 0.00 | 16.00 |
| | | | Totals for month SEPT - 2019 | 112.00 | 0.00 | 0.00 | 0.00 | 112.00 | 74.00 | 38.00 | 24.00 | 62.00 |
| | 700 | | Totals for group # 700 | 10,658.00 | 0.00 | 0.00 | 5.50 | 10,663.50 | 9,480.00 | 1,183.50 | 800.50 | 1,984.00 |
| 16313 | 776 | SEPT - 2018 | EDWARDS*ERNESTO | 146.00 | 0.00 | 0.00 | 0.00 | 146.00 | 146.00 | 0.00 | 0.00 | 0.00 |
| | | | Totals for month SEPT - 2018 | 146.00 | 0.00 | 0.00 | 0.00 | 146.00 | 146.00 | 0.00 | 0.00 | 0.00 |
| 16313 | 776 | OCT - 2018 | 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  EDWARDS*ERNESTO | 136.00 | 0.00 | 0.00 | 0.00 | 136.00 | 135.00 | 1.00 | 0.00 | 1.00 |

Hill Construction, Inc.
Audit Period From 03/26/2018 To 12/29/2019
Employer Number : 16313    Group Number : 776

| Employer # | Group # | Month | SSN | NAME | PR | Other | Out of Juris | Vol Rate | Total Audited | Reported | Difference | Revision | Adjusted Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Totals for month | OCT - 2018 | 136.00 | 0.00 | 0.00 | 0.00 | 136.00 | 135.00 | 1.00 | 0.00 | 1.00 |
| 16313 | 776 | MAR - 2019 | | FORD*KEITH | 82.00 | 0.00 | 0.00 | 0.00 | 82.00 | 82.00 | 0.00 | 0.00 | 0.00 |
| | | | Totals for month | MAR - 2019 | 82.00 | 0.00 | 0.00 | 0.00 | 82.00 | 82.00 | 0.00 | 0.00 | 0.00 |
| 16313 | 776 | APR - 2019 | | FORD*KEITH | 66.50 | 0.00 | 0.00 | 0.00 | 66.50 | 0.00 | 66.50 | 0.00 | 66.50 |
| | | | Totals for month | APR - 2019 | 66.50 | 0.00 | 0.00 | 0.00 | 66.50 | 0.00 | 66.50 | 0.00 | 66.50 |
| 16313 | 776 | MAY - 2019 | | FORD*KEITH | 24.00 | 0.00 | 0.00 | 0.00 | 24.00 | 0.00 | 24.00 | -24.00 | 0.00 |
| | | | Totals for month | MAY - 2019 | 24.00 | 0.00 | 0.00 | 0.00 | 24.00 | 0.00 | 24.00 | -24.00 | 0.00 |
| | | | Totals for group # | 776 | 454.50 | 0.00 | 0.00 | 0.00 | 454.50 | 363.00 | 91.50 | -24.00 | 67.50 |
| | | | Grand Totals | | 16,692.00 | 0.00 | 0.00 | 13.50 | 16,705.50 | 15,506.00 | 1,199.50 | 862.00 | 2,061.50 |

Hours

# MASON TENDERS' AUDIT NOTES

| | | | |
|---|---|---|---|
| Benefit Fund : | Mason Tenders' District Council Trust Funds | Fed ID # : | 22-3417872 |
| Employer : | Hill Construction, Inc. | | |
| Telephone # : | 1-(908)-255-4215 | Ext. | Fax # : 1-(908)-255-4213 |
| Account # : | 16313, 16314, 16316, 16317, 16318, 16319 | | |
| Audit Period : | From: 03/26/2018 | To: | 12/29/2019 |
| Employer Contact  (Position) : | M. Ilyas Chaudry | | (President) |
| Appointment Address : | Mail-in | | |
| Employer Actual Address : | 120 Old Camplain Road, Hillsborough, NJ 08844 | | |
| Employer Mailing Address : | 120 Old Camplain Road, Hillsborough, NJ 08844 | | |
| Email Address : | ilyas@hill-construction.com | | |
| Principal  (Position): | M. Ilyas Chaudry | | (President) |
| All Field Work Dates : | Mail-in | | |
| Date Handed In For Review : | 03/24/2020 | | |
| Auditors Name : | Khrystal Navarro | | |
| Total Deficiency : | 66,772.75 | | |

**Items Used To Complete This Audit**

| | | | | |
|---|---|---|---|---|
| Type Of Payroll Viewed: : | CompuPay WEEKLY | | | |
| Quarterly Taxes: | YES | Shop Steward Reports: | | YES |
| W2's: | YES | General Ledger: | | SEE NOTES |
| Cash Disbursements Journal: | SEE NOTES | Other Trade Reports: | | NO |

Are there any shortage claims filed for report dated

NO

**Exit Interview:**

| | | |
|---|---|---|
| Audit Results Discussed With: | M. ILYAS CHAUDRY | (PRESIDENT) |
| Date: | 03/19/2020 | Agreed to findings?  NO |

**Audit Notes:**

Reason For Audit:    RANDOM